## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE HENRY SCHEIN, INC. DERIVATIVE LITIGATION** | Lead Case No. 1:19-cv-06485-LDH-JO |
| **This Document Relates to:** **ALL ACTIONS** | |

## STIPULATION OF SETTLEMENT

WHEREAS, on November 15, 2019, Frank Finazzo filed the *Finazzo* Action,[1] and, on January 6, 2020, Mark Sloan filed the *Sloan* Action; and

WHEREAS, the *Finazzo* Action and the *Sloan* Action bring claims on behalf of nominal defendant Henry Schein, Inc. to recover damages for Schein arising out of alleged misconduct by various present and former Schein directors and officers; and

WHEREAS, on January 24, 2020, the *Finazzo* Action and the *Sloan* Action were consolidated into the Consolidated Derivative Action; and

WHEREAS, on February 5, 2020, after participating in a two-day mediation session on February 4 and 5 with retired California Superior Court Judge Daniel Weinstein and his colleagues Jed Melnick and Simone Lelchuk, Derivative Plaintiffs, Schein and Derivative Defendants Stanley J. Bergman, Steven Paladino, Timothy J. Sullivan, Barry J. Alperin, Lawrence S. Bacow, Gerald A. Benjamin, James P. Breslawski, Paul Brons, Shira Goodman, Joseph L. Herring, Donald J. Kabat, Kurt Kuehn, Philip A. Laskawy, Anne H. Margulies, Karyn

---

[1]     All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in Section I.A of this Stipulation of Settlement.

Mashima, Norman S. Matthews, Mark E. Mlotek, Carol Raphael, E. Dianne Rekow, Bradley T. Sheares, and Louis W. Sullivan reached an agreement in principle to resolve the claims in the Consolidated Derivative Action, the principal substantive terms of which were documented in a Term Sheet; and

WHEREAS, no discussion of Derivative Co-Lead Counsel's attorneys' fees and expenses occurred prior to execution of the Term Sheet; and

WHEREAS, after participating in additional mediation with the Mediator and Mr. Melnick during the evening of February 5, 2020 (after the Term Sheet was executed), the Settling Parties agreed to the amount of attorneys' fees and expenses to be paid to Derivative Co-Lead Counsel, which amount is the mid-point within the range of reasonableness recommended by the Mediator; and

WHEREAS, based upon Derivative Plaintiffs' and Derivative Co-Lead Counsel's current belief that the terms of the Settlement are fair, reasonable and adequate, the Settling Parties have negotiated and executed this Settlement Agreement;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by, between and among Derivative Plaintiffs, Derivative Defendants and Schein, by and through their duly authorized counsel, that (*i*) all matters and Claims that arise directly or indirectly out of, or in any way relate to, any of the Operative Facts and were, could have been or could be asserted by or on behalf of Schein and/or (*ii*) all matters and Claims that were, could have been or could be asserted in the Consolidated Derivative Action against the Derivative Defendants are, subject to Derivative Plaintiffs' review of Confirmatory Discovery as described in this Settlement Agreement and to Court approval (and such approval becoming Final), settled, compromised,

2

satisfied and dismissed with prejudice based upon the terms and conditions and the Release contained in this Settlement Agreement.

I.  **DEFINITIONS**

    A.  **Definitions**

As used in this Settlement Agreement, the following terms have the meanings set forth herein:

    1.  "2018 Securities Class Action" means the case captioned *In re Henry Schein, Inc. Securities Litigation*, Case No. 1:18-cv-01428-MKB-VMS (E.D.N.Y.).

    2.  "2019 Covetrus Securities Class Action" means the case captioned *City of Hollywood Police Officers Retirement System, et al. v. Henry Schein, Inc., et al.*, Case No. 2:19-cv-05530-GRB-RLM (E.D.N.Y.).

    3.  "Affiliate" or "Affiliated" means such persons or entities as are defined in 17 C.F.R. Part 210.1-02(b).

    4.  "Antitrust Enhancements" means the enhancements set out in Exhibit E.

    5.  "Antitrust Proceedings" means any private, governmental, or regulatory action or investigation or any other proceeding alleging that Schein or any Schein Affiliate engaged in any improper or illegal conduct in violation of federal or state antitrust or anticompetition laws or regulations, including, without limitation, (*i*) the private antitrust actions captioned *Archer and White Sales, Inc. v. Henry Schein, Inc.*, No. 2:12-cv-00572-JRG-RSP (E.D. Tex.), *In re Dental Supplies Antitrust Litigation*, No. 1:16-cv-00696 (E.D.N.Y.) (and all cases consolidated into it), *SourceOne Dental, Inc. v. Patterson Companies*, No. 2:15-cv-05440 (E.D.N.Y.), *IQ Dental Supply, Inc. v. Henry Schein, Inc.*, No. 2:17-cv-4834 (E.D.N.Y.), *Dentsply International, Inc. v. Dental Brands for Less LLC*, No. 1:15-cv-08775 (S.D.N.Y.), *Hatchett v. Henry Schein, Inc.*, No. 3:19-cv-0083 (S.D. Ill.), *Marion Diagnostic Center, LLC v. Becton,*

*Dickinson, and Co.*, No. 18-cv-01059 (S.D. Ill.), and *Kramer v. Henry Schein, Inc. et al.*, 4:18-cv-6183 (N.D. Cal.), and (*ii*) the regulatory proceedings (including, without limitation, any regulatory investigations that preceded any such proceedings) captioned *In re Benco Dental Supply Co.*, Docket No. 9379 (FTC), *State of Texas v. Henry Schein, Inc.*, Cause No. D-1-GN-17-003749 (261st Jud. Dist. Ct. Travis County, Tex.), and *State of Arizona v. Henry Schein, Inc.*, No. CV2018-005697 (Super. Ct. Maricopa County, Ariz.).

6.      "Approval Date" means the date on which the Court enters the Approval Order.

7.      "Approval Order" means the order to be entered by the Court approving the Settlement and this Settlement Agreement, and dismissing all claims in the Consolidated Derivative Action as contemplated in Section X.B of this Settlement Agreement, which order the Settling Parties shall ask the Court to enter substantially in the form set out in Exhibit C.

8.      "Attorneys' Fees and Expenses Amount" means, subject to Court approval, one million eight hundred fifty thousand dollars ($1,850,000).

9.      "Attorneys' Fees and Expenses Award" means the amount of attorneys' fees and expenses awarded to Derivative Co-Lead Counsel.

10.      "Business Day" means a day other than a Saturday, Sunday, or Legal Holiday.

11.      "Claim" or "Claims" means any and all actions, causes of action, proceedings, adjustments, executions, offsets, contracts, judgments, obligations, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, variances, covenants, trespasses, damages, demands (whether written or oral), agreements, promises, liabilities, controversies, costs, expenses, attorneys' fees, and losses of any sort whatsoever, whether in law,

or in equity, and whether based on any United States federal, state or foreign statutory or common-law right of action or otherwise, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, existing now or to be created in the future, including, without limitation, Unknown Claims.

12.     "Complete Bar Order" means the complete bar that is set out in paragraph 11 of the Approval Order (Exhibit C).

13.     "Confidentiality Agreement" means the protective agreement covering documents and information made available in connection with Confirmatory Discovery and executed by counsel for the Settling Parties, a copy of which agreement is attached as Exhibit G.

14.     "Confirmatory Discovery" means the documents and other factual information that Schein has provided or shall provide Derivative Plaintiffs (through Derivative Co-Lead Counsel) access during the Confirmatory Discovery Period.

15.     "Confirmatory Discovery Period" means the period that began on March 6, 2020 and that shall end no later than June 4, 2020, during which Derivative Plaintiffs (through Derivative Co-Lead Counsel) shall have access to Confirmatory Discovery.

16.     "Consolidated Derivative Action" means the case captioned *In re Henry Schein, Inc. Derivative Action*, Case No. 1:19-cv-06485-LDH-JO (E.D.N.Y), which is the consolidation of the *Finazzo* Action and the *Sloan* Action as ordered in the Consolidation Order.

17.     "Consolidation Order" means the Court's January 24, 2020 order pursuant to which the Court consolidated the *Finazzo* Action and the *Sloan* Action.

18.     "Control," "Controlling" or "Controlling Interest" means an interest in an entity where such interest is sufficient to allow the interest holder directly or indirectly to direct or cause the direction of the management and policies of the entity, whether through the

ownership of voting shares, by contract or otherwise.  Any disputes as to whether Schein, any other Releasee or any Releasor has a Controlling Interest in an entity or whether an entity has a Controlling Interest in Schein, any other Releasee or any Releasor shall, solely for purposes of determining whether a Controlling Interest exists under this Settlement Agreement, be resolved pursuant to Section V.C.2, 4.

19.     "Court" means the United States District Court for the Eastern District of New York.

20.     "Covetrus" means Covetrus, Inc.

21.     "Derivative Co-Lead Counsel" means The Rosen Law Firm, P.A. and The Brown Law Firm, P.C.

22.     "Derivative Complaints" means the *Finazzo* Complaint and the *Sloan* Complaint.

23.     "Derivative Defendants" means Stanley J. Bergman, Steven Paladino, Timothy J. Sullivan, Barry J. Alperin, Lawrence S. Bacow, Gerald A. Benjamin, James P. Breslawski, Paul Brons, Shira Goodman, Joseph L. Herring, Donald J. Kabat, Kurt Kuehn, Philip A. Laskawy, Anne H. Margulies, Karyn Mashima, Norman S. Matthews, Mark E. Mlotek, Carol Raphael, E. Dianne Rekow, Bradley T. Sheares, and Louis W. Sullivan.

24.     "Derivative Defendants' Mutually Released Claims" means each and every Claim that, as of, on or before the Final Settlement Date, was, could have been or could be alleged by any Derivative Defendant against any other Derivative Defendant and that arises directly or indirectly out of, or in any way relates to, any of the Operative Facts.

25.     "Derivative/Nominal Defendants' Counsel" means the law firm of Proskauer Rose LLP.

26.     "Derivative Plaintiffs" means Frank Finazzo and Mark Sloan.

27.     "Exchange Act" means the Securities Exchange Act of 1934.

28.     "Execution Date" means the date by which this Settlement Agreement has been executed by all Settling Parties.

29.     "Fairness Hearing" means the hearing at or after which the Court shall make a decision whether to approve this Settlement Agreement as fair, reasonable and adequate and in the best interest of Schein and its stockholders.

30.     "Family Members" means an individual's father, mother, grandfather, grandmother, sister, brother, spouse/partner, son, and/or daughter, and any person living in or a member of an individual's household.

31.      "Final" means, when used in connection with any court order or judgment, that the relevant order or judgment will be final:

a.      if no appeal is taken therefrom, on the date on which the time to appeal therefrom (including, without limitation, any potential extension of time) has expired; or

b.      if any appeal is taken therefrom, on the date on which all appeals therefrom – including, without limitation, petitions for rehearing or reargument, petitions for rehearing en banc, petitions for certiorari or any other form of review, and any related appeals or petitions, including, without limitation, as to any appeal bond – have been finally disposed of, such that the time to appeal therefrom (including, without limitation, any potential extension of time) has expired, in a manner resulting in an affirmance of the relevant order or judgment.

32.     "Final Settlement Date" means the date on which the Approval Order and the Judgment become Final.

33.    "*Finazzo* Action" means the action filed on November 15, 2019, which was originally captioned *Finazzo v. Bergman, et al.*, Case No. 1:19-cv-06485-LDH-JO (E.D.N.Y), and is now part of the Consolidated Derivative Action.

34.    "*Finazzo* Complaint" means the complaint filed in the *Finazzo* Action.

35.    "First Relevant Period" means March 7, 2013 through February 12, 2018.

36.    "FTC" means the United States Federal Trade Commission.

37.    "Judgment" means the judgment entered by the Court as contemplated in Section X.B of this Settlement Agreement, which judgment the Settling Parties shall ask the Court to enter substantially in the form set out in Exhibit D.

38.    "Legal Holiday" means New Year's Day, the observance of the Birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day, and any other day designated as a federal or New York state holiday.

39.    "M&A Guidelines" means the guidelines set out in Exhibit F.

40.    "Mediation Session" means the two-day mediation session on February 4 and 5, 2020 in which Derivative/Nominal Defendants' Counsel, representatives of Schein, Derivative Co-Lead Counsel, representatives of Schein's directors' and officers' liability insurers, and the Mediator and his colleagues Jed Melnick and Simone Lelchuk participated.

41.    "Mediator" means retired California Superior Court Judge Daniel Weinstein.

42.    "Merger Agreement" means the Agreement and Plan of Merger dated as of April 20, 2018, by and among Schein, Spinco, HS Merger Sub, Inc., VFC and Shareholder Representative Services LLC, as amended, modified or supplemented from time to time.

43.    "Notice" means the notice described in Section V.B.1 of this Settlement Agreement, which notice the Settling Parties shall ask the Court to approve substantially in the form set out in Exhibit B.

44.    "Offering Documents" means the Registration Statement and the Prospectus.

45.    "Operative Facts" means those facts and circumstances that provide the factual predicate for the claims asserted in the Consolidated Derivative Action and shall include, among other things:

　　　　a.    any alleged violations of antitrust or other anticompetition laws or regulations by Schein in its dental business and/or any alleged knowledge by Schein of purported violations of antitrust or other anticompetition laws or regulations by others (including, without limitation, Schein's competitors in the dental business), including, without limitation, any conduct alleged in the Antitrust Proceedings or the Derivative Complaints;

　　　　b.    any alleged meetings, dealings, arrangements, communications, agreements, conspiracies, or attempts between or among Schein and any of its competitors, including, without limitation, Benco Dental Supply Company, Patterson Companies, Inc., and Burkhart Dental Supply, that allegedly constituted, were related to, or were entered into in connection with an alleged restraint of trade or other anticompetitive conduct whereby Schein or any other party allegedly agreed (or indicated any intention to agree):

　　　　　　(1)    to boycott, refuse to offer discounted prices to, or otherwise refuse to negotiate or deal with a buying group, group purchasing organization, or any other customer or potential customer [*Finazzo* Complaint ¶¶ 7, 180];

(2)     to fix or adjust prices or margins on dental supplies or equipment, or otherwise not to compete on price, including, without limitation, by charging similar or higher prices or margins on dental supplies or equipment [*id.* ¶¶ 7, 180-81];

(3)     not to pursue or poach a competitor's existing or prospective business, customers, or sales representatives [*id.* ¶¶ 7, 180, 188];

(4)     to block, boycott, threaten, or retaliate against entities (including, without limitation, competing distributors) seeking to enter the dental market or expand their business in that market, or entities seeking to compete on price or to undercut prices in that market [*id.* ¶ 189];

(5)     to pressure or boycott manufacturers (through threats or otherwise) to terminate relations with distributors (including, without limitation, online sellers) in the dental market or to cause new entrants to raise prices or face being cut off from products [*id.* ¶¶ 189-90];

(6)     to prevent online sellers from supplying dentists with products at reduced margins [*id.* ¶¶ 192, 204, 211, 221];

(7)     to pressure state dental associations (including, without limitation, the Texas Dental Association and the Arizona Dental Association) or other organizations not to do business with competitors or would-be competitors, including, without limitation, through any alleged boycotts of state dental associations' trade shows [id. ¶¶ 204-05, 213-21]; or

(8)     to prevent buying groups or group purchasing organizations from successfully competing in the dental supply and equipment distribution market [*id.* ¶¶ 194, 196];

   c.  any concealment of any alleged dealings, arrangements, communications, agreements, or conspiracies that allegedly involved a restraint of trade or other anticompetitive conduct in the dental market [*id.* ¶ 193];

   d.  any alleged boycott of dentists who purchased supplies from price-competing competitors, including, without limitation, by allegedly withholding services or repairs for installed equipment, charging higher prices for any services or repairs, or significantly delaying any services or repairs [*id*. ¶ 206];

   e.  any alleged communications (whether internal to Schein or external, and whether oral or written) relating to or evidencing any of the alleged conduct described in Sections I.A.45.a-d;

   f.  any allegedly illegal unilateral engagement or involvement in any of the alleged conduct described in Sections I.A.45.a-e;

   g.  any allegedly false or misleading statements or omissions in any SEC filings (including, without limitation, Forms 10-Q and 10-K and proxy statements), Exchange Act or SOX certifications, or press releases filed or issued during the First Relevant Period relating to the matters described in Sections I.A.45.a-f, including, without limitation, those addressing (*i*) competition (or alleged lack of competition) in the dental market, including, without limitation, Schein's competitive position, Schein's primary competitors, conduct in the dental market, and risks facing Schein as a result of competition in the dental market, (*ii*) pricing strategies, competitive pricing, cost containment, margins, and profits, (*iii*) Schein's dental business (including, without limitation, the strength of that business), Schein's value-added model, Schein's products (including, without limitation, private-label products), services, and solutions, Schein's commitment to customer service and value-added products, Schein's

customer mix, and the impact of that mix on margins and profit, (*iv*) Schein's infrastructure, (*v*) HMOs, group practices, other managed-care accounts, group purchasing organizations, and buying groups in the dental market, (*vi*) the effect of technological developments on Schein's dental distribution business, (*vii*) the impact of manufacturers' sales directly to end users, (*viii*) private or governmental litigation and/or investigations or any other proceedings involving alleged antitrust or competition issues or claims relating to the dental market (including, without limitation, the Antitrust Proceedings), (*ix*) Schein's financial performance and results, (*x*) Schein's internal controls and policies and/or (*xi*) the healthcare industry in general [*id*. ¶¶ 18, 24, 253-56, 258-316, 319-22, 327-32, 341-44, 347-50, 352-55, 365];

        h.      any alleged misstatements or omissions at industry or investor conferences or in earnings calls or other public statements during the First Relevant Period relating to the matters described in Sections I.A.45.a-g [*id*. ¶¶ 18, 257, 280, 317-18, 323-24, 326, 333-34 345-46, 351, 356, 359];

        i.      any alleged inflation or decline in the price of Schein's stock during the First and/or Second Relevant Period that is related to or arises out of the alleged conduct and/or topics described in Sections I.A.45.a-h, k-r [*id*. ¶¶ 22, 360-61, 363-64, 367];

        j.      any Claims related to sales of Schein stock by any Releasees during the First and/or Second Relevant Period to the extent that such Claims are related in any way to the alleged conduct and/or topics described in Sections I.A.45.a-h, k-r [*id*. ¶¶ 42-43, 48-49, 56-57, 66-67, 72-73, 78-79, 92-93, 102-03, 116-17, 122-23, 136-37, 142-43];

        k.      Schein's repurchases of its common stock during the First Relevant Period [*id*. ¶¶ 382-421];

l.        Schein's spinoff of its Animal Health Business and formation of Spinco [*id*. ¶¶ 11-16, 242-50, 368-77];

m.        the preparation, execution, filing and/or dissemination of the Offering Documents [*id*. ¶¶ 246, 368];

n.        the distribution of Covetrus shares to Schein stockholders and VFC stockholders [*id*. ¶ 247];

o.        Covetrus's payment to Schein, and Schein's receipt of, $1.120 billion in cash and Schein's use of such monies upon receipt, including, without limitation, any dividend provided and/or reconciliation of intracompany account balances effected in connection with such monies [*id*. ¶ 248];

p.        the authorization of, entry into, performance of obligations under and consummation of the Transaction Documents and the transactions contemplated thereunder, including, without limitation, any expenses incurred or amounts charged to Covetrus in connection with or pursuant to any of the Transaction Documents [*id*. ¶¶ 249, 377];

q.        any alleged inflation in Covetrus's stock price during the Second Relevant Period [*id*. ¶ 381];

r.        any allegedly misleading statements or omissions in public filings (including, without limitation, the Offering Documents) or public statements (including, without limitation, at industry conferences) regarding the alleged conduct described in Sections I.A.45.l-q and/or addressing (*i*) Covetrus's key strengths, (*ii*) the key benefits of the merger, (*iii*) the complementary fit of VFC and Schein's Animal Health Business, (*iv*) due diligence in connection with the merger, (*v*) the state of Schein's Animal Health Business at the time of the Spin-Off Merger, (*vi*) Covetrus's ability to compete in the market, (*vii*) Covetrus's infrastructure

investments, supply chain capabilities, software platforms and inventory management,
(*viii*) merger synergies, (*ix*) financial (including, without limitation, EBITDA) projections and/or
guidance for Covetrus, (*x*) Covetrus's awareness of infrastructure investments (including,
without limitation, the expenses involved), (*xi*) the Transaction Documents (including, without
limitation, the expenses involved), (*xi*) integration of the merged companies, (*xiii*) the
competitive nature of the animal-health market, (*xiv*) the loss of any customers and/or
(*xv*) stockholder value created by the Spin-Off Merger [*id.* ¶¶ 368-77];

s.      Schein's governance, policies, practices, procedures and internal
controls, including, without limitation, any alleged deficiencies or weaknesses in such controls,
and compliance or purported non-compliance with any policies, practices, procedures, controls
or codes of conduct, including, without limitation, Schein's Worldwide Business Standards and
Code of Ethics, during the First and/or Second Relevant Periods [*id.* ¶¶ 17, 23, 152, 162-73, 336,
338-39];

t.      any compensation received by any Releasee during the First and/or
Second Relevant Periods [*id.* ¶¶ 41, 47, 55, 61, 65, 71, 77, 83, 87, 91, 97, 101, 107, 111, 115,
121, 127, 131, 135, 141, 436-50, 503];

u.      the performance of any fiduciary duties by the Releasees or any
alleged breach of any fiduciary duties owed by the Releasees to Schein during the First and/or
Second Relevant Periods [*id.* ¶¶ 146-56, 487-99];

v.      any allegedly unjust enrichment received by any Releasee during
the First and/or Second Relevant Periods as a result of the alleged conduct described in Sections
I.A.45.a-t [*id.* ¶¶ 502-03];

w.      any alleged waste of corporate assets that occurred during the First and/or Second Relevant Periods as a result of any alleged conduct described in Sections I.A.45.a-v [*id.* ¶¶ 516-18];

x.      any Claim under Exchange Act Sections 10(b), 14(a), 20(a), SEC Rule 10b-5 and/or any other federal securities laws as a result of the alleged conduct described in Sections I.A.45.a-w [*id.* ¶¶ 466-72, 476-81, 484];

y.      any Claims for abuse of control or gross mismanagement by any Releasee during the First and/or Second Relevant Periods arising out of the alleged conduct described in Sections I.A.45.a-w [*id.* ¶¶ 507-08, 511-13];

z.      any Releasee's involvement in, statements or omissions about, or alleged participation in, the conduct described in Sections I.A.45.a-y;

aa.      any alleged damages to Schein resulting from the conduct described in Sections I.A.45.a-z; and

bb.      any liability of any sort (including, without limitation, the cost of defending the Release in this Settlement Agreement against any Claim for liability) imposed upon Schein or any Releasee arising out of, or as result of, the alleged conduct described in this Section I.A.45, including, without limitation, any liability directly or indirectly arising out of (*i*) the facts and circumstances that gave rise to the Antitrust Proceedings, the 2018 Securities Class Action and/or the 2019 Covetrus Securities Class Action, (*ii*) the prosecution, defense and/or resolution of the Antitrust Proceedings, the 2018 Securities Class Action and/or the 2019 Covetrus Securities Class Action and/or (*iii*) a Claim brought directly by Covetrus, or derivatively on behalf of Covetrus, against Schein or any Releasee that arises directly or

indirectly out of alleged conduct described in Sections I.A.45.l-z and/or out of the 2019 Covetrus Securities Class Action [*id*. ¶¶ 24, 381, 423-27].

46.    "Preliminary Approval Date" means the date on which the Court enters the Preliminary Approval Order.

47.    "Preliminary Approval Order" means the order to be entered by the Court, as contemplated in Section IX.A of this Settlement Agreement, which order the Settling Parties shall ask the Court to enter substantially in the form set out in Exhibit A.

48.    "Prospectus" means the prospectus filed on Form 424B by Covetrus with the SEC on February 7, 2019, including, without limitation, any and all amendments.

49.    "Registration Statement" means the registration statement on Form S-4 filed by Spinco with the SEC on December 28, 2018, including, without limitation, any and all amendments.

50.    "Release" means the release provisions set forth in Section VI.A of this Settlement Agreement.

51.    "Released Securities Holder/Company Claims" means each and every Claim that as of, on or before the Final Settlement Date, (*i*) Derivative Plaintiffs or any other Securities Holder asserted in any of the Derivative Complaints, or could have asserted or could assert derivatively on behalf of Schein against any of the Releasees in connection with any of the Operative Facts or (*ii*) Schein could have asserted or could assert directly in its own right against any of the Releasees in connection with any of the Operative Facts, whether, with respect to both subsections (*i*) and (*ii*) above of this Section I.A.51, such Claims arise under federal, state, or other statutory or common-law rule or under foreign law and without respect to the court, tribunal, agency or other forum in which any asserted Claims have been brought; *provided* that

Released Securities Holder/Company Claims shall not include (*i*) any Claim to enforce this Settlement Agreement, (*ii*) any direct Claim of any Derivative Plaintiff or any other Securities Holder brought on his, her or its own behalf against a Releasee, including, without limitation, any direct claim arising out of federal or state securities law, (*iii*) any direct Claim of any Derivative Plaintiff or any other Securities Holder on his, her, or its own behalf against Covetrus, (*iv*) any derivative Claim by any Covetrus stockholder (in his, her or its capacity as such) on behalf of Covetrus against any Releasee, (*v*) any direct Claim by Covetrus against any Releasee, or (*vi*) any Claims that arise out of conduct first occurring after the Final Settlement Date.

52.    "Released Settlement Claims" means each and every Claim that has been, could have been or could be asserted in the Consolidated Derivative Action or in any other proceeding by any Releasor (including, without limitation, Derivative Plaintiffs, Derivative Co-Lead Counsel or Schein) or Releasee (including, without limitation, Derivative Defendants and Derivative/Nominal Defendants' Counsel) that arises out of any and all acts, omissions, nondisclosure, facts, matters, transactions, occurrences or oral or written statements or representations in connection with (*i*) the prosecution, defense or settlement of the Consolidated Derivative Action and/or (*ii*) the facts and circumstances of this Settlement Agreement, the Settlement terms and their implementation and administration (including, without limitation, the provision of notice in connection with the proposed Settlement); *provided* that Released Settlement Claims shall not include any Claim to enforce this Settlement Agreement.

53.    "Releasee" means each and every one of, and "Releasees" means all of, the following:

a.    Derivative Defendants and their Family Members, heirs, executors, beneficiaries, representatives, assigns, agents, attorneys (including, without limitation,

Derivative/Nominal Defendants' Counsel), advisors, trustees, administrators, fiduciaries, consultants, service providers, successors in interest, accountants, accounting advisors and auditors; and

        b.      Schein, each and every Schein Releasee, and each and every Schein Releasee's past or present parents, predecessors, successors in interest, Affiliates, divisions, business units, subsidiaries, governors, directors, executive-committee members, officers, officials, employees, members, partners, principals, agents, attorneys (including, without limitation, in-house or outside attorneys), advisors, investment bankers, trustees, administrators, fiduciaries, beneficiaries, consultants, representatives, underwriters, assigns, agents, accountants, accounting advisors, auditors, insurers, reinsurers, service providers, valuation firms, and any other entities in which the relevant Releasee has a Controlling Interest or that has a Controlling Interest in it.

        54.      "Releasor" means each and every one of, and "Releasors" means all of, the following:

        a.      Derivative Plaintiffs,

        b.      all other Securities Holders,

        c.      Schein,

        d.      for each of the Releasors identified in Sections I.A.54.a, I.A54.b or I.A.54.c, each of his, her or its beneficiaries, representatives, assigns, agents, attorneys (including, without limitation, Derivative Co-Lead Counsel and an entity's General Counsel and other in-house or outside attorneys), advisors, trustees, administrators, fiduciaries, consultants, service providers, successors in interest, accountants, accounting advisors and auditors;

e.      for each of the Releasors identified in Sections I.A.54.a, I.A.54.b, I.A.54.c or I.A.54.d that is an entity, each of its past or present parents, predecessors, successors, Affiliates, divisions, business units, subsidiaries, governors, directors, executive-committee members, officers, officials, employees, members, partners or principals, and any other entities in which a Releasor has a Controlling Interest or that have a Controlling Interest in a Releasor; and

f.      for each of the Releasors identified in Sections I.A.54.a, I.A.54.b or I.A.54.d that is a natural person, each of his or her Family Members, heirs and executors.

55.     "Schein" means nominal defendant Henry Schein, Inc.

56.     "Schein Releasees" means Schein and any or all of its respective past or present parents, predecessors, successors in interest, Affiliates, divisions, business units, subsidiaries, governors, past and present directors, executive-committee members, officers, officials, employees, members, partners, principals, agents, attorneys (including, without limitation, in-house or outside attorneys), advisors, underwriters, investment bankers, trustees, administrators, fiduciaries, beneficiaries, consultants, representatives, assigns, agents, accountants, accounting advisors, auditors, insurers, reinsurers, service providers, valuation firms, and any other entities in which Schein has a Controlling Interest or that have a Controlling Interest in it.

57.     "SEC" means the United States Securities and Exchange Commission.

58.     "Second Relevant Period" means February 8, 2019 through January 6, 2020.

59.     "Securities Holders" means any and all individuals or entities that hold or held, or beneficially own or owned, directly or indirectly, common stock or other equity securities of Schein on or before the Execution Date.

60.     "Service Awards" means the payments awarded to Derivative Plaintiffs for their service in the Consolidated Derivative Action.

61.     "Settlement" means the settlement contemplated by this Settlement Agreement.

62.     "Settlement Agreement" means this Stipulation of Settlement and the Exhibits attached to it, including, without limitation, any subsequent written amendments to the Stipulation of Settlement and/or its Exhibits.

63.     "Settlement Escrow Account" means the account described in Section VII.B into which the Attorneys' Fees and Expenses Amount shall be paid, which account shall be under the joint control of Derivative Co-Lead Counsel and Derivative/Nominal Defendants' Counsel.

64.     "Settlement Relief" means the Antitrust Enhancements and the M&A Guidelines.

65.     "Settling Parties" means Derivative Plaintiffs, Derivative Defendants and Schein.

66.     "*Sloan* Action" means the action filed on January 6, 2020, which was originally captioned *Sloan v. Bergman, et al.*, 1:20-cv-00076 (E.D.N.Y), and is now part of the Consolidated Derivative Action.

67.     "*Sloan* Complaint" means the complaint filed in the *Sloan* Action.

68.     "SOX" means the Sarbanes-Oxley Act of 2002.

69. "Spin-Off Merger" means the transaction by which Spinco merged with VFC to create Covetrus.

70. "Spinco" means HS Spinco, the entity incorporated by Schein into which Schein spun its Animal Health Business.

71. "Term Sheet" means the document memorializing the agreement in principle to resolve the claims in the Consolidated Derivative Action executed by the Settling Parties on February 5, 2016, including, without limitation, any addendum or modifications to it.

72. "Termination Date" means the date on which any of the Settling Parties provides notice that he, she or it is exercising a right to terminate this Settlement Agreement under Section XII.B.

73. "Transaction Documents" means the Merger Agreement and all of the documents, agreements, certificates and instruments executed and delivered in connection with the transactions contemplated by the Merger Agreement, including, without limitation, the Distribution Agreement, the Transition Services Agreement, the Employee Matters Agreement, the Tax Matters Agreement and the Escrow Agreement, in each case as defined in the Merger Agreement and as amended, modified or supplemented from time to time.

74. "Unknown Claims" means any and all Released Securities Holder/Company Claims and Released Settlement Claims that any Releasor does not know or suspect exist in his, her or its favor at the time of the release of the Releasees, and any and all Released Settlement Claims or Derivative Defendants' Mutually Released Claims that any Derivative Defendant or Releasee does not know or suspect to exist in his, her or its favor at the time of the release of the Releasors, which, if known by any such Releasors or Releasees might have affected his, her or its decision(s) concerning this Settlement.  As to any and all Claims

released in this Settlement Agreement, the Settling Parties stipulate and agree that, upon the

Final Settlement Date, the Settling Parties shall expressly waive, and each other Securities

Holder, Releasee and Releasor shall be deemed to have waived, and by operation of the

Approval Order and the Judgment shall have expressly waived, any and all provisions, rights and

benefits conferred by any law of any state or territory of the United States or of any other

country, or any principle of common law, that is similar, comparable, or equivalent to Cal. Civ.

C. § 1542, which provides:

> A general release does not extend to claims which the creditor or
> releasing party does not know or suspect to exist in his or her favor
> at the time of executing the release and that, if known by him or
> her would have materially affected his or her settlement with the
> debtor or released party.

The Settling Parties acknowledge that the inclusion of "Unknown Claims" in the definition of

Released Securities Holder/Company Claims, Released Settlement Claims, and Derivative

Defendants' Mutually Released Claims was separately bargained for and was a key element of

the Settlement.

75.    "VFC" means Direct Vet Marketing, Inc. (d/b/a Vets First Choice).

B.    **Capitalized Terms**

1.    Capitalized terms used in this Settlement Agreement, but not defined

above, shall have the meaning ascribed to them in this Settlement Agreement.

II.    **PROCEEDINGS**

A.    **The Consolidated Derivative Action**

1.    On November 15, 2019, Frank Finazzo filed the *Finazzo* Action.  The

*Finazzo* Complaint brings claims derivatively on behalf of Schein against the Derivative

Defendants.  It alleges that the Derivative Defendants breached their fiduciary duties as directors

and/or officers of Schein, were unjustly enriched, engaged in abuse of control, gross

mismanagement and corporate waste, and violated Exchange Act Sections 10(b), 14(a) and 20(a) and SEC Rule 10b-5.  The *Finazzo* Complaint alleges misconduct giving rise to such claims.

2.      On January 6, 2020, Mark Sloan filed the *Sloan* Action.  The *Sloan* Complaint makes claims virtually identical to those made in the *Finazzo* Complaint.

3.      On January 9, 2020, the Derivative Plaintiffs moved to consolidate the *Finazzo* Action and the *Sloan* Action and establish a leadership structure.  The Court granted the motion on January 24, 2020, consolidating the actions, appointing Derivative Co-Lead Counsel as co-lead counsel for plaintiffs in the Consolidated Derivative Action and requiring the parties to submit a proposed schedule for filing of any consolidated complaint and/or designation of an operative complaint and Derivative Defendants' and Schein's response to such complaint.

4.      In a February 21, 2020 letter to the Court, the Settling Parties advised the Court that they had agreed in principle to a resolution of the Consolidated Derivative Action, subject to various conditions, including, without limitation, certain discovery, the drafting and execution of a definitive settlement agreement and Court approval.

B.      **Mediation**

1.      During the Mediation Session, Derivative Co-Lead Counsel and Derivative/Nominal Defendants' Counsel engaged in negotiations regarding resolution of the Consolidated Derivative Action.  At the end of the two-day session, they agreed on the Settlement Relief terms, attaching both components of the Settlement Relief as Exhibits to the Term Sheet.

2.      Only after the Term Sheet was executed did Derivative Co-Lead Counsel and Derivative/Nominal Defendants' Counsel negotiate the payment of Derivative Co-Lead Counsel's fees and expenses.

3.      Based on, among other things, discussions with the Mediator and Mr. Melnick about the Settlement Relief, the Settling Parties came to an agreement that Schein would, subject to Court approval, pay or cause to paid to Derivative Co-Lead Counsel the Attorneys' Fees and Expenses Amount, which amount is the mid-point within the range of reasonableness recommended by the Mediator.

III.   **SETTLEMENT CONSIDERATIONS**

A.      Based upon (*i*) investigation into and evaluation of the facts and laws relating to the Claims alleged in the Consolidated Derivative Action, (*ii*) factual information to which Derivative Plaintiffs (through Derivative Co-Lead Counsel) had access prior to the Execution Date, (*iii*) Schein's agreement to adopt the Settlement Relief as part of the Settlement, (*iv*) access to Confirmatory Discovery both prior to and after the Execution Date as contemplated in Section IV, (*v*) investigations and legal analysis conducted before and during the pendency of the *Finazzo* Action, the *Sloan* Action and the Consolidated Derivative Action, (*vi*) sessions with the Mediator and his colleagues, and (*vii*) Derivative Plaintiffs' and Derivative Co-Lead Counsel's determination (subject to the completion of Confirmatory Discovery) that the terms of the proposed Settlement are fair, reasonable and adequate and in the best interests of Schein and its stockholders, Derivative Plaintiffs have agreed to settle the Consolidated Derivative Action and to release the Releasees from Released Securities Holder/Company Claims and Released Settlement Claims pursuant to the terms of this Settlement Agreement.

B.      Derivative Defendants expressly deny that the Claims that were, could have been or could be asserted in the Consolidated Derivative Action have any merit or that pursuit of such Claims would be in the best interests of Schein or its stockholders.  Derivative Defendants expressly deny all assertions of wrongdoing or liability arising out of any of the conduct, statements, acts or omissions that were, could have been or could be alleged in the Consolidated

24

Derivative Action or any related actions. Schein considers the terms of the Settlement as set out in this Settlement Agreement to be in the best interests of Schein and its stockholders because the Settlement would, among other things, (*i*) confer substantial benefits on Schein and its stockholders through adoption of the Settlement Relief, which benefits were directly and proximately caused by Derivative Plaintiffs' filing of the *Finazzo* Action and the *Sloan* Action (and subsequent consolidation of those actions in the Consolidated Derivative Action) and the Settlement, (*ii*) bring to an end the expenses, burdens and uncertainties associated with continued litigation of the Consolidated Derivative Action and (*iii*) avoid potential further expenses and disruption of management and Schein's operations due to the pendency and defense of the Consolidated Derivative Action.

C.      Throughout the pendency of the *Finazzo* Action, the *Sloan* Action, the Consolidated Derivative Action and the settlement negotiations,  all of the Settling Parties have been advised by counsel competent in litigating derivative actions.

IV.     **CONFIRMATORY DISCOVERY**

A.      During the Confirmatory Discovery Period, subject to the provisions of the Confidentiality Agreement, Derivative Plaintiffs (through Derivative Co-Lead Counsel) shall have had, and shall continue to have, reasonable access to Confirmatory Discovery, the scope of which shall be determined through good faith negotiations between the Derivative Plaintiffs and Schein, regarding the Operative Facts underlying the claims in the *Finazzo* Complaint and the *Sloan* Complaint to confirm that such facts are consistent with Derivative Plaintiffs' and Derivative Co-Lead Counsel's understanding and belief that the proposed Settlement is fair, reasonable and adequate.

B.      Derivative Co-Lead Counsel shall attempt in good faith to coordinate their review of and access to Confirmatory Discovery with plaintiffs' counsel in the 2018 Securities Class Action.

C.      As determined by Derivative Plaintiffs, Derivative Co-Lead Counsel, and Schein, the Confirmatory Discovery to which Derivative Plaintiffs (through Derivative Co-Lead Counsel) shall have access shall include informal interviews of relevant Schein officials.

D.      Subject to Sections XII.B.3 and XII.C, if, as a result of reviewing the Confirmatory Discovery contemplated by this Section IV, Derivative Plaintiffs and Derivative Co-Lead Counsel reasonably and in good faith do not believe that the proposed Settlement Agreement is fair, reasonable and adequate, Derivative Plaintiffs shall have the right to terminate this Settlement Agreement, as set out in Section XII.B.3.

V.      **TERMS AND CONDITIONS OF THE SETTLEMENT**

A.      **Settlement Relief**

1.      Subject to the provisions of this Section V.A Schein shall adopt, implement and maintain the Settlement Relief.

2.      The Antitrust Enhancements shall be adopted, implemented and maintained consistent with the Statement of Intent found in the Antitrust Enhancements, set out in Exhibit E.

3.      The M&A Guidelines shall be adopted, implemented and maintained consistent with the Statement of Intent found in the M&A Guidelines, set out in Exhibit F.

B.      **Notice to Securities Holders and Other Communications**

1.      **Notice**

a.      No later than sixty (60) days before the deadline for objecting to the Settlement, (*i*) the Settling Parties shall cause the Notice to be mailed by first-class mail to all

current, identifiable Securities Holders, and (*ii*) Derivative Co-Lead Counsel shall cause the Notice and Settlement Agreement to be posted on each of their respective websites.

b.       No later than fifty (50) days before the deadline for objecting to the Settlement, (*i*) the Settling Parties shall cause the Notice to be published in the *Wall Street Journal* and *Investor's Business Daily*, as well as on wire services.

c.       The Notice shall contain links to the websites of Derivative Co-Lead Counsel where the Settlement Agreement will be posted, which posting shall be maintained through the Final Settlement Date.

d.       The Settling Parties believe that the form and method of notice specified in this Section V.B.1 (*i*) satisfy the requirements of the Federal Rules of Civil Procedure, the Rules of the Court and due-process principles, (*ii*) sufficiently inform all relevant persons and entities about the Settlement Agreement, the pendency of the Consolidated Derivative Action and the Fairness Hearing, and their right to object to the Settlement and (*iii*) are reasonable and constitute due, adequate and sufficient notice to all persons entitled to notice.

e.       Schein shall pay or cause to be paid any notice expenses attributable to providing notice of the Settlement as set out in Sections V.B.1.a and V.B.1.b, or as otherwise ordered by the Court.

2.       **Direct Communications with Securities Holders**

a.       Derivative Plaintiffs acknowledge and agree that Schein retains the right to communicate with its stockholders.  To the extent that any such communications relate to the Consolidated Derivative Action or the proposed Settlement, such communications shall be limited to the following:

(1)      Communications between stockholders and representatives of Schein whose responsibilities include investor relations;

(2)      Communications as may be necessary to implement the terms of this Settlement Agreement; and

(3)      Such communications as may be made in the conduct of Schein's business, including, without limitation, complying with any applicable regulatory requirements.

3.      **Other Communications**

a.      The Settlement terms shall not be publicly disclosed before a motion for preliminary approval of the settlement is filed with the Court unless (*i*) Schein, in its sole discretion, otherwise determines to disclose the terms or (*ii*) Court obligations otherwise require disclosure of the terms.

b.      The Settling Parties shall have the opportunity to review each other's press releases (if any), and any public statement addressing Schein or the Settlement issued by the Derivative Plaintiffs or Derivative Co-Lead Counsel must be pre-approved by Schein.

c.      The Settling Parties shall cooperate to ensure that any public statements regarding the Settlement are balanced, fair, accurate and non-disparaging

d.      Nothing in this Section V.B.3 shall prevent Schein from making whatever disclosure regarding the Settlement it believes might be required or appropriate before the motion for preliminary approval is filed with the Court, including, without limitation, to Schein's regulators, stock exchanges, attorneys, accountants and insurers; *provided* that Schein shall inform Derivative Co-Lead Counsel in advance of any such pre-filing public disclosure it

intends to make; *provided further* that nothing in this Section V.B.3 shall preclude the Derivative Defendants from denying liability.  For the avoidance of doubt, nothing in this Settlement Agreement shall prevent Schein (or other Releasees) from announcing the existence of the Settlement and its potential impact on Schein's financial performance, as Schein may deem appropriate for securities-law purposes (including, without limitation, by way of SEC filing or press release).  Nor shall this Settlement Agreement prevent Schein (or other Releasees) from publicly stating, including, without limitation, in response to questions from investors, analysts, customers, or others, that it has entered into the Settlement to avoid the further expense and distraction of continued litigation.

       C.      **Dispute Resolution**

       1.      If any dispute arises regarding (*i*) the Notice to be provided to Securities Holders, (*ii*) whether a court-ordered modification as described in Section XII.B.2 is material, or (*iii*) the administration of this Settlement Agreement, such dispute shall be submitted to the Mediator (or, if the Mediator is unavailable, someone of similar stature upon whom the Settling Parties agree) for binding, nonappealable decision.

       2.      If any dispute arises regarding whether Schein, any other Releasee or any Releasor has a Controlling Interest in any entity or whether an entity has a Controlling Interest in Schein, any other Releasee or any Releasor for purposes of determining whether a Controlling exists under this Settlement Agreement, such dispute shall be submitted to the Mediator (or, if the Mediator is unavailable, someone of similar stature upon whom the parties involved in the dispute agree) for binding, nonappealable decision.

       3.      If a dispute is submitted to the Mediator pursuant to Section V.C.1, the Derivative Plaintiffs (on the one hand) and Schein and the Derivative Defendants (on the other

hand) shall each be responsible for paying or causing to be paid one-half (1/2) of any fees charged or expenses incurred by the Mediator in connection with resolving such dispute.

4.      If a dispute is submitted to the Mediator pursuant to Section V.C.2, each of the parties involved in the dispute shall be responsible for paying or causing to be paid his, her or its pro rata share of any fees charged or expenses incurred by the Mediator in connection with resolving such dispute.

## VI.      RELEASES AND WAIVERS, ORDER APPROVING SETTLEMENT AND JUDGMENT

### A.      Releases and Waivers

1.      Pursuant to the Approval Order and the Judgment, without further action by anyone, and subject to Section VI.A.5 below, upon the Final Settlement Date, Derivative Plaintiffs, all other Securities Holders and Schein, on behalf of themselves and all other Releasors, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have, fully, finally and forever released, relinquished, settled and discharged:

a.      any and all Released Securities Holder/Company Claims against each and every one of the Releasees, except to the extent otherwise specified in this Settlement Agreement; and

b.      any and all Released Settlement Claims against each and every one of the Releasees except to the extent otherwise specified in this Settlement Agreement.

2.      Pursuant to the Approval Order and Judgment, without further action by anyone, and subject to Section VI.A.5 below, upon the Final Settlement Date, each and every Releasee, including, without limitation, Derivative/Nominal Defendants' Counsel, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be

30

deemed to have, and by operation of law and of the Approval Order and the Judgment shall have, fully, finally and forever released, relinquished, settled and discharged any and all Released Settlement Claims against each and every one of the Releasors, including, without limitation, Derivative Co-Lead Counsel, except to the extent otherwise specified in this Settlement Agreement.

3.      Pursuant to the Approval Order and the Judgment, without further action by anyone, and subject to Section VI.A.5 below, upon the Final Settlement Date, Derivative Co-Lead Counsel, on behalf of themselves, and any person or entity claiming by, through, or on behalf of any of them, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have, fully, finally and forever released, relinquished, settled and discharged any and all Released Settlement Claims against each and every one of the Releasees, including, without limitation, Derivative/Nominal Defendants' Counsel, except to the extent otherwise specified in this Settlement Agreement.

4.      Pursuant to the Approval Order and the Judgment, without further action by anyone, and subject to Section VI.A.5 below, upon the Final Settlement Date, Derivative Defendants, on behalf of themselves, their heirs, executors, administrators, predecessors, successors, Affiliates, assigns, and any person or entity claiming by, through, or on behalf of any of them, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have, fully, finally and forever released, relinquished, settled and discharged each other from any and all Derivative Defendants' Mutually Released Claims.

5.      Notwithstanding Sections VI.A.1 through VI.A.4 above, nothing in the Preliminary Approval Order, the Approval Order or the Judgment shall bar any action or Claim:

a.      by the Settling Parties or their counsel to enforce the terms of this Settlement Agreement, the Approval Order or the Judgment;

b.      by Derivative/Nominal Defendants' Counsel seeking from a Releasee, Schein, or Schein's or a Releasee's insurers reimbursement for fees and expenses incurred in representing any Releasee;

c.      belonging to Schein or any insured Releasee against any of Schein's or any other Releasee's insurers arising out of or relating to any potentially applicable insurance contracts or other agreements; *provided* that any such Claim must be asserted directly by Schein or the insured Releasee in his, her or its own right; and

d.      by any Releasee who is or was employed by or associated with Schein or a Schein Releasee, with respect to any such individual's rights under or to (*i*) pension plans, 401(k) plans, separation agreements, employment agreements, stock options, salary benefits or any other benefit plan, including, without limitation, health plans, in which such Releasee participates as a result of his or her current or former employment or association with Schein or a Schein Releasee or (*ii*) indemnification, advancement or insurance coverage with respect to any claim a Releasee has against Schein or a Schein Releasee including, without limitation, by way of contract or otherwise.

6.      The releases and waivers contained in this Section VI.A were separately bargained for and are essential elements of this Settlement Agreement.

B.    **Order Approving Settlement and Judgment**

1.    The Settling Parties shall obtain from the Court the Approval Order and the Judgment as further described in Section X.B below.

VII.   **ATTORNEYS' FEES AND EXPENSES**

A.    Derivative Co-Lead Counsel shall seek approval from the Court for attorneys' fees and expenses in an amount not to exceed the Attorneys' Fees and Expenses Amount.

B.    In consideration of the substantial benefits conferred upon Schein and its stockholders through adoption of the Settlement Relief, which benefits were directly and proximately caused by Derivative Plaintiffs' filing of the *Finazzo* Action and the *Sloan* Action (and subsequent consolidation of those actions into the Consolidated Derivative Action) and the Settlement, Schein shall pay or cause to be paid to Derivative Co-Lead Counsel the Attorneys' Fees and Expenses Amount pursuant to the following terms and conditions:

1.    Within five (5) Business Days following the Execution Date, Derivative Co-Lead Counsel and Derivative/Nominal Defendants' Counsel shall establish the Settlement Escrow Account and jointly instruct the escrow agent as to how any payment to the Settlement Escrow Account shall be invested.

2.    The Attorneys' Fees and Expenses Amount shall be paid into the Settlement Escrow Account within twenty (20) Business Days following the Preliminary Approval Date and shall remain in the Settlement Escrow Account until such time as the Attorneys' Fees and Expenses Amount is paid out pursuant to the terms of this Settlement Agreement.

3.    Within five (5) Business Days following the Approval Date, or such other date on which the Court issues an Attorneys' Fees and Expenses Award, (*i*) the amount equal to the Attorneys' Fees and Expenses Award (plus any interest that has accrued on that amount since

33

that amount was paid into the Settlement Escrow Account) shall be paid at the direction of Derivative Co-Lead Counsel, and (*ii*) if there is any amount remaining in the Settlement Escrow Account after such payment is made as directed by Derivative Co-Lead Counsel, it shall be paid at the direction of Derivative/Nominal Defendants' Counsel; *provided* that neither Schein nor any Releasee shall be responsible for (*i*) any additional payment to Derivative Co-Lead Counsel or (*ii*) any payment in excess of the Attorneys' Fees and Expenses Amount.

4.     If (*i*) an appeal of the Approval Order (or any order in which the Court renders an Attorneys' Fees and Expenses Award) results in a Final order that overturns or reduces the Attorneys' Fees and Expenses Award or (*ii*) an appeal results in termination of the Settlement Agreement pursuant to Section XII.B.1 or XII.B.2, Derivative Co-Lead Counsel undertake to repay (as directed by Derivative/Nominal Defendants' Counsel) within five (5) Business Days after the appeal order becomes Final the Attorneys' Fees and Expenses Award either in full or in the amount that reflects the difference between the amount paid to Derivative Co-Lead Counsel pursuant to Section VII.B.3 and the amount of the reduced Attorneys' Fees and Expenses Award (plus any interest that has accrued on the amount that is repaid since the date on which the Attorneys' Fees and Expenses Amount was paid into the Settlement Escrow Account), as appropriate.

5.     If the Settlement Agreement is terminated after the Attorneys' Fees and Expenses Amount has been paid into the Settlement Escrow Account, repayment of that amount shall occur as follows:

a.     If the Termination Date is before or on the Approval Date, within five (5) Business Days following the Termination Date, Derivative Co-Lead Counsel and

34

Derivative/Nominal Defendants' Counsel shall instruct the escrow agent to pay all monies in the Settlement Escrow Account as directed by Derivative/Nominal Defendants' Counsel.

        b.      If the Termination Date is after the Approval Date, within five (5) Business Days following the Termination Date, Derivative Co-Lead Counsel shall repay all monies it has received as the Attorneys' Fees and Expenses Award (plus any interest accrued on the Award) as directed by Derivative/Nominal Defendants' Counsel.

        6.      Individuals who are partners of Derivative Co-Lead Counsel submit to the jurisdiction of the Court for purposes of enforcement of any repayment obligations that arise pursuant to Sections VII.B.4-5.

        C.      The Attorneys' Fees and Expenses Award shall be the sole compensation paid to Derivative Co-Lead Counsel and any other counsel representing any Derivative Plaintiff in connection with the Consolidated Derivative Action.

        D.      The Attorneys' Fees and Expenses Award shall be allocated among Derivative Co-Lead Counsel (and any other counsel representing any Derivative Plaintiff) as agreed by Derivative Co-Lead Counsel.  Neither Schein nor any of the Derivative Defendants shall have any responsibility whatsoever with respect to the allocation of the Attorneys' Fees and Expenses Award.

        E.      No Releasee (including, without limitation, Schein) shall be liable for or obligated to pay any fees, expenses, costs or disbursements to, or incur any expense on behalf of, any person or entity (including, without limitation, Derivative Plaintiffs or Derivative Co-Lead Counsel), directly or indirectly, in connection with the Consolidated Derivative Action or this Settlement Agreement except as expressly provided for in this Settlement Agreement.

        F.      Derivative Plaintiffs shall not be liable for or obligated to pay any fees, expenses,

costs or disbursement to, or incur any expenses on behalf of, any person or entity (including, without limitation, any Derivative Defendant, Schein or Derivative/Nominal Defendants' Counsel), directly or indirectly, in connection with the Consolidated Derivative Action or this Settlement Agreement, except as expressly provided for in this Settlement Agreement.

G.      In light of the benefits that Derivative Plaintiffs have helped to create for Schein and its stockholders, Derivative Plaintiffs shall apply for Service Awards in an amount up to five thousand dollars ($5,000) each; *provided* that, to the extent the Court approves any Service Awards, such Service Awards shall be funded from the Attorneys' Fee and Expense Award and shall be paid to Derivative Plaintiffs within five (5) Business Days following Final Settlement Date.

## VIII.   **OBJECTIONS BY SECURITIES HOLDERS**

A.      Any Securities Holder who wishes to object to the fairness, reasonableness or adequacy of this Settlement Agreement or to any term(s) of this Settlement Agreement may do so subject to the requirements set out in the Preliminary Approval Order.

## IX.   **PRELIMINARY HEARING AND PRELIMINARY APPROVAL ORDER**

A.      The Derivative Plaintiffs shall apply to the Court for entry of the Preliminary Approval Order within twenty (20) days following the Execution Date.

## X.   **FAIRNESS HEARING, ORDER APPROVING SETTLEMENT, JUDGMENT AND DISMISSAL**

A.      The Settling Parties shall request that the Court schedule a Fairness Hearing at which to consider whether to approve this Settlement Agreement as fair, reasonable and adequate and in the best interest of Schein and its stockholders.

B.      If the Court approves the Settlement contemplated by this Settlement Agreement, the Settling Parties shall jointly request that the Court enter the Approval Order and the

Judgment.  The Approval Order shall include, among other provisions, a permanent injunction and the Complete Bar Order regarding Released Securities Holder/Company Claims and Derivative Defendants' Mutually Released Claims.  The Judgment will contain a statement that, during the course of the *Finazzo* Action, the *Sloan* Action and the Consolidated Derivative Action, the Settling Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

## XI.   NO ADMISSIONS

A.     This Settlement Agreement, the offer of this Settlement Agreement and implementation of or compliance with this Settlement Agreement shall not constitute or be construed as an admission by any or all of the Releasees of any wrongdoing or liability.  This Settlement Agreement is to be construed solely as a reflection of the Settling Parties' desire to facilitate a resolution of the Claims in the Derivative Complaints and of the Released Securities Holder/Company Claims, Released Settlement Claims and Derivative Defendants' Mutually Released Claims.  In particular, nothing in this Settlement Agreement, the offer of this Settlement Agreement, or the implementation of or compliance with this Settlement Agreement shall constitute or be construed as an admission by Schein or any of the Releasees that Schein's business and governance policies and practices as they existed prior to the Final Settlement Date were in any way deficient.

B.     The Settling Parties agree that no party was or is a "prevailing party."  In no event shall this Settlement Agreement, any of its provisions, or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as or deemed to be evidence of any kind in the Consolidated Derivative Action, any other action, or any other judicial, administrative, regulatory or other proceeding, except a proceeding to enforce this Settlement Agreement, including, without limitation, the Releases.

C.      Without limiting any of the foregoing provisions in this Section XI, neither this Settlement Agreement nor any related negotiations or agreements (including, without limitation, the Term Sheet), statements or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence of an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, without limitation, Schein and the Derivative Defendants, or as a waiver by Schein or the Derivative Defendants of any applicable defense.

XII.    **MODIFICATION OR TERMINATION OF THIS SETTLEMENT AGREEMENT**

A.      The terms and provisions of this Settlement Agreement may be amended, modified or expanded by written agreement of the Settling Parties; *provided however*, that, after entry of the Approval Order and the Judgment, the Settling Parties may by agreement effect such amendments, modifications or expansions of this Settlement Agreement and its implementing documents without notice to or approval by the Court only as long as such amendments, modifications or expansions are not materially inconsistent with the Approval Order and Judgment and do not limit the rights of Derivative Plaintiffs, any other Securities Holder, Schein, Releasors or Releasees under this Settlement Agreement.

B.      Subject to Sections XII.B.3-4, XII.C and XII.D, this Settlement Agreement shall terminate:

1.      if the Final Settlement Date does not occur;

2.      subject to Sections XII.B.3-4 and XII.C, at the sole option and discretion of any Settling Party if (*i*) the Court, or any appellate court, rejects, modifies or denies approval of any portion of this Settlement Agreement or the proposed Settlement, including, without limitation, the Preliminary Approval Order, the Approval Order and the Judgment, that the

terminating Settling Party reasonably and in good faith determines is material, including, without limitation, the Complete Bar Order, the provisions relating to Notice and/or the terms of the Release or (*ii*) the Court, or any appellate court, does not enter or completely affirm, or alters or expands, any portion of the Preliminary Approval Order, the Approval Order or the Judgment, including, without limitation, the Complete Bar Order and/or the Release, that the terminating Settling Party reasonably and in good faith believes is material; *provided* that, if Derivative Plaintiffs, Schein and one or more Derivative Defendants cannot agree on whether a court-ordered modification is material, they will refer the issue to the Mediator pursuant to Section V.C.1, 3 for a binding, nonappealable decision; *provided further* that, for purposes of this Section XII.B.2, any ruling by the Court (or any appellate court) that rejects, reduces or denies approval of the Derivative Plaintiffs' request for the Attorneys' Fees and Expenses Amount shall not be considered to be a rejection, modification or denial of a material portion or term of this Settlement Agreement or the proposed Settlement; or

3. at the sole option and discretion of the Derivative Plaintiffs, within five (5) days following the completion of the Confirmatory Discovery Period as described in Section IV.D above.

4. Other than with respect to Section XII.B.3, the relevant terminating Settling Party must exercise an option provided by this Settlement Agreement to terminate it by providing notice to all other Settling Parties no later than thirty (30) days after receiving actual notice of the event prompting the termination.

C. If an option to terminate this Settlement Agreement arises under this Section XII, (*i*) no Settling Party shall be required for any reason or under any circumstance to exercise that option, and (*ii*) any determination to exercise an option to terminate shall be made in good faith.

D.      If this Settlement Agreement is terminated pursuant to its terms, then:

1.      this Settlement Agreement shall be null and void and shall have no force or effect, and no Settling Party or Releasee shall be bound by any of its terms except for the terms set out in this Section XII.D;

2.      this Settlement Agreement and the Term Sheet, and all of their provisions, and all negotiations, statements and proceedings relating to them shall be without prejudice to the rights of the Settling Parties or any other Securities Holder, all of whom shall be restored to their respective positions existing immediately before the Execution Date, except with respect to (*i*) the payment by Schein of any notice expenses incurred prior to the Termination Date as set out in Section V.B.1.e, (*ii*) the payment by the Derivative Plaintiffs, the Derivative Defendants and/or any other party involved in a dispute submitted to the Mediator of any fees or expenses incurred by the Mediator prior to the Termination Date as set out in Section V.C.3-4 or (*iii*) repayment of the Attorneys' Fees and Expenses Amount or the Attorneys' Fees and Expenses Award (as the case may be) as set out in Section VII.B.4-6;

3.      Releasees (including, without limitation Schein and Derivative Defendants) expressly deny any wrongdoing by Releasees and expressly and affirmatively reserve all defenses, arguments and motions that have been or might later be asserted in the Consolidated Derivative Action;

4.      Derivative Plaintiffs expressly and affirmatively reserve all Claims, arguments and motions that have been or might have been asserted in the Consolidated Derivative Action;

5.      neither this Settlement Agreement nor the fact of its having been made shall be admissible or entered into evidence in any proceeding for any purpose whatsoever, except to enforce the terms of this Section XII.D;

6.      neither Schein's agreement to the terms set out in this Settlement Agreement nor its execution of this Settlement Agreement shall constitute or be construed to be an admission by Schein that any wrongdoing has taken place, that any of the Derivative Defendants (or any other Releasee) has engaged in a breach of his, her or its fiduciary duties or engaged in any other actionable conduct in connection with the conduct alleged in the Derivative Complaints, or that any of the Claims made in the Derivative Complaints have any merit or are in the best interests of Schein or its stockholders to pursue;

7.      neither the Derivative Defendants' agreement to the terms set out in this Settlement Agreement nor their execution of this Settlement Agreement shall constitute or be construed to be an admission by the Derivative Defendants collectively or individually that any of the Derivative Defendants breached his or her fiduciary duties or engaged in any other actionable conduct in connection with the conduct alleged in the Derivative Complaints, or that any of the Claims made in the Derivative Complaints have any merit;

8.      the terms and provisions of the Confidentiality Agreement executed in connection with Section IV shall continue in full force and effect;

9.      Schein shall, consistent with Section V.B.1.e, pay or cause to be paid any notice expenses incurred but not paid prior to the Termination Date;

10.     Derivative Plaintiffs, Schein and/or any other party involved in a dispute submitted to the Mediator shall, consistent with Section V.C.3-4, pay any fees charged by, but

not paid to, or expenses incurred by, but not reimbursed to the Mediator prior to the Termination Date; and

11.     except as expressly set out in this Settlement Agreement in Sections XII.D.2, XII.D.9 and XII.D.10, nothing in this Settlement Agreement shall create any obligation on the part of any Settling Party to pay any other Settling Party's fees and/or expenses.

XIII.   **GENERAL MATTERS AND RESERVATIONS**

A.     Subject to Section XII.B, the obligations of the Settling Parties to consummate this Settlement Agreement are conditioned upon the occurrence of each of the following:

1.     entry by the Court of the Preliminary Approval Order;

2.     entry by the Court of the Approval Order;

3.     entry by the Court of the Judgment; and

4.     the Final Settlement Date.

B.     The Settling Parties intend this Settlement Agreement to be a final and complete resolution of (*i*) all matters and Claims that arise directly or indirectly out of, or in any way relate to, any of the Operative Facts and were, could have been or could be asserted by or on behalf of Schein and/or (*ii*) all matters and Claims arising out of Released Securities Holder/Company Claims that have been, could have been or could be asserted by any Securities Holder derivatively or by Schein directly against Releasees or any of them.  The Settling Parties agree not to assert in any forum that the *Finazzo* Action, the *Sloan* Action or the Consolidated Derivative Action were brought in bad faith or without a reasonable basis, or that Schein or the Derivative Defendants defended the *Finazzo* Action, the *Sloan* Action or the Consolidated Derivative Action in bad faith or without a reasonable basis.  The Settling Parties shall not assert any Claims relating to the prosecution, defense or settlement of the Consolidated Derivative Action except as necessary to enforce this Settlement Agreement.  The Settling Parties agree that

42

the settlement relief provided in this Settlement Agreement and the terms of this Settlement Agreement were negotiated at arm's length in good faith by the Settling Parties and reflect a Settlement that was reached voluntarily after consultation with experienced counsel and the Mediator.

C.     Laurence Rosen, Phillip Kim and Timothy Brown represent that they are authorized to enter into this Settlement Agreement on behalf of Frank Finazzo and Mark Sloan and any other attorneys who have represented or now represent Mr. Finazzo and/or Mr. Sloan in the *Finazzo* Action, the *Sloan* Action and/or the Consolidated Derivative Action and/or with respect to Released Securities Holder/Company Claims and that (*i*) they have kept Mr. Finazzo and Mr. Sloan apprised of the progress of the settlement negotiations, (*ii*) they have advised Mr. Finazzo and Mr. Sloan of the terms and provisions of this Settlement Agreement, (*iii*) Mr. Finazzo and Mr. Sloan have approved the terms of this Settlement Agreement and (*iv*) Mr. Finazzo and Mr. Sloan agree they will continue as plaintiffs in the Consolidated Derivative Action until the Final Settlement Date.

D.     Ralph C. Ferrara, Ann M. Ashton, Jonathan E. Richman and Peter D. Doyle represent that they are authorized to enter into this Settlement Agreement on behalf of Schein and the Derivative Defendants and any other attorneys who have represented or now represent Schein and/or the Derivative Defendants in the Consolidated Derivative Action and/or with respect to Released Securities Holder/Company Claims and that (*i*) they have kept Schein and the Derivative Defendants apprised of the progress of the settlement negotiations, (*ii*) they have advised Schein and the Derivative Defendants of the terms and provisions of this Settlement Agreement and (*iii*) Schein and the Derivative Defendants have approved the terms of this Settlement Agreement.

E.      This Settlement Agreement sets forth the entire agreement among the Settling

Parties with respect to its subject matter and supersedes any agreements in principle (including,

without the limitation, the Term Sheet) that preceded this Settlement Agreement.  This

Settlement Agreement may not be altered or modified except by written instrument executed by

Derivative Co-Lead Counsel (with the permission of Derivative Plaintiffs) and

Derivative/Nominal Defendants' Counsel (with the permission of Schein and the Derivative

Defendants).  The Settling Parties expressly acknowledge that no other agreements,

arrangements or understandings not described in this Settlement Agreement exist among or

between them.  In entering into this Settlement Agreement, no Settling Party has relied upon any

representation or warranty not set forth expressly in this Settlement Agreement.

F.      This Settlement Agreement shall be governed by and interpreted according to the

laws of the State of New York, excluding its conflict of laws provisions.

G.      Except as set out in Sections V.C and XII.B.2 above, the Court retains continuing

and exclusive jurisdiction over this Settlement Agreement, the Settling Parties, all Securities

Holders (including, without limitation, all Securities Holders who submit objections pursuant to

Section VIII), all Releasors and all Releasees to adjudicate, subject to Sections V.C and XII.B.2

all issues relating to this Settlement Agreement and the Settlement, including, without limitation,

any issues relating to the Preliminary Approval Order, the Approval Order or the Judgment.

Subject to Sections V.C and XII.B.2, any action arising under or to enforce this Settlement

Agreement, the Preliminary Approval Order, the Approval Order or the Judgment shall be

commenced and maintained only in the Court.

H.      Whenever this Settlement Agreement requires or contemplates that a Settling

Party shall or may give notice to another Settling Party or to counsel, notice shall be provided by

email and overnight (excluding Saturday or Sunday) delivery service as follows and shall be
deemed effective upon receipt of such email and delivery to the email and address, as the case
may be, below:

    1.      If to Schein or the Derivative Defendants:

> Ralph C. Ferrara
> Ann M. Ashton
> Proskauer Rose LLP
> 1001 Pennsylvania Avenue, NW
> Suite 600 South
> Washington, DC 20004
> Telephone:  (202) 416-6800
> Facsimile:   (202) 416-6899
> rferrara@proskauer.com
> aashton@proskauer.com

> Jonathan E. Richman
> Peter D. Doyle
> Proskauer Rose LLP
> Eleven Times Square
> New York, NY  10036-8299
> Telephone:  (212) 969-3000
> Facsimile:   (212) 969-2900
> jerichman@proskauer.com
> pdoyle@proskauer.com

    2.      If to the Derivative Plaintiffs:

> Laurence Rosen
> Phillip Kim
> The Rosen Law Firm, P.A.
> 275 Madison Avenue, 40th Floor
> New York, New York 10016
> Telephone:  (212) 686-1060
> Facsimile:   (212) 202-3827
> lrosen@rosenlegal.com
> pkim@rosenlegal.com

Timothy Brown
The Brown Law Firm, P.C.
240 Townsend Square
Oyster Bay, New York 11771
Telephone:  (516) 922-5427
Facsimile:   (516) 344-6204
tbrown@thebrownfirm.net

I.       All time periods set forth in this Settlement Agreement shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by a court, the day, event or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a Legal Holiday, or, when the act to be done is the filing of a paper in the Court, a day on which weather or other conditions have caused the office of the Clerk of the Court to be inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days.

J.       The Settling Parties reserve the right, subject to the Court's approval, mutually to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

K.      The Settling Parties, their successors and assigns, and their counsel undertake to implement this Settlement Agreement, to cooperate fully in seeking Court approval and to use all reasonable efforts to effect the prompt consummation of this Settlement Agreement and the proposed Settlement.

L.       This Settlement Agreement may be signed in counterparts, each of which shall constitute a duplicate original.  Execution by facsimile or by electronically transmitted signature shall be fully and legally binding on a Settling Party.

M.      All Releasees who are not Settling Parties are intended third-party beneficiaries who are entitled to enforce the terms of the Release.

Agreed to as of this 30th day of April, 2020.

Laurence Rosen
Phillip Kim
The Rosen Law Firm, P.A.
275 Madison Avenue, 40th Floor
New York, New York 10016
(212) 686-1060
lrosen@rosenlegal.com
pkim@rosenlegal.com

Timothy Brown
The Brown Law Firm, P.C.
240 Townsend Square
Oyster Bay, New York 11771
(516) 922-5427
tbrown@thebrownlawfirm.net

*Counsel for Derivative Plaintiffs Finazzo
and Sloan*

Ralph C. Ferrara
Ann M. Ashton
Proskauer Rose LLP
1001 Pennsylvania Avenue, NW
Suite 600 South
Washington, DC 20004
(202) 416-6800
rferrara@proskauer.com
aashton@proskauer.com

Jonathan E. Richman
Peter D. Doyle
Proskauer Rose LLP
Eleven Times Square
New York, New York  10036
(212) 969-3000
jerichman@proskauer.com
pdoyle@proskauer.com

*Counsel for Nominal Defendant Henry
Schein, Inc. and the Derivative Defendants*