## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE HENRY SCHEIN, INC. DERIVATIVE LITIGATION** | Lead Case No. 1:19-cv-06485-RLM |
| **This Document Relates to:** **ALL ACTIONS** | |

## ORDER APPROVING SETTLEMENT

WHEREAS, the Derivative Plaintiffs[1] in the above-captioned Consolidated Derivative Action, the Nominal Defendant Henry Schein, Inc. and the Derivative Defendants have reached a proposed Settlement of all claims that have been, could have been or could be alleged in the Consolidated Derivative Action; and

WHEREAS, on June 10, 2020, based upon a review of the Stipulation of Settlement (with its exhibits, the "Settlement Agreement") executed by the Settling Parties, Judge LaShann DeArcy Hall entered an Order Preliminarily Approving Settlement, Directing Notice to Securities Holders, and Setting Hearing for Final Approval of Settlement (the "Preliminary Approval Order"), in which Judge DeArcy Hall ordered, among other things, that (*i*) Notice be provided to Securities Holders, (*ii*) a Fairness Hearing be scheduled for September 22, 2020 before Judge DeArcy Hall, which was later adjourned to December 2, 2020 before Magistrate Judge Roanne L. Mann; and (*iii*) Securities Holders be provided with an opportunity to object to the proposed Settlement and to appear at the Fairness Hearing; and

---

[1]     As further set out in paragraph 1 of this Order, capitalized terms not defined in this Order shall be defined as set out in the April 30, 2020 Stipulation of Settlement (the "Stipulation of Settlement").

WHEREAS, the Court held a Fairness Hearing on December 2, 2020 to determine, among other things, whether to approve the Settlement Agreement; and

WHEREAS, the Court received submissions and heard argument at the Fairness Hearing from Derivative Co-Lead Counsel and Derivative/Nominal Defendants' Counsel;

NOW, THEREFORE, based upon the written submissions of the Settling Parties, the arguments at the Fairness Hearing and other materials of record in this Consolidated Derivative Action, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1.     ***Incorporation of Settlement Agreement*** – This Order Approving Settlement (the "Order") incorporates and makes a part hereof the April 30, 2020 Stipulation of Settlement, a copy of which is attached to the Order.  To the extent definitions for any defined terms do not appear in this Order, the Court adopts and incorporates the definitions in the Stipulation of Settlement.

2.     ***Jurisdiction*** – The Court has personal jurisdiction over all Securities Holders of Schein in connection with the claims that were, could have been or could be asserted in this Consolidated Derivative Action, and has subject matter jurisdiction over the Consolidated Derivative Action, including jurisdiction to approve the Settlement Agreement and dismiss the claims in this Consolidated Derivative Action with prejudice.

3.     ***Adequacy of Derivative Plaintiffs and Derivative Plaintiffs' Counsel*** – Pursuant to Federal Rule of Civil Procedure 23.1, Derivative Plaintiffs and Derivative Co-Lead Counsel have fully and adequately represented the other Securities Holders and Schein's interests for purposes of entering into and implementing the Settlement Agreement and the proposed Settlement.

4. ***Proof of Notice*** – The Settling Parties filed with the Court adequate proof regarding distribution of the Notice materially consistent with directives in the Preliminary Approval Order.

5. ***Notice to Securities Holders*** – The Court finds that the Notice provided to Securities Holders regarding the Settlement Agreement was simply written and readily understandable and that the Notice and notice methodology (*i*) constituted the best practicable notice, (*ii*) were reasonably calculated, under the circumstances, to apprise Securities Holders of the pendency of this Consolidated Derivative Action, the claims asserted, the terms of the proposed Settlement, and Securities Holders' right to object to the proposed Settlement and to appear at the Fairness Hearing, (*iii*) were reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice and (*iv*) met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law.

6. ***Settlement Approval*** – The terms and provisions of this Settlement Agreement have been entered into in good faith and under the auspices of an experienced mediator, who has filed a submission in support of the proposed Settlement.  The terms and provisions of the Settlement Agreement are hereby fully and finally approved as fair, reasonable and adequate as to, and in the best interests of, Schein and its Securities Holders, and in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of the Court and any other applicable law.

7. ***Implementation of the Settlement Agreement*** – The Settling Parties and their counsel are directed to implement and consummate the Settlement Agreement according to its terms and conditions.

8. ***Binding Effect*** – The Stipulation of Settlement, a copy of which is attached to this Order, and this Order shall be forever binding on the Releasors and Releasees as to all claims and issues that have been, could have been or could be raised in the Derivative Actions against the Releasees and as to all Released Securities Holders/Company Claims against Schein and the other Releasees.  As to all such claims and issues, this Order shall have *res judicata* and other preclusive effect in all pending and future lawsuits or other proceedings maintained by or on behalf of Schein.

9. ***Releases and Waivers*** – The Release set forth in Section VI of the Stipulation of Settlement and its relevant definitions are expressly incorporated herein in all respects and shall be deemed a part of this Order as if fully set forth herein.  The Release shall be effective as of the Final Settlement Date.  The Settling Parties agree and acknowledge that the Release provisions constitute essential terms of the Settlement Agreement.  Nothing herein shall in any way impair or restrict the rights of any Settling Party to enforce the terms of the Settlement Agreement or this Order.

10. ***Permanent Injunction –*** Subject to the reservations set out in Section VI.A.5 of the Stipulation of Settlement, the Court hereby permanently bars and enjoins:

a. Derivative Plaintiffs, all other Securities Holders, Schein (whether acting on its own behalf or by and through its shareholders, or any of them), and/or any of their respective heirs, executors, administrators, trustees, predecessors, successors, Affiliates, representatives, attorneys and assigns, and anyone else purporting to act on behalf of or derivatively for any of the above, from filing, commencing, prosecuting, intervening in, participating in, or receiving any benefits or other relief from any other lawsuit, arbitration, administrative, regulatory, or other proceeding (including a motion or complaint in intervention

4

in any such action or proceeding if the person or entity filing such motion or complaint in intervention purports to be acting as, on behalf of, for the benefit of, or derivatively for any of the above persons or entities) or order, in any jurisdiction or forum, as to the Releasees based on or relating in any way to the Released Securities Holder/Company Claims; and

> b.     Derivative Defendants, and anyone else purporting to act on behalf or for the benefit of  such persons or entities, from commencing, prosecuting, intervening in, or participating in any claims or causes of action relating to the Derivative Defendants' Mutually Released Claims.

11.     ***Complete Bar Order*** – Subject to the reservations set out in Section VI.A.5 of the Stipulation of Settlement, the Court hereby enters the following bar:

> a.     Any and all persons and entities are permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any Releasee arising under any federal, state or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise denominated, including Claims for breach of contract or for misrepresentation, where the Claim is or arises from a Released Securities Holder/Company Claim and the alleged injury to such person or entity arises from that person's or entity's alleged liability to Schein, including any Claim in which a person or entity seeks to recover from any of the Releasees (*i*) any amounts that such person or entity has or might become liable to pay to Schein and/or (*ii*) any costs, expenses, or attorneys' fees from defending any Claim by Schein.  All such Claims are hereby extinguished, discharged, satisfied and unenforceable, subject to a hearing to be held by the Court, if necessary.  The provisions of this paragraph 11.a are intended to preclude any liability of any of the Releasees to any person or entity for indemnification, contribution or otherwise on any Claim that is or arises from a

5

Released Securities Holder/Company Claim and where the alleged injury to such person or entity arises from that person's or entity's alleged liability to Schein; *provided however*, that if Schein or any Securities Holder on behalf of Schein obtains any judgment against any such person or entity based upon, arising out of or relating to any Released Securities Holder/Company Claim for which such person or entity and any of the Releasees are found to be jointly liable, that person or entity shall be entitled to a credit of an amount that corresponds to the percentage of responsibility of the applicable Releasee(s) for the loss to Schein.

       b.    Each and every Releasee is permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any other person or entity (including any other Releasee) arising under any federal, state or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise denominated, including Claims for breach of contract and for misrepresentation, where the Claim is or arises from a Released Securities Holder/Company Claim and the alleged injury to such Releasee arises from that Releasee's alleged liability to Schein, including any Claim in which any Releasee seeks to recover from any person or entity (including another Releasee) (*i*) any amounts any such Releasee has or might become liable to pay to Schein and/or (*ii*) any costs, expenses, or attorneys' fees from defending any Claim by or on behalf of Schein.  All such Claims are hereby extinguished, discharged, satisfied and unenforceable.

       c.    Each and every Derivative Defendant is permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any other Derivative Defendant arising under any federal, state or foreign statutory or common-law rule, however styled, where the Claim is or arises from a Derivative Defendants' Mutually Released Claim. All such Claims are hereby extinguished, discharged, satisfied and unenforceable.

d.      Notwithstanding anything stated in the Complete Bar Order, if any person or entity (for purposes of this paragraph 11.d, a "petitioner") commences against any of the Releasees any action either (*i*) asserting a Claim that is or arises from a Released Securities Holder/Company Claim or a Derivative Defendants' Mutually Released Claim and where the alleged injury to such petitioner arises from that petitioner's alleged liability to Schein or (*ii*) seeking contribution or indemnity for any liability or expenses incurred in connection with any such Claim, and if such action or Claim is not barred by a court pursuant to this paragraph 11 or is otherwise not barred by the Complete Bar Order, neither the Complete Bar Order nor the Settlement Agreement shall bar Claims by that Releasee against (*a*) such petitioner, (*b*) any person or entity who is or was Controlled by, Controlling, or under common Control with the petitioner, whose assets or estate are or were Controlled, represented, or administered by the petitioner, or as to whose Claims the petitioner has succeeded, and (*c*) any person or entity that participated with any of the preceding persons or entities described in items (*a*) and (*b*) of this paragraph 11.d in connection with the assertion of the Claim brought against the Releasee(s); *provided however*, that nothing in the Complete Bar Order or Settlement Agreement shall prevent the Settling Parties from taking such steps as are necessary to enforce the terms of the Settlement Agreement.

e.      If any term of this Complete Bar Order is held to be unenforceable after the date of entry, such provision shall be substituted with such other provision as may be necessary to afford all of the Releasees the fullest protection permitted by law from any Claim that is based upon, arises out of or relates to any Released Securities Holder/Company Claim or any Derivative Defendants' Mutually Released Claim, as applicable.

12.    *No Admissions* – None of the Settlement Agreement, this Order, any of the provisions of the Settlement Agreement, the negotiation of the Settlement Agreement, the statements or court proceedings relating to the Settlement Agreement, any document referred to in this Order, any action taken to carry out this Order, or any prior Orders in this Consolidated Derivative Action shall be (*i*) construed as, offered as, received as, used as or deemed to be evidence of any kind in this Consolidated Derivative Action or any other judicial, administrative, regulatory or other proceeding or action or (*ii*) construed as, offered as, received as, used as, or deemed to be evidence of an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, without limitation, Schein and the Derivative Defendants; *provided however*, that this Order and the Settlement Agreement may be used as evidence of the terms of the Settlement Agreement, including, without limitation, the Releases, or to enforce the provisions of this Order and the Court's Judgment or the Settlement Agreement; *provided further* that this Order and the Settlement Agreement may be filed in any action against or by Schein or other Releasees to enforce the terms of this Order and the Settlement Agreement, including, without limitation, the Complete Bar and the Permanent Injunction, and/or to support a defense of *res judicata*, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, full faith and credit or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim.

13.    *Enforcement of Settlement* – Nothing in this Order shall preclude any action to enforce the terms of the Settlement Agreement.

14.    *Payment to Derivative Plaintiffs' Counsel* – In consideration of the substantial benefits conferred upon and expected to be conferred upon Schein and its shareholders, Schein shall pay or cause to be paid to Derivative Co-Lead Counsel an Attorneys' Fees and Expenses

Award in the amount of one million eight hundred fifty thousand dollars ($1,850,000). Such payment shall be made pursuant to the terms and conditions set out in Section VII of the Stipulation of Settlement.

15.    ***Payment to Derivative Plaintiffs*** – In consideration of the substantial benefits conferred upon and expected to be conferred upon Schein and its shareholders, Derivative Plaintiffs shall be paid five thousand dollars ($5,000) each. Such payments shall be funded from the Attorneys' Fees and Expenses Award.

16.    ***Modification of Exhibits E and F to the Settlement Agreement*** – The Settling Parties are hereby authorized, without further notice to or approval by the Court, to agree to and adopt such amendments, modifications and expansions of Exhibits E and F of the Settlement Agreement that are not materially inconsistent with this Approval Order or the Judgment and do not limit the rights of Derivative Plaintiffs, any other Securities Holders, Schein, Derivative Defendants or any other Releasees or Releasors under the Settlement Agreement. If any changes are made pursuant to this paragraph, the Settling Parties shall provide the Court notice of such changes after they are implemented.

17.    ***Findings of Good Faith*** – The Court finds that the Derivative Complaints were filed as to all defendants (including Schein as a nominal defendant) on a good-faith basis and in accordance with Rule 11 of the Federal Rules of Civil Procedure based upon all publicly available information. The Court finds that all parties to this Consolidated Derivative Action and their counsel have acted in good faith and have complied with each requirement of Rule 11 with respect to all proceedings herein.

18.    Without in any way affecting the finality of the Judgment or this Order, and subject to the dispute-resolution provisions found in Sections V.C and XII.B.2 of the Stipulation

of Settlement, this Court expressly retains exclusive and continuing jurisdiction over the

Settlement Agreement, the Settling Parties, all Securities Holders and all Releasees to adjudicate

all issues relating to this Settlement Agreement, including, without limitation, any issues relating

to this Order; *provided however*, that nothing in this paragraph 18 shall restrict the ability of the

Settling Parties to exercise their rights under paragraph 16 of this Order.  Any action arising

under or to enforce the Settlement Agreement, this Order or the Judgment shall be commenced

and maintained only in this Court.

19.      ***Dismissal of Consolidated Derivative Action*** – The claims asserted against the

Releasees in this Consolidated Derivative Action and any and all other actions consolidated into

the Consolidated Derivative Action are hereby dismissed on the merits and with prejudice,

without fees or costs to any party except as otherwise provided in this Order and in the

Settlement Agreement.

20.      ***Entry of Judgment*** – There is no just reason to delay the entry of this Order and

the Judgment, and immediate entry by the Clerk of the Court is expressly directed pursuant to

Federal Rule of Civil Procedure 54(b).

So ordered this __3__ day of __December__, 2020.

                                                              /s/ Roanne L. Mann
                                                      The Honorable Roanne L. Mann
                                                      United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE HENRY SCHEIN, INC. DERIVATIVE LITIGATION** | Lead Case No. 1:19-cv-06485-LDH-JO |
| **This Document Relates to:** **ALL ACTIONS** | |

## STIPULATION OF SETTLEMENT

WHEREAS, on November 15, 2019, Frank Finazzo filed the *Finazzo* Action,[1] and,
on January 6, 2020, Mark Sloan filed the *Sloan* Action; and

WHEREAS, the *Finazzo* Action and the *Sloan* Action bring claims on behalf of nominal
defendant Henry Schein, Inc. to recover damages for Schein arising out of alleged misconduct by
various present and former Schein directors and officers; and

WHEREAS, on January 24, 2020, the *Finazzo* Action and the *Sloan* Action were
consolidated into the Consolidated Derivative Action; and

WHEREAS, on February 5, 2020, after participating in a two-day mediation session on
February 4 and 5 with retired California Superior Court Judge Daniel Weinstein and his
colleagues Jed Melnick and Simone Lelchuk, Derivative Plaintiffs, Schein and Derivative
Defendants Stanley J. Bergman, Steven Paladino, Timothy J. Sullivan, Barry J. Alperin,
Lawrence S. Bacow, Gerald A. Benjamin, James P. Breslawski, Paul Brons, Shira Goodman,
Joseph L. Herring, Donald J. Kabat, Kurt Kuehn, Philip A. Laskawy, Anne H. Margulies, Karyn

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in Section I.A of this Stipulation of Settlement.

Mashima, Norman S. Matthews, Mark E. Mlotek, Carol Raphael, E. Dianne Rekow, Bradley T. Sheares, and Louis W. Sullivan reached an agreement in principle to resolve the claims in the Consolidated Derivative Action, the principal substantive terms of which were documented in a Term Sheet; and

WHEREAS, no discussion of Derivative Co-Lead Counsel's attorneys' fees and expenses occurred prior to execution of the Term Sheet; and

WHEREAS, after participating in additional mediation with the Mediator and Mr. Melnick during the evening of February 5, 2020 (after the Term Sheet was executed), the Settling Parties agreed to the amount of attorneys' fees and expenses to be paid to Derivative Co-Lead Counsel, which amount is the mid-point within the range of reasonableness recommended by the Mediator; and

WHEREAS, based upon Derivative Plaintiffs' and Derivative Co-Lead Counsel's current belief that the terms of the Settlement are fair, reasonable and adequate, the Settling Parties have negotiated and executed this Settlement Agreement;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by, between and among Derivative Plaintiffs, Derivative Defendants and Schein, by and through their duly authorized counsel, that (*i*) all matters and Claims that arise directly or indirectly out of, or in any way relate to, any of the Operative Facts and were, could have been or could be asserted by or on behalf of Schein and/or (*ii*) all matters and Claims that were, could have been or could be asserted in the Consolidated Derivative Action against the Derivative Defendants are, subject to Derivative Plaintiffs' review of Confirmatory Discovery as described in this Settlement Agreement and to Court approval (and such approval becoming Final), settled, compromised,

satisfied and dismissed with prejudice based upon the terms and conditions and the Release contained in this Settlement Agreement.

## I.     DEFINITIONS

### A.     Definitions

As used in this Settlement Agreement, the following terms have the meanings set forth herein:

1.      "2018 Securities Class Action" means the case captioned *In re Henry Schein, Inc. Securities Litigation*, Case No. 1:18-cv-01428-MKB-VMS (E.D.N.Y.).

2.      "2019 Covetrus Securities Class Action" means the case captioned *City of Hollywood Police Officers Retirement System, et al. v. Henry Schein, Inc., et al.*, Case No. 2:19-cv-05530-GRB-RLM (E.D.N.Y.).

3.      "Affiliate" or "Affiliated" means such persons or entities as are defined in 17 C.F.R. Part 210.1-02(b).

4.      "Antitrust Enhancements" means the enhancements set out in Exhibit E.

5.      "Antitrust Proceedings" means any private, governmental, or regulatory action or investigation or any other proceeding alleging that Schein or any Schein Affiliate engaged in any improper or illegal conduct in violation of federal or state antitrust or anticompetition laws or regulations, including, without limitation, (*i*) the private antitrust actions captioned *Archer and White Sales, Inc. v. Henry Schein, Inc.*, No. 2:12-cv-00572-JRG-RSP (E.D. Tex.), *In re Dental Supplies Antitrust Litigation*, No. 1:16-cv-00696 (E.D.N.Y.) (and all cases consolidated into it), *SourceOne Dental, Inc. v. Patterson Companies*, No. 2:15-cv-05440 (E.D.N.Y.), *IQ Dental Supply, Inc. v. Henry Schein, Inc.*, No. 2:17-cv-4834 (E.D.N.Y.), *Dentsply International, Inc. v. Dental Brands for Less LLC*, No. 1:15-cv-08775 (S.D.N.Y.), *Hatchett v. Henry Schein, Inc.*, No. 3:19-cv-0083 (S.D. Ill.), *Marion Diagnostic Center, LLC v. Becton,*

*Dickinson, and Co.*, No. 18-cv-01059 (S.D. Ill.), and *Kramer v. Henry Schein, Inc. et al.*, 4:18-cv-6183 (N.D. Cal.), and (*ii*) the regulatory proceedings (including, without limitation, any regulatory investigations that preceded any such proceedings) captioned *In re Benco Dental Supply Co.*, Docket No. 9379 (FTC), *State of Texas v. Henry Schein, Inc.*, Cause No. D-1-GN-17-003749 (261st Jud. Dist. Ct. Travis County, Tex.), and *State of Arizona v. Henry Schein, Inc.*, No. CV2018-005697 (Super. Ct. Maricopa County, Ariz.).

6.      "Approval Date" means the date on which the Court enters the Approval Order.

7.      "Approval Order" means the order to be entered by the Court approving the Settlement and this Settlement Agreement, and dismissing all claims in the Consolidated Derivative Action as contemplated in Section X.B of this Settlement Agreement, which order the Settling Parties shall ask the Court to enter substantially in the form set out in Exhibit C.

8.      "Attorneys' Fees and Expenses Amount" means, subject to Court approval, one million eight hundred fifty thousand dollars ($1,850,000).

9.      "Attorneys' Fees and Expenses Award" means the amount of attorneys' fees and expenses awarded to Derivative Co-Lead Counsel.

10.      "Business Day" means a day other than a Saturday, Sunday, or Legal Holiday.

11.      "Claim" or "Claims" means any and all actions, causes of action, proceedings, adjustments, executions, offsets, contracts, judgments, obligations, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, variances, covenants, trespasses, damages, demands (whether written or oral), agreements, promises, liabilities, controversies, costs, expenses, attorneys' fees, and losses of any sort whatsoever, whether in law,

or in equity, and whether based on any United States federal, state or foreign statutory or common-law right of action or otherwise, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, existing now or to be created in the future, including, without limitation, Unknown Claims.

12. "Complete Bar Order" means the complete bar that is set out in paragraph 11 of the Approval Order (Exhibit C).

13. "Confidentiality Agreement" means the protective agreement covering documents and information made available in connection with Confirmatory Discovery and executed by counsel for the Settling Parties, a copy of which agreement is attached as Exhibit G.

14. "Confirmatory Discovery" means the documents and other factual information that Schein has provided or shall provide Derivative Plaintiffs (through Derivative Co-Lead Counsel) access during the Confirmatory Discovery Period.

15. "Confirmatory Discovery Period" means the period that began on March 6, 2020 and that shall end no later than June 4, 2020, during which Derivative Plaintiffs (through Derivative Co-Lead Counsel) shall have access to Confirmatory Discovery.

16. "Consolidated Derivative Action" means the case captioned *In re Henry Schein, Inc. Derivative Action*, Case No. 1:19-cv-06485-LDH-JO (E.D.N.Y), which is the consolidation of the *Finazzo* Action and the *Sloan* Action as ordered in the Consolidation Order.

17. "Consolidation Order" means the Court's January 24, 2020 order pursuant to which the Court consolidated the *Finazzo* Action and the *Sloan* Action.

18. "Control," "Controlling" or "Controlling Interest" means an interest in an entity where such interest is sufficient to allow the interest holder directly or indirectly to direct or cause the direction of the management and policies of the entity, whether through the

ownership of voting shares, by contract or otherwise. Any disputes as to whether Schein, any other Releasee or any Releasor has a Controlling Interest in an entity or whether an entity has a Controlling Interest in Schein, any other Releasee or any Releasor shall, solely for purposes of determining whether a Controlling Interest exists under this Settlement Agreement, be resolved pursuant to Section V.C.2, 4.

19. "Court" means the United States District Court for the Eastern District of New York.

20. "Covetrus" means Covetrus, Inc.

21. "Derivative Co-Lead Counsel" means The Rosen Law Firm, P.A. and The Brown Law Firm, P.C.

22. "Derivative Complaints" means the *Finazzo* Complaint and the *Sloan* Complaint.

23. "Derivative Defendants" means Stanley J. Bergman, Steven Paladino, Timothy J. Sullivan, Barry J. Alperin, Lawrence S. Bacow, Gerald A. Benjamin, James P. Breslawski, Paul Brons, Shira Goodman, Joseph L. Herring, Donald J. Kabat, Kurt Kuehn, Philip A. Laskawy, Anne H. Margulies, Karyn Mashima, Norman S. Matthews, Mark E. Mlotek, Carol Raphael, E. Dianne Rekow, Bradley T. Sheares, and Louis W. Sullivan.

24. "Derivative Defendants' Mutually Released Claims" means each and every Claim that, as of, on or before the Final Settlement Date, was, could have been or could be alleged by any Derivative Defendant against any other Derivative Defendant and that arises directly or indirectly out of, or in any way relates to, any of the Operative Facts.

25. "Derivative/Nominal Defendants' Counsel" means the law firm of Proskauer Rose LLP.

26.     "Derivative Plaintiffs" means Frank Finazzo and Mark Sloan.

27.     "Exchange Act" means the Securities Exchange Act of 1934.

28.     "Execution Date" means the date by which this Settlement Agreement has been executed by all Settling Parties.

29.     "Fairness Hearing" means the hearing at or after which the Court shall make a decision whether to approve this Settlement Agreement as fair, reasonable and adequate and in the best interest of Schein and its stockholders.

30.     "Family Members" means an individual's father, mother, grandfather, grandmother, sister, brother, spouse/partner, son, and/or daughter, and any person living in or a member of an individual's household.

31.      "Final" means, when used in connection with any court order or judgment, that the relevant order or judgment will be final:

        a.      if no appeal is taken therefrom, on the date on which the time to appeal therefrom (including, without limitation, any potential extension of time) has expired; or

        b.      if any appeal is taken therefrom, on the date on which all appeals therefrom – including, without limitation, petitions for rehearing or reargument, petitions for rehearing en banc, petitions for certiorari or any other form of review, and any related appeals or petitions, including, without limitation, as to any appeal bond – have been finally disposed of, such that the time to appeal therefrom (including, without limitation, any potential extension of time) has expired, in a manner resulting in an affirmance of the relevant order or judgment.

32.     "Final Settlement Date" means the date on which the Approval Order and the Judgment become Final.

33. "*Finazzo* Action" means the action filed on November 15, 2019, which was originally captioned *Finazzo v. Bergman, et al.*, Case No. 1:19-cv-06485-LDH-JO (E.D.N.Y), and is now part of the Consolidated Derivative Action.

34. "*Finazzo* Complaint" means the complaint filed in the *Finazzo* Action.

35. "First Relevant Period" means March 7, 2013 through February 12, 2018.

36. "FTC" means the United States Federal Trade Commission.

37. "Judgment" means the judgment entered by the Court as contemplated in Section X.B of this Settlement Agreement, which judgment the Settling Parties shall ask the Court to enter substantially in the form set out in Exhibit D.

38. "Legal Holiday" means New Year's Day, the observance of the Birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day, and any other day designated as a federal or New York state holiday.

39. "M&A Guidelines" means the guidelines set out in Exhibit F.

40. "Mediation Session" means the two-day mediation session on February 4 and 5, 2020 in which Derivative/Nominal Defendants' Counsel, representatives of Schein, Derivative Co-Lead Counsel, representatives of Schein's directors' and officers' liability insurers, and the Mediator and his colleagues Jed Melnick and Simone Lelchuk participated.

41. "Mediator" means retired California Superior Court Judge Daniel Weinstein.

42. "Merger Agreement" means the Agreement and Plan of Merger dated as of April 20, 2018, by and among Schein, Spinco, HS Merger Sub, Inc., VFC and Shareholder Representative Services LLC, as amended, modified or supplemented from time to time.

43.     "Notice" means the notice described in Section V.B.1 of this Settlement Agreement, which notice the Settling Parties shall ask the Court to approve substantially in the form set out in Exhibit B.

44.     "Offering Documents" means the Registration Statement and the Prospectus.

45.     "Operative Facts" means those facts and circumstances that provide the factual predicate for the claims asserted in the Consolidated Derivative Action and shall include, among other things:

a.      any alleged violations of antitrust or other anticompetition laws or regulations by Schein in its dental business and/or any alleged knowledge by Schein of purported violations of antitrust or other anticompetition laws or regulations by others (including, without limitation, Schein's competitors in the dental business), including, without limitation, any conduct alleged in the Antitrust Proceedings or the Derivative Complaints;

b.      any alleged meetings, dealings, arrangements, communications, agreements, conspiracies, or attempts between or among Schein and any of its competitors, including, without limitation, Benco Dental Supply Company, Patterson Companies, Inc., and Burkhart Dental Supply, that allegedly constituted, were related to, or were entered into in connection with an alleged restraint of trade or other anticompetitive conduct whereby Schein or any other party allegedly agreed (or indicated any intention to agree):

(1)      to boycott, refuse to offer discounted prices to, or otherwise refuse to negotiate or deal with a buying group, group purchasing organization, or any other customer or potential customer [*Finazzo* Complaint ¶¶ 7, 180];

(2) to fix or adjust prices or margins on dental supplies or equipment, or otherwise not to compete on price, including, without limitation, by charging similar or higher prices or margins on dental supplies or equipment [*id.* ¶¶ 7, 180-81];

(3) not to pursue or poach a competitor's existing or prospective business, customers, or sales representatives [*id.* ¶¶ 7, 180, 188];

(4) to block, boycott, threaten, or retaliate against entities (including, without limitation, competing distributors) seeking to enter the dental market or expand their business in that market, or entities seeking to compete on price or to undercut prices in that market [*id.* ¶ 189];

(5) to pressure or boycott manufacturers (through threats or otherwise) to terminate relations with distributors (including, without limitation, online sellers) in the dental market or to cause new entrants to raise prices or face being cut off from products [*id.* ¶¶ 189-90];

(6) to prevent online sellers from supplying dentists with products at reduced margins [*id.* ¶¶ 192, 204, 211, 221];

(7) to pressure state dental associations (including, without limitation, the Texas Dental Association and the Arizona Dental Association) or other organizations not to do business with competitors or would-be competitors, including, without limitation, through any alleged boycotts of state dental associations' trade shows [id. ¶¶ 204-05, 213-21]; or

(8) to prevent buying groups or group purchasing organizations from successfully competing in the dental supply and equipment distribution market [*id.* ¶¶ 194, 196];

c.      any concealment of any alleged dealings, arrangements, communications, agreements, or conspiracies that allegedly involved a restraint of trade or other anticompetitive conduct in the dental market [*id.* ¶ 193];

d.      any alleged boycott of dentists who purchased supplies from price-competing competitors, including, without limitation, by allegedly withholding services or repairs for installed equipment, charging higher prices for any services or repairs, or significantly delaying any services or repairs [*id*. ¶ 206];

e.      any alleged communications (whether internal to Schein or external, and whether oral or written) relating to or evidencing any of the alleged conduct described in Sections I.A.45.a-d;

f.      any allegedly illegal unilateral engagement or involvement in any of the alleged conduct described in Sections I.A.45.a-e;

g.      any allegedly false or misleading statements or omissions in any SEC filings (including, without limitation, Forms 10-Q and 10-K and proxy statements), Exchange Act or SOX certifications, or press releases filed or issued during the First Relevant Period relating to the matters described in Sections I.A.45.a-f, including, without limitation, those addressing (*i*) competition (or alleged lack of competition) in the dental market, including, without limitation, Schein's competitive position, Schein's primary competitors, conduct in the dental market, and risks facing Schein as a result of competition in the dental market, (*ii*) pricing strategies, competitive pricing, cost containment, margins, and profits, (*iii*) Schein's dental business (including, without limitation, the strength of that business), Schein's value-added model, Schein's products (including, without limitation, private-label products), services, and solutions, Schein's commitment to customer service and value-added products, Schein's

11

customer mix, and the impact of that mix on margins and profit, (*iv*) Schein's infrastructure, (*v*) HMOs, group practices, other managed-care accounts, group purchasing organizations, and buying groups in the dental market, (*vi*) the effect of technological developments on Schein's dental distribution business, (*vii*) the impact of manufacturers' sales directly to end users, (*viii*) private or governmental litigation and/or investigations or any other proceedings involving alleged antitrust or competition issues or claims relating to the dental market (including, without limitation, the Antitrust Proceedings), (*ix*) Schein's financial performance and results, (*x*) Schein's internal controls and policies and/or (*xi*) the healthcare industry in general [*id.* ¶¶ 18, 24, 253-56, 258-316, 319-22, 327-32, 341-44, 347-50, 352-55, 365];

        h.        any alleged misstatements or omissions at industry or investor conferences or in earnings calls or other public statements during the First Relevant Period relating to the matters described in Sections I.A.45.a-g [*id.* ¶¶ 18, 257, 280, 317-18, 323-24, 326, 333-34 345-46, 351, 356, 359];

        i.        any alleged inflation or decline in the price of Schein's stock during the First and/or Second Relevant Period that is related to or arises out of the alleged conduct and/or topics described in Sections I.A.45.a-h, k-r [*id.* ¶¶ 22, 360-61, 363-64, 367];

        j.        any Claims related to sales of Schein stock by any Releasees during the First and/or Second Relevant Period to the extent that such Claims are related in any way to the alleged conduct and/or topics described in Sections I.A.45.a-h, k-r [*id.* ¶¶ 42-43, 48-49, 56-57, 66-67, 72-73, 78-79, 92-93, 102-03, 116-17, 122-23, 136-37, 142-43];

        k.        Schein's repurchases of its common stock during the First Relevant Period [*id.* ¶¶ 382-421];

l.      Schein's spinoff of its Animal Health Business and formation of Spinco [*id.* ¶¶ 11-16, 242-50, 368-77];

m.      the preparation, execution, filing and/or dissemination of the Offering Documents [*id.* ¶¶ 246, 368];

n.      the distribution of Covetrus shares to Schein stockholders and VFC stockholders [*id.* ¶ 247];

o.      Covetrus's payment to Schein, and Schein's receipt of, $1.120 billion in cash and Schein's use of such monies upon receipt, including, without limitation, any dividend provided and/or reconciliation of intracompany account balances effected in connection with such monies [*id.* ¶ 248];

p.      the authorization of, entry into, performance of obligations under and consummation of the Transaction Documents and the transactions contemplated thereunder, including, without limitation, any expenses incurred or amounts charged to Covetrus in connection with or pursuant to any of the Transaction Documents [*id.* ¶¶ 249, 377];

q.      any alleged inflation in Covetrus's stock price during the Second Relevant Period [*id.* ¶ 381];

r.      any allegedly misleading statements or omissions in public filings (including, without limitation, the Offering Documents) or public statements (including, without limitation, at industry conferences) regarding the alleged conduct described in Sections I.A.45.l-q and/or addressing (*i*) Covetrus's key strengths, (*ii*) the key benefits of the merger, (*iii*) the complementary fit of VFC and Schein's Animal Health Business, (*iv*) due diligence in connection with the merger, (*v*) the state of Schein's Animal Health Business at the time of the Spin-Off Merger, (*vi*) Covetrus's ability to compete in the market, (*vii*) Covetrus's infrastructure

13

investments, supply chain capabilities, software platforms and inventory management, (*viii*) merger synergies, (*ix*) financial (including, without limitation, EBITDA) projections and/or guidance for Covetrus, (*x*) Covetrus's awareness of infrastructure investments (including, without limitation, the expenses involved), (*xi*) the Transaction Documents (including, without limitation, the expenses involved), (*xi*) integration of the merged companies, (*xiii*) the competitive nature of the animal-health market, (*xiv*) the loss of any customers and/or (*xv*) stockholder value created by the Spin-Off Merger [*id.* ¶¶ 368-77];

s.    Schein's governance, policies, practices, procedures and internal controls, including, without limitation, any alleged deficiencies or weaknesses in such controls, and compliance or purported non-compliance with any policies, practices, procedures, controls or codes of conduct, including, without limitation, Schein's Worldwide Business Standards and Code of Ethics, during the First and/or Second Relevant Periods [*id.* ¶¶ 17, 23, 152, 162-73, 336, 338-39];

t.    any compensation received by any Releasee during the First and/or Second Relevant Periods [*id.* ¶¶ 41, 47, 55, 61, 65, 71, 77, 83, 87, 91, 97, 101, 107, 111, 115, 121, 127, 131, 135, 141, 436-50, 503];

u.    the performance of any fiduciary duties by the Releasees or any alleged breach of any fiduciary duties owed by the Releasees to Schein during the First and/or Second Relevant Periods [*id.* ¶¶ 146-56, 487-99];

v.    any allegedly unjust enrichment received by any Releasee during the First and/or Second Relevant Periods as a result of the alleged conduct described in Sections I.A.45.a-t [*id.* ¶¶ 502-03];

14

w.     any alleged waste of corporate assets that occurred during the First and/or Second Relevant Periods as a result of any alleged conduct described in Sections I.A.45.a-v [*id.* ¶¶ 516-18];

x.     any Claim under Exchange Act Sections 10(b), 14(a), 20(a), SEC Rule 10b-5 and/or any other federal securities laws as a result of the alleged conduct described in Sections I.A.45.a-w [*id.* ¶¶ 466-72, 476-81, 484];

y.     any Claims for abuse of control or gross mismanagement by any Releasee during the First and/or Second Relevant Periods arising out of the alleged conduct described in Sections I.A.45.a-w [*id.* ¶¶ 507-08, 511-13];

z.     any Releasee's involvement in, statements or omissions about, or alleged participation in, the conduct described in Sections I.A.45.a-y;

aa.    any alleged damages to Schein resulting from the conduct described in Sections I.A.45.a-z; and

bb.    any liability of any sort (including, without limitation, the cost of defending the Release in this Settlement Agreement against any Claim for liability) imposed upon Schein or any Releasee arising out of, or as result of, the alleged conduct described in this Section I.A.45, including, without limitation, any liability directly or indirectly arising out of (*i*) the facts and circumstances that gave rise to the Antitrust Proceedings, the 2018 Securities Class Action and/or the 2019 Covetrus Securities Class Action, (*ii*) the prosecution, defense and/or resolution of the Antitrust Proceedings, the 2018 Securities Class Action and/or the 2019 Covetrus Securities Class Action and/or (*iii*) a Claim brought directly by Covetrus, or derivatively on behalf of Covetrus, against Schein or any Releasee that arises directly or

Case 1:19-cv-00855-BLW Document 31-5 Filed 04/08/20 Page 26 of 117 PageID #: 842
Case 1:19-cv-00855-BLW Document 31-5 Filed 04/08/20 Page 26 of 117 PageID #: 964
1256

indirectly out of alleged conduct described in Sections I.A.45.l-z and/or out of the 2019 Covetrus Securities Class Action [*id.* ¶¶ 24, 381, 423-27].

46.     "Preliminary Approval Date" means the date on which the Court enters the Preliminary Approval Order.

47.     "Preliminary Approval Order" means the order to be entered by the Court, as contemplated in Section IX.A of this Settlement Agreement, which order the Settling Parties shall ask the Court to enter substantially in the form set out in Exhibit A.

48.     "Prospectus" means the prospectus filed on Form 424B by Covetrus with the SEC on February 7, 2019, including, without limitation, any and all amendments.

49.     "Registration Statement" means the registration statement on Form S-4 filed by Spinco with the SEC on December 28, 2018, including, without limitation, any and all amendments.

50.     "Release" means the release provisions set forth in Section VI.A of this Settlement Agreement.

51.     "Released Securities Holder/Company Claims" means each and every Claim that as of, on or before the Final Settlement Date, (*i*) Derivative Plaintiffs or any other Securities Holder asserted in any of the Derivative Complaints, or could have asserted or could assert derivatively on behalf of Schein against any of the Releasees in connection with any of the Operative Facts or (*ii*) Schein could have asserted or could assert directly in its own right against any of the Releasees in connection with any of the Operative Facts, whether, with respect to both subsections (*i*) and (*ii*) above of this Section I.A.51, such Claims arise under federal, state, or other statutory or common-law rule or under foreign law and without respect to the court, tribunal, agency or other forum in which any asserted Claims have been brought; *provided* that

Released Securities Holder/Company Claims shall not include (*i*) any Claim to enforce this Settlement Agreement, (*ii*) any direct Claim of any Derivative Plaintiff or any other Securities Holder brought on his, her or its own behalf against a Releasee, including, without limitation, any direct claim arising out of federal or state securities law, (*iii*) any direct Claim of any Derivative Plaintiff or any other Securities Holder on his, her, or its own behalf against Covetrus, (*iv*) any derivative Claim by any Covetrus stockholder (in his, her or its capacity as such) on behalf of Covetrus against any Releasee, (*v*) any direct Claim by Covetrus against any Releasee, or (*vi*) any Claims that arise out of conduct first occurring after the Final Settlement Date.

52.    "Released Settlement Claims" means each and every Claim that has been, could have been or could be asserted in the Consolidated Derivative Action or in any other proceeding by any Releasor (including, without limitation, Derivative Plaintiffs, Derivative Co-Lead Counsel or Schein) or Releasee (including, without limitation, Derivative Defendants and Derivative/Nominal Defendants' Counsel) that arises out of any and all acts, omissions, nondisclosure, facts, matters, transactions, occurrences or oral or written statements or representations in connection with (*i*) the prosecution, defense or settlement of the Consolidated Derivative Action and/or (*ii*) the facts and circumstances of this Settlement Agreement, the Settlement terms and their implementation and administration (including, without limitation, the provision of notice in connection with the proposed Settlement); *provided* that Released Settlement Claims shall not include any Claim to enforce this Settlement Agreement.

53.    "Releasee" means each and every one of, and "Releasees" means all of, the following:

a.    Derivative Defendants and their Family Members, heirs, executors, beneficiaries, representatives, assigns, agents, attorneys (including, without limitation,

Derivative/Nominal Defendants' Counsel), advisors, trustees, administrators, fiduciaries, consultants, service providers, successors in interest, accountants, accounting advisors and auditors; and

        b.      Schein, each and every Schein Releasee, and each and every Schein Releasee's past or present parents, predecessors, successors in interest, Affiliates, divisions, business units, subsidiaries, governors, directors, executive-committee members, officers, officials, employees, members, partners, principals, agents, attorneys (including, without limitation, in-house or outside attorneys), advisors, investment bankers, trustees, administrators, fiduciaries, beneficiaries, consultants, representatives, underwriters, assigns, agents, accountants, accounting advisors, auditors, insurers, reinsurers, service providers, valuation firms, and any other entities in which the relevant Releasee has a Controlling Interest or that has a Controlling Interest in it.

        54.      "Releasor" means each and every one of, and "Releasors" means all of, the following:

        a.      Derivative Plaintiffs,

        b.      all other Securities Holders,

        c.      Schein,

        d.      for each of the Releasors identified in Sections I.A.54.a, I.A54.b or I.A.54.c, each of his, her or its beneficiaries, representatives, assigns, agents, attorneys (including, without limitation, Derivative Co-Lead Counsel and an entity's General Counsel and other in-house or outside attorneys), advisors, trustees, administrators, fiduciaries, consultants, service providers, successors in interest, accountants, accounting advisors and auditors;

Case 1:19-cv-06485-LDH-MMO Document 31-2 Filed 10/28/20 Page 29 of 111 PageID #: 967
Case 1:19-cv-06485-LDH-MMO Document 31-2 Filed 10/28/20 Page 29 of 111 PageID #: 967
1259

e.      for each of the Releasors identified in Sections I.A.54.a, I.A.54.b, I.A.54.c or I.A.54.d that is an entity, each of its past or present parents, predecessors, successors, Affiliates, divisions, business units, subsidiaries, governors, directors, executive-committee members, officers, officials, employees, members, partners or principals, and any other entities in which a Releasor has a Controlling Interest or that have a Controlling Interest in a Releasor; and

f.      for each of the Releasors identified in Sections I.A.54.a, I.A.54.b or I.A.54.d that is a natural person, each of his or her Family Members, heirs and executors.

55.     "Schein" means nominal defendant Henry Schein, Inc.

56.     "Schein Releasees" means Schein and any or all of its respective past or present parents, predecessors, successors in interest, Affiliates, divisions, business units, subsidiaries, governors, past and present directors, executive-committee members, officers, officials, employees, members, partners, principals, agents, attorneys (including, without limitation, in-house or outside attorneys), advisors, underwriters, investment bankers, trustees, administrators, fiduciaries, beneficiaries, consultants, representatives, assigns, agents, accountants, accounting advisors, auditors, insurers, reinsurers, service providers, valuation firms, and any other entities in which Schein has a Controlling Interest or that have a Controlling Interest in it.

57.     "SEC" means the United States Securities and Exchange Commission.

58.     "Second Relevant Period" means February 8, 2019 through January 6, 2020.

59. "Securities Holders" means any and all individuals or entities that hold or held, or beneficially own or owned, directly or indirectly, common stock or other equity securities of Schein on or before the Execution Date.

60. "Service Awards" means the payments awarded to Derivative Plaintiffs for their service in the Consolidated Derivative Action.

61. "Settlement" means the settlement contemplated by this Settlement Agreement.

62. "Settlement Agreement" means this Stipulation of Settlement and the Exhibits attached to it, including, without limitation, any subsequent written amendments to the Stipulation of Settlement and/or its Exhibits.

63. "Settlement Escrow Account" means the account described in Section VII.B into which the Attorneys' Fees and Expenses Amount shall be paid, which account shall be under the joint control of Derivative Co-Lead Counsel and Derivative/Nominal Defendants' Counsel.

64. "Settlement Relief" means the Antitrust Enhancements and the M&A Guidelines.

65. "Settling Parties" means Derivative Plaintiffs, Derivative Defendants and Schein.

66. "*Sloan* Action" means the action filed on January 6, 2020, which was originally captioned *Sloan v. Bergman, et al.*, 1:20-cv-00076 (E.D.N.Y), and is now part of the Consolidated Derivative Action.

67. "*Sloan* Complaint" means the complaint filed in the *Sloan* Action.

68. "SOX" means the Sarbanes-Oxley Act of 2002.

69. "Spin-Off Merger" means the transaction by which Spinco merged with VFC to create Covetrus.

70. "Spinco" means HS Spinco, the entity incorporated by Schein into which Schein spun its Animal Health Business.

71. "Term Sheet" means the document memorializing the agreement in principle to resolve the claims in the Consolidated Derivative Action executed by the Settling Parties on February 5, 2016, including, without limitation, any addendum or modifications to it.

72. "Termination Date" means the date on which any of the Settling Parties provides notice that he, she or it is exercising a right to terminate this Settlement Agreement under Section XII.B.

73. "Transaction Documents" means the Merger Agreement and all of the documents, agreements, certificates and instruments executed and delivered in connection with the transactions contemplated by the Merger Agreement, including, without limitation, the Distribution Agreement, the Transition Services Agreement, the Employee Matters Agreement, the Tax Matters Agreement and the Escrow Agreement, in each case as defined in the Merger Agreement and as amended, modified or supplemented from time to time.

74. "Unknown Claims" means any and all Released Securities Holder/Company Claims and Released Settlement Claims that any Releasor does not know or suspect exist in his, her or its favor at the time of the release of the Releasees, and any and all Released Settlement Claims or Derivative Defendants' Mutually Released Claims that any Derivative Defendant or Releasee does not know or suspect to exist in his, her or its favor at the time of the release of the Releasors, which, if known by any such Releasors or Releasees might have affected his, her or its decision(s) concerning this Settlement. As to any and all Claims

released in this Settlement Agreement, the Settling Parties stipulate and agree that, upon the

Final Settlement Date, the Settling Parties shall expressly waive, and each other Securities

Holder, Releasee and Releasor shall be deemed to have waived, and by operation of the

Approval Order and the Judgment shall have expressly waived, any and all provisions, rights and

benefits conferred by any law of any state or territory of the United States or of any other

country, or any principle of common law, that is similar, comparable, or equivalent to Cal. Civ.

C. § 1542, which provides:

> A general release does not extend to claims which the creditor or
> releasing party does not know or suspect to exist in his or her favor
> at the time of executing the release and that, if known by him or
> her would have materially affected his or her settlement with the
> debtor or released party.

The Settling Parties acknowledge that the inclusion of "Unknown Claims" in the definition of

Released Securities Holder/Company Claims, Released Settlement Claims, and Derivative

Defendants' Mutually Released Claims was separately bargained for and was a key element of

the Settlement.

     75.    "VFC" means Direct Vet Marketing, Inc. (d/b/a Vets First Choice).

B.    **Capitalized Terms**

     1.    Capitalized terms used in this Settlement Agreement, but not defined

above, shall have the meaning ascribed to them in this Settlement Agreement.

II.    **PROCEEDINGS**

A.    **The Consolidated Derivative Action**

     1.    On November 15, 2019, Frank Finazzo filed the *Finazzo* Action.  The

*Finazzo* Complaint brings claims derivatively on behalf of Schein against the Derivative

Defendants.  It alleges that the Derivative Defendants breached their fiduciary duties as directors

and/or officers of Schein, were unjustly enriched, engaged in abuse of control, gross

mismanagement and corporate waste, and violated Exchange Act Sections 10(b), 14(a) and 20(a) and SEC Rule 10b-5. The *Finazzo* Complaint alleges misconduct giving rise to such claims.

2.     On January 6, 2020, Mark Sloan filed the *Sloan* Action. The *Sloan* Complaint makes claims virtually identical to those made in the *Finazzo* Complaint.

3.     On January 9, 2020, the Derivative Plaintiffs moved to consolidate the *Finazzo* Action and the *Sloan* Action and establish a leadership structure. The Court granted the motion on January 24, 2020, consolidating the actions, appointing Derivative Co-Lead Counsel as co-lead counsel for plaintiffs in the Consolidated Derivative Action and requiring the parties to submit a proposed schedule for filing of any consolidated complaint and/or designation of an operative complaint and Derivative Defendants' and Schein's response to such complaint.

4.     In a February 21, 2020 letter to the Court, the Settling Parties advised the Court that they had agreed in principle to a resolution of the Consolidated Derivative Action, subject to various conditions, including, without limitation, certain discovery, the drafting and execution of a definitive settlement agreement and Court approval.

**B.    Mediation**

1.     During the Mediation Session, Derivative Co-Lead Counsel and Derivative/Nominal Defendants' Counsel engaged in negotiations regarding resolution of the Consolidated Derivative Action. At the end of the two-day session, they agreed on the Settlement Relief terms, attaching both components of the Settlement Relief as Exhibits to the Term Sheet.

2.     Only after the Term Sheet was executed did Derivative Co-Lead Counsel and Derivative/Nominal Defendants' Counsel negotiate the payment of Derivative Co-Lead Counsel's fees and expenses.

        3.      Based on, among other things, discussions with the Mediator and Mr. Melnick about the Settlement Relief, the Settling Parties came to an agreement that Schein would, subject to Court approval, pay or cause to paid to Derivative Co-Lead Counsel the Attorneys' Fees and Expenses Amount, which amount is the mid-point within the range of reasonableness recommended by the Mediator.

## III.    SETTLEMENT CONSIDERATIONS

        A.      Based upon (*i*) investigation into and evaluation of the facts and laws relating to the Claims alleged in the Consolidated Derivative Action, (*ii*) factual information to which Derivative Plaintiffs (through Derivative Co-Lead Counsel) had access prior to the Execution Date, (*iii*) Schein's agreement to adopt the Settlement Relief as part of the Settlement, (*iv*) access to Confirmatory Discovery both prior to and after the Execution Date as contemplated in Section IV, (*v*) investigations and legal analysis conducted before and during the pendency of the *Finazzo* Action, the *Sloan* Action and the Consolidated Derivative Action, (*vi*) sessions with the Mediator and his colleagues, and (*vii*) Derivative Plaintiffs' and Derivative Co-Lead Counsel's determination (subject to the completion of Confirmatory Discovery) that the terms of the proposed Settlement are fair, reasonable and adequate and in the best interests of Schein and its stockholders, Derivative Plaintiffs have agreed to settle the Consolidated Derivative Action and to release the Releasees from Released Securities Holder/Company Claims and Released Settlement Claims pursuant to the terms of this Settlement Agreement.

        B.      Derivative Defendants expressly deny that the Claims that were, could have been or could be asserted in the Consolidated Derivative Action have any merit or that pursuit of such Claims would be in the best interests of Schein or its stockholders.  Derivative Defendants expressly deny all assertions of wrongdoing or liability arising out of any of the conduct, statements, acts or omissions that were, could have been or could be alleged in the Consolidated

Derivative Action or any related actions. Schein considers the terms of the Settlement as set out in this Settlement Agreement to be in the best interests of Schein and its stockholders because the Settlement would, among other things, (*i*) confer substantial benefits on Schein and its stockholders through adoption of the Settlement Relief, which benefits were directly and proximately caused by Derivative Plaintiffs' filing of the *Finazzo* Action and the *Sloan* Action (and subsequent consolidation of those actions in the Consolidated Derivative Action) and the Settlement, (*ii*) bring to an end the expenses, burdens and uncertainties associated with continued litigation of the Consolidated Derivative Action and (*iii*) avoid potential further expenses and disruption of management and Schein's operations due to the pendency and defense of the Consolidated Derivative Action.

     C.    Throughout the pendency of the *Finazzo* Action, the *Sloan* Action, the Consolidated Derivative Action and the settlement negotiations, all of the Settling Parties have been advised by counsel competent in litigating derivative actions.

## IV.   **CONFIRMATORY DISCOVERY**

     A.    During the Confirmatory Discovery Period, subject to the provisions of the Confidentiality Agreement, Derivative Plaintiffs (through Derivative Co-Lead Counsel) shall have had, and shall continue to have, reasonable access to Confirmatory Discovery, the scope of which shall be determined through good faith negotiations between the Derivative Plaintiffs and Schein, regarding the Operative Facts underlying the claims in the *Finazzo* Complaint and the *Sloan* Complaint to confirm that such facts are consistent with Derivative Plaintiffs' and Derivative Co-Lead Counsel's understanding and belief that the proposed Settlement is fair, reasonable and adequate.

B.     Derivative Co-Lead Counsel shall attempt in good faith to coordinate their review of and access to Confirmatory Discovery with plaintiffs' counsel in the 2018 Securities Class Action.

C.     As determined by Derivative Plaintiffs, Derivative Co-Lead Counsel, and Schein, the Confirmatory Discovery to which Derivative Plaintiffs (through Derivative Co-Lead Counsel) shall have access shall include informal interviews of relevant Schein officials.

D.     Subject to Sections XII.B.3 and XII.C, if, as a result of reviewing the Confirmatory Discovery contemplated by this Section IV, Derivative Plaintiffs and Derivative Co-Lead Counsel reasonably and in good faith do not believe that the proposed Settlement Agreement is fair, reasonable and adequate, Derivative Plaintiffs shall have the right to terminate this Settlement Agreement, as set out in Section XII.B.3.

V.     **TERMS AND CONDITIONS OF THE SETTLEMENT**

A.     **Settlement Relief**

1.     Subject to the provisions of this Section V.A Schein shall adopt, implement and maintain the Settlement Relief.

2.     The Antitrust Enhancements shall be adopted, implemented and maintained consistent with the Statement of Intent found in the Antitrust Enhancements, set out in Exhibit E.

3.     The M&A Guidelines shall be adopted, implemented and maintained consistent with the Statement of Intent found in the M&A Guidelines, set out in Exhibit F.

B.     **Notice to Securities Holders and Other Communications**

1.     **Notice**

a.     No later than sixty (60) days before the deadline for objecting to the Settlement, (*i*) the Settling Parties shall cause the Notice to be mailed by first-class mail to all

current, identifiable Securities Holders, and (*ii*) Derivative Co-Lead Counsel shall cause the Notice and Settlement Agreement to be posted on each of their respective websites.

        b.      No later than fifty (50) days before the deadline for objecting to the Settlement, (*i*) the Settling Parties shall cause the Notice to be published in the *Wall Street Journal* and *Investor's Business Daily*, as well as on wire services.

        c.      The Notice shall contain links to the websites of Derivative Co-Lead Counsel where the Settlement Agreement will be posted, which posting shall be maintained through the Final Settlement Date.

        d.      The Settling Parties believe that the form and method of notice specified in this Section V.B.1 (*i*) satisfy the requirements of the Federal Rules of Civil Procedure, the Rules of the Court and due-process principles, (*ii*) sufficiently inform all relevant persons and entities about the Settlement Agreement, the pendency of the Consolidated Derivative Action and the Fairness Hearing, and their right to object to the Settlement and (*iii*) are reasonable and constitute due, adequate and sufficient notice to all persons entitled to notice.

        e.      Schein shall pay or cause to be paid any notice expenses attributable to providing notice of the Settlement as set out in Sections V.B.1.a and V.B.1.b, or as otherwise ordered by the Court.

        2.      **Direct Communications with Securities Holders**

        a.      Derivative Plaintiffs acknowledge and agree that Schein retains the right to communicate with its stockholders.  To the extent that any such communications relate to the Consolidated Derivative Action or the proposed Settlement, such communications shall be limited to the following:

(1)     Communications between stockholders and representatives of Schein whose responsibilities include investor relations;

(2)     Communications as may be necessary to implement the terms of this Settlement Agreement; and

(3)     Such communications as may be made in the conduct of Schein's business, including, without limitation, complying with any applicable regulatory requirements.

3.     **Other Communications**

a.     The Settlement terms shall not be publicly disclosed before a motion for preliminary approval of the settlement is filed with the Court unless (*i*) Schein, in its sole discretion, otherwise determines to disclose the terms or (*ii*) Court obligations otherwise require disclosure of the terms.

b.     The Settling Parties shall have the opportunity to review each other's press releases (if any), and any public statement addressing Schein or the Settlement issued by the Derivative Plaintiffs or Derivative Co-Lead Counsel must be pre-approved by Schein.

c.     The Settling Parties shall cooperate to ensure that any public statements regarding the Settlement are balanced, fair, accurate and non-disparaging

d.     Nothing in this Section V.B.3 shall prevent Schein from making whatever disclosure regarding the Settlement it believes might be required or appropriate before the motion for preliminary approval is filed with the Court, including, without limitation, to Schein's regulators, stock exchanges, attorneys, accountants and insurers; *provided* that Schein shall inform Derivative Co-Lead Counsel in advance of any such pre-filing public disclosure it

intends to make; *provided further* that nothing in this Section V.B.3 shall preclude the Derivative Defendants from denying liability. For the avoidance of doubt, nothing in this Settlement Agreement shall prevent Schein (or other Releasees) from announcing the existence of the Settlement and its potential impact on Schein's financial performance, as Schein may deem appropriate for securities-law purposes (including, without limitation, by way of SEC filing or press release). Nor shall this Settlement Agreement prevent Schein (or other Releasees) from publicly stating, including, without limitation, in response to questions from investors, analysts, customers, or others, that it has entered into the Settlement to avoid the further expense and distraction of continued litigation.

C.    **Dispute Resolution**

1.    If any dispute arises regarding (*i*) the Notice to be provided to Securities Holders, (*ii*) whether a court-ordered modification as described in Section XII.B.2 is material, or (*iii*) the administration of this Settlement Agreement, such dispute shall be submitted to the Mediator (or, if the Mediator is unavailable, someone of similar stature upon whom the Settling Parties agree) for binding, nonappealable decision.

2.    If any dispute arises regarding whether Schein, any other Releasee or any Releasor has a Controlling Interest in any entity or whether an entity has a Controlling Interest in Schein, any other Releasee or any Releasor for purposes of determining whether a Controlling exists under this Settlement Agreement, such dispute shall be submitted to the Mediator (or, if the Mediator is unavailable, someone of similar stature upon whom the parties involved in the dispute agree) for binding, nonappealable decision.

3.    If a dispute is submitted to the Mediator pursuant to Section V.C.1, the Derivative Plaintiffs (on the one hand) and Schein and the Derivative Defendants (on the other

hand) shall each be responsible for paying or causing to be paid one-half (1/2) of any fees charged or expenses incurred by the Mediator in connection with resolving such dispute.

   4. If a dispute is submitted to the Mediator pursuant to Section V.C.2, each of the parties involved in the dispute shall be responsible for paying or causing to be paid his, her or its pro rata share of any fees charged or expenses incurred by the Mediator in connection with resolving such dispute.

## VI. RELEASES AND WAIVERS, ORDER APPROVING SETTLEMENT AND JUDGMENT

  A. **Releases and Waivers**

   1. Pursuant to the Approval Order and the Judgment, without further action by anyone, and subject to Section VI.A.5 below, upon the Final Settlement Date, Derivative Plaintiffs, all other Securities Holders and Schein, on behalf of themselves and all other Releasors, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have, fully, finally and forever released, relinquished, settled and discharged:

    a. any and all Released Securities Holder/Company Claims against each and every one of the Releasees, except to the extent otherwise specified in this Settlement Agreement; and

    b. any and all Released Settlement Claims against each and every one of the Releasees except to the extent otherwise specified in this Settlement Agreement.

   2. Pursuant to the Approval Order and Judgment, without further action by anyone, and subject to Section VI.A.5 below, upon the Final Settlement Date, each and every Releasee, including, without limitation, Derivative/Nominal Defendants' Counsel, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be

deemed to have, and by operation of law and of the Approval Order and the Judgment shall have, fully, finally and forever released, relinquished, settled and discharged any and all Released Settlement Claims against each and every one of the Releasors, including, without limitation, Derivative Co-Lead Counsel, except to the extent otherwise specified in this Settlement Agreement.

3.      Pursuant to the Approval Order and the Judgment, without further action by anyone, and subject to Section VI.A.5 below, upon the Final Settlement Date, Derivative Co-Lead Counsel, on behalf of themselves, and any person or entity claiming by, through, or on behalf of any of them, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have, fully, finally and forever released, relinquished, settled and discharged any and all Released Settlement Claims against each and every one of the Releasees, including, without limitation, Derivative/Nominal Defendants' Counsel, except to the extent otherwise specified in this Settlement Agreement.

4.      Pursuant to the Approval Order and the Judgment, without further action by anyone, and subject to Section VI.A.5 below, upon the Final Settlement Date, Derivative Defendants, on behalf of themselves, their heirs, executors, administrators, predecessors, successors, Affiliates, assigns, and any person or entity claiming by, through, or on behalf of any of them, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have, fully, finally and forever released, relinquished, settled and discharged each other from any and all Derivative Defendants' Mutually Released Claims.

5.      Notwithstanding Sections VI.A.1 through VI.A.4 above, nothing in the Preliminary Approval Order, the Approval Order or the Judgment shall bar any action or Claim:

a.      by the Settling Parties or their counsel to enforce the terms of this Settlement Agreement, the Approval Order or the Judgment;

b.      by Derivative/Nominal Defendants' Counsel seeking from a Releasee, Schein, or Schein's or a Releasee's insurers reimbursement for fees and expenses incurred in representing any Releasee;

c.      belonging to Schein or any insured Releasee against any of Schein's or any other Releasee's insurers arising out of or relating to any potentially applicable insurance contracts or other agreements; *provided* that any such Claim must be asserted directly by Schein or the insured Releasee in his, her or its own right; and

d.      by any Releasee who is or was employed by or associated with Schein or a Schein Releasee, with respect to any such individual's rights under or to (*i*) pension plans, 401(k) plans, separation agreements, employment agreements, stock options, salary benefits or any other benefit plan, including, without limitation, health plans, in which such Releasee participates as a result of his or her current or former employment or association with Schein or a Schein Releasee or (*ii*) indemnification, advancement or insurance coverage with respect to any claim a Releasee has against Schein or a Schein Releasee including, without limitation, by way of contract or otherwise.

6.      The releases and waivers contained in this Section VI.A were separately bargained for and are essential elements of this Settlement Agreement.

B.     **Order Approving Settlement and Judgment**

1.     The Settling Parties shall obtain from the Court the Approval Order and the Judgment as further described in Section X.B below.

VII.   **ATTORNEYS' FEES AND EXPENSES**

A.     Derivative Co-Lead Counsel shall seek approval from the Court for attorneys' fees and expenses in an amount not to exceed the Attorneys' Fees and Expenses Amount.

B.     In consideration of the substantial benefits conferred upon Schein and its stockholders through adoption of the Settlement Relief, which benefits were directly and proximately caused by Derivative Plaintiffs' filing of the *Finazzo* Action and the *Sloan* Action (and subsequent consolidation of those actions into the Consolidated Derivative Action) and the Settlement, Schein shall pay or cause to be paid to Derivative Co-Lead Counsel the Attorneys' Fees and Expenses Amount pursuant to the following terms and conditions:

1.     Within five (5) Business Days following the Execution Date, Derivative Co-Lead Counsel and Derivative/Nominal Defendants' Counsel shall establish the Settlement Escrow Account and jointly instruct the escrow agent as to how any payment to the Settlement Escrow Account shall be invested.

2.     The Attorneys' Fees and Expenses Amount shall be paid into the Settlement Escrow Account within twenty (20) Business Days following the Preliminary Approval Date and shall remain in the Settlement Escrow Account until such time as the Attorneys' Fees and Expenses Amount is paid out pursuant to the terms of this Settlement Agreement.

3.     Within five (5) Business Days following the Approval Date, or such other date on which the Court issues an Attorneys' Fees and Expenses Award, (*i*) the amount equal to the Attorneys' Fees and Expenses Award (plus any interest that has accrued on that amount since

that amount was paid into the Settlement Escrow Account) shall be paid at the direction of

Derivative Co-Lead Counsel, and (*ii*) if there is any amount remaining in the Settlement Escrow

Account after such payment is made as directed by Derivative Co-Lead Counsel, it shall be paid

at the direction of Derivative/Nominal Defendants' Counsel; *provided* that neither Schein nor

any Releasee shall be responsible for (*i*) any additional payment to Derivative Co-Lead Counsel

or (*ii*) any payment in excess of the Attorneys' Fees and Expenses Amount.

        4.      If (*i*) an appeal of the Approval Order (or any order in which the Court

renders an Attorneys' Fees and Expenses Award) results in a Final order that overturns or

reduces the Attorneys' Fees and Expenses Award or (*ii*) an appeal results in termination of the

Settlement Agreement pursuant to Section XII.B.1 or XII.B.2, Derivative Co-Lead Counsel

undertake to repay (as directed by Derivative/Nominal Defendants' Counsel) within five (5)

Business Days after the appeal order becomes Final the Attorneys' Fees and Expenses Award

either in full or in the amount that reflects the difference between the amount paid to Derivative

Co-Lead Counsel pursuant to Section VII.B.3 and the amount of the reduced Attorneys' Fees and

Expenses Award (plus any interest that has accrued on the amount that is repaid since the date on

which the Attorneys' Fees and Expenses Amount was paid into the Settlement Escrow Account),

as appropriate.

        5.      If the Settlement Agreement is terminated after the Attorneys' Fees and

Expenses Amount has been paid into the Settlement Escrow Account, repayment of that amount

shall occur as follows:

        a.      If the Termination Date is before or on the Approval Date, within

five (5) Business Days following the Termination Date, Derivative Co-Lead Counsel and

Case 1:19-cv-06403-RBW-JMC Document 31-2 Filed 02/28/20 Page 45 of 117 PageID #: 861
Case 1:19-cv-06403-RBW-JMC Document 31-2 Filed 02/28/20 Page 45 of 117 PageID #: 963
1275

Derivative/Nominal Defendants' Counsel shall instruct the escrow agent to pay all monies in the Settlement Escrow Account as directed by Derivative/Nominal Defendants' Counsel.

b.       If the Termination Date is after the Approval Date, within five (5) Business Days following the Termination Date, Derivative Co-Lead Counsel shall repay all monies it has received as the Attorneys' Fees and Expenses Award (plus any interest accrued on the Award) as directed by Derivative/Nominal Defendants' Counsel.

6.       Individuals who are partners of Derivative Co-Lead Counsel submit to the jurisdiction of the Court for purposes of enforcement of any repayment obligations that arise pursuant to Sections VII.B.4-5.

C.       The Attorneys' Fees and Expenses Award shall be the sole compensation paid to Derivative Co-Lead Counsel and any other counsel representing any Derivative Plaintiff in connection with the Consolidated Derivative Action.

D.       The Attorneys' Fees and Expenses Award shall be allocated among Derivative Co-Lead Counsel (and any other counsel representing any Derivative Plaintiff) as agreed by Derivative Co-Lead Counsel.  Neither Schein nor any of the Derivative Defendants shall have any responsibility whatsoever with respect to the allocation of the Attorneys' Fees and Expenses Award.

E.       No Releasee (including, without limitation, Schein) shall be liable for or obligated to pay any fees, expenses, costs or disbursements to, or incur any expense on behalf of, any person or entity (including, without limitation, Derivative Plaintiffs or Derivative Co-Lead Counsel), directly or indirectly, in connection with the Consolidated Derivative Action or this Settlement Agreement except as expressly provided for in this Settlement Agreement.

F.       Derivative Plaintiffs shall not be liable for or obligated to pay any fees, expenses,

costs or disbursement to, or incur any expenses on behalf of, any person or entity (including, without limitation, any Derivative Defendant, Schein or Derivative/Nominal Defendants' Counsel), directly or indirectly, in connection with the Consolidated Derivative Action or this Settlement Agreement, except as expressly provided for in this Settlement Agreement.

G.      In light of the benefits that Derivative Plaintiffs have helped to create for Schein and its stockholders, Derivative Plaintiffs shall apply for Service Awards in an amount up to five thousand dollars ($5,000) each; *provided* that, to the extent the Court approves any Service Awards, such Service Awards shall be funded from the Attorneys' Fee and Expense Award and shall be paid to Derivative Plaintiffs within five (5) Business Days following Final Settlement Date.

VIII.   **OBJECTIONS BY SECURITIES HOLDERS**

A.      Any Securities Holder who wishes to object to the fairness, reasonableness or adequacy of this Settlement Agreement or to any term(s) of this Settlement Agreement may do so subject to the requirements set out in the Preliminary Approval Order.

IX.     **PRELIMINARY HEARING AND PRELIMINARY APPROVAL ORDER**

A.      The Derivative Plaintiffs shall apply to the Court for entry of the Preliminary Approval Order within twenty (20) days following the Execution Date.

X.      **FAIRNESS HEARING, ORDER APPROVING SETTLEMENT, JUDGMENT AND DISMISSAL**

A.      The Settling Parties shall request that the Court schedule a Fairness Hearing at which to consider whether to approve this Settlement Agreement as fair, reasonable and adequate and in the best interest of Schein and its stockholders.

B.      If the Court approves the Settlement contemplated by this Settlement Agreement, the Settling Parties shall jointly request that the Court enter the Approval Order and the

Judgment. The Approval Order shall include, among other provisions, a permanent injunction and the Complete Bar Order regarding Released Securities Holder/Company Claims and Derivative Defendants' Mutually Released Claims. The Judgment will contain a statement that, during the course of the *Finazzo* Action, the *Sloan* Action and the Consolidated Derivative Action, the Settling Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

## XI.   NO ADMISSIONS

A.     This Settlement Agreement, the offer of this Settlement Agreement and implementation of or compliance with this Settlement Agreement shall not constitute or be construed as an admission by any or all of the Releasees of any wrongdoing or liability. This Settlement Agreement is to be construed solely as a reflection of the Settling Parties' desire to facilitate a resolution of the Claims in the Derivative Complaints and of the Released Securities Holder/Company Claims, Released Settlement Claims and Derivative Defendants' Mutually Released Claims. In particular, nothing in this Settlement Agreement, the offer of this Settlement Agreement, or the implementation of or compliance with this Settlement Agreement shall constitute or be construed as an admission by Schein or any of the Releasees that Schein's business and governance policies and practices as they existed prior to the Final Settlement Date were in any way deficient.

B.     The Settling Parties agree that no party was or is a "prevailing party." In no event shall this Settlement Agreement, any of its provisions, or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as or deemed to be evidence of any kind in the Consolidated Derivative Action, any other action, or any other judicial, administrative, regulatory or other proceeding, except a proceeding to enforce this Settlement Agreement, including, without limitation, the Releases.

Case 1:19-cv-00438-RBW Document 31-2 Filed 12/08/20 Page 48 of 111 PageID #: 1664
Case 1:19-cv-00488-RDM Document 135 Filed 12/08/20 Page 38 of 147 PageID #: 1866
1278

C.      Without limiting any of the foregoing provisions in this Section XI, neither this Settlement Agreement nor any related negotiations or agreements (including, without limitation, the Term Sheet), statements or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence of an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, without limitation, Schein and the Derivative Defendants, or as a waiver by Schein or the Derivative Defendants of any applicable defense.

XII.    **MODIFICATION OR TERMINATION OF THIS SETTLEMENT AGREEMENT**

A.      The terms and provisions of this Settlement Agreement may be amended, modified or expanded by written agreement of the Settling Parties; *provided however*, that, after entry of the Approval Order and the Judgment, the Settling Parties may by agreement effect such amendments, modifications or expansions of this Settlement Agreement and its implementing documents without notice to or approval by the Court only as long as such amendments, modifications or expansions are not materially inconsistent with the Approval Order and Judgment and do not limit the rights of Derivative Plaintiffs, any other Securities Holder, Schein, Releasors or Releasees under this Settlement Agreement.

B.      Subject to Sections XII.B.3-4, XII.C and XII.D, this Settlement Agreement shall terminate:

1.      if the Final Settlement Date does not occur;

2.      subject to Sections XII.B.3-4 and XII.C, at the sole option and discretion of any Settling Party if (*i*) the Court, or any appellate court, rejects, modifies or denies approval of any portion of this Settlement Agreement or the proposed Settlement, including, without limitation, the Preliminary Approval Order, the Approval Order and the Judgment, that the

terminating Settling Party reasonably and in good faith determines is material, including, without

limitation, the Complete Bar Order, the provisions relating to Notice and/or the terms of the

Release or (*ii*) the Court, or any appellate court, does not enter or completely affirm, or alters or

expands, any portion of the Preliminary Approval Order, the Approval Order or the Judgment,

including, without limitation, the Complete Bar Order and/or the Release, that the terminating

Settling Party reasonably and in good faith believes is material; *provided* that, if Derivative

Plaintiffs, Schein and one or more Derivative Defendants cannot agree on whether a court-

ordered modification is material, they will refer the issue to the Mediator pursuant to Section

V.C.1, 3 for a binding, nonappealable decision; *provided further* that, for purposes of this

Section XII.B.2, any ruling by the Court (or any appellate court) that rejects, reduces or denies

approval of the Derivative Plaintiffs' request for the Attorneys' Fees and Expenses Amount shall

not be considered to be a rejection, modification or denial of a material portion or term of this

Settlement Agreement or the proposed Settlement; or

      3.    at the sole option and discretion of the Derivative Plaintiffs, within five (5)

days following the completion of the Confirmatory Discovery Period as described in

Section IV.D above.

      4.    Other than with respect to Section XII.B.3, the relevant terminating

Settling Party must exercise an option provided by this Settlement Agreement to terminate it by

providing notice to all other Settling Parties no later than thirty (30) days after receiving actual

notice of the event prompting the termination.

      C.    If an option to terminate this Settlement Agreement arises under this Section XII,

(*i*) no Settling Party shall be required for any reason or under any circumstance to exercise that

option, and (*ii*) any determination to exercise an option to terminate shall be made in good faith.

D.    If this Settlement Agreement is terminated pursuant to its terms, then:

1.    this Settlement Agreement shall be null and void and shall have no force or effect, and no Settling Party or Releasee shall be bound by any of its terms except for the terms set out in this Section XII.D;

2.    this Settlement Agreement and the Term Sheet, and all of their provisions, and all negotiations, statements and proceedings relating to them shall be without prejudice to the rights of the Settling Parties or any other Securities Holder, all of whom shall be restored to their respective positions existing immediately before the Execution Date, except with respect to (*i*) the payment by Schein of any notice expenses incurred prior to the Termination Date as set out in Section V.B.1.e, (*ii*) the payment by the Derivative Plaintiffs, the Derivative Defendants and/or any other party involved in a dispute submitted to the Mediator of any fees or expenses incurred by the Mediator prior to the Termination Date as set out in Section V.C.3-4 or (*iii*) repayment of the Attorneys' Fees and Expenses Amount or the Attorneys' Fees and Expenses Award (as the case may be) as set out in Section VII.B.4-6;

3.    Releasees (including, without limitation Schein and Derivative Defendants) expressly deny any wrongdoing by Releasees and expressly and affirmatively reserve all defenses, arguments and motions that have been or might later be asserted in the Consolidated Derivative Action;

4.    Derivative Plaintiffs expressly and affirmatively reserve all Claims, arguments and motions that have been or might have been asserted in the Consolidated Derivative Action;

5.      neither this Settlement Agreement nor the fact of its having been made shall be admissible or entered into evidence in any proceeding for any purpose whatsoever, except to enforce the terms of this Section XII.D;

6.      neither Schein's agreement to the terms set out in this Settlement Agreement nor its execution of this Settlement Agreement shall constitute or be construed to be an admission by Schein that any wrongdoing has taken place, that any of the Derivative Defendants (or any other Releasee) has engaged in a breach of his, her or its fiduciary duties or engaged in any other actionable conduct in connection with the conduct alleged in the Derivative Complaints, or that any of the Claims made in the Derivative Complaints have any merit or are in the best interests of Schein or its stockholders to pursue;

7.      neither the Derivative Defendants' agreement to the terms set out in this Settlement Agreement nor their execution of this Settlement Agreement shall constitute or be construed to be an admission by the Derivative Defendants collectively or individually that any of the Derivative Defendants breached his or her fiduciary duties or engaged in any other actionable conduct in connection with the conduct alleged in the Derivative Complaints, or that any of the Claims made in the Derivative Complaints have any merit;

8.      the terms and provisions of the Confidentiality Agreement executed in connection with Section IV shall continue in full force and effect;

9.      Schein shall, consistent with Section V.B.1.e, pay or cause to be paid any notice expenses incurred but not paid prior to the Termination Date;

10.      Derivative Plaintiffs, Schein and/or any other party involved in a dispute submitted to the Mediator shall, consistent with Section V.C.3-4, pay any fees charged by, but

not paid to, or expenses incurred by, but not reimbursed to the Mediator prior to the Termination Date; and

> 11.     except as expressly set out in this Settlement Agreement in Sections XII.D.2, XII.D.9 and XII.D.10, nothing in this Settlement Agreement shall create any obligation on the part of any Settling Party to pay any other Settling Party's fees and/or expenses.

## XIII.  GENERAL MATTERS AND RESERVATIONS

A.     Subject to Section XII.B, the obligations of the Settling Parties to consummate this Settlement Agreement are conditioned upon the occurrence of each of the following:

> 1.     entry by the Court of the Preliminary Approval Order;
>
> 2.     entry by the Court of the Approval Order;
>
> 3.     entry by the Court of the Judgment; and
>
> 4.     the Final Settlement Date.

B.     The Settling Parties intend this Settlement Agreement to be a final and complete resolution of (*i*) all matters and Claims that arise directly or indirectly out of, or in any way relate to, any of the Operative Facts and were, could have been or could be asserted by or on behalf of Schein and/or (*ii*) all matters and Claims arising out of Released Securities Holder/Company Claims that have been, could have been or could be asserted by any Securities Holder derivatively or by Schein directly against Releasees or any of them.  The Settling Parties agree not to assert in any forum that the *Finazzo* Action, the *Sloan* Action or the Consolidated Derivative Action were brought in bad faith or without a reasonable basis, or that Schein or the Derivative Defendants defended the *Finazzo* Action, the *Sloan* Action or the Consolidated Derivative Action in bad faith or without a reasonable basis.  The Settling Parties shall not assert any Claims relating to the prosecution, defense or settlement of the Consolidated Derivative Action except as necessary to enforce this Settlement Agreement.  The Settling Parties agree that

the settlement relief provided in this Settlement Agreement and the terms of this Settlement Agreement were negotiated at arm's length in good faith by the Settling Parties and reflect a Settlement that was reached voluntarily after consultation with experienced counsel and the Mediator.

C.     Laurence Rosen, Phillip Kim and Timothy Brown represent that they are authorized to enter into this Settlement Agreement on behalf of Frank Finazzo and Mark Sloan and any other attorneys who have represented or now represent Mr. Finazzo and/or Mr. Sloan in the *Finazzo* Action, the *Sloan* Action and/or the Consolidated Derivative Action and/or with respect to Released Securities Holder/Company Claims and that (*i*) they have kept Mr. Finazzo and Mr. Sloan apprised of the progress of the settlement negotiations, (*ii*) they have advised Mr. Finazzo and Mr. Sloan of the terms and provisions of this Settlement Agreement, (*iii*) Mr. Finazzo and Mr. Sloan have approved the terms of this Settlement Agreement and (*iv*) Mr. Finazzo and Mr. Sloan agree they will continue as plaintiffs in the Consolidated Derivative Action until the Final Settlement Date.

D.     Ralph C. Ferrara, Ann M. Ashton, Jonathan E. Richman and Peter D. Doyle represent that they are authorized to enter into this Settlement Agreement on behalf of Schein and the Derivative Defendants and any other attorneys who have represented or now represent Schein and/or the Derivative Defendants in the Consolidated Derivative Action and/or with respect to Released Securities Holder/Company Claims and that (*i*) they have kept Schein and the Derivative Defendants apprised of the progress of the settlement negotiations, (*ii*) they have advised Schein and the Derivative Defendants of the terms and provisions of this Settlement Agreement and (*iii*) Schein and the Derivative Defendants have approved the terms of this Settlement Agreement.

E.       This Settlement Agreement sets forth the entire agreement among the Settling Parties with respect to its subject matter and supersedes any agreements in principle (including, without the limitation, the Term Sheet) that preceded this Settlement Agreement.  This Settlement Agreement may not be altered or modified except by written instrument executed by Derivative Co-Lead Counsel (with the permission of Derivative Plaintiffs) and Derivative/Nominal Defendants' Counsel (with the permission of Schein and the Derivative Defendants).  The Settling Parties expressly acknowledge that no other agreements, arrangements or understandings not described in this Settlement Agreement exist among or between them.  In entering into this Settlement Agreement, no Settling Party has relied upon any representation or warranty not set forth expressly in this Settlement Agreement.

F.       This Settlement Agreement shall be governed by and interpreted according to the laws of the State of New York, excluding its conflict of laws provisions.

G.       Except as set out in Sections V.C and XII.B.2 above, the Court retains continuing and exclusive jurisdiction over this Settlement Agreement, the Settling Parties, all Securities Holders (including, without limitation, all Securities Holders who submit objections pursuant to Section VIII), all Releasors and all Releasees to adjudicate, subject to Sections V.C and XII.B.2 all issues relating to this Settlement Agreement and the Settlement, including, without limitation, any issues relating to the Preliminary Approval Order, the Approval Order or the Judgment. Subject to Sections V.C and XII.B.2, any action arising under or to enforce this Settlement Agreement, the Preliminary Approval Order, the Approval Order or the Judgment shall be commenced and maintained only in the Court.

H.       Whenever this Settlement Agreement requires or contemplates that a Settling Party shall or may give notice to another Settling Party or to counsel, notice shall be provided by

email and overnight (excluding Saturday or Sunday) delivery service as follows and shall be

deemed effective upon receipt of such email and delivery to the email and address, as the case

may be, below:

    1.    If to Schein or the Derivative Defendants:

        Ralph C. Ferrara
        Ann M. Ashton
        Proskauer Rose LLP
        1001 Pennsylvania Avenue, NW
        Suite 600 South
        Washington, DC 20004
        Telephone:  (202) 416-6800
        Facsimile:   (202) 416-6899
        rferrara@proskauer.com
        aashton@proskauer.com

        Jonathan E. Richman
        Peter D. Doyle
        Proskauer Rose LLP
        Eleven Times Square
        New York, NY  10036-8299
        Telephone:  (212) 969-3000
        Facsimile:   (212) 969-2900
        jerichman@proskauer.com
        pdoyle@proskauer.com

    2.    If to the Derivative Plaintiffs:

        Laurence Rosen
        Phillip Kim
        The Rosen Law Firm, P.A.
        275 Madison Avenue, 40th Floor
        New York, New York 10016
        Telephone:  (212) 686-1060
        Facsimile:   (212) 202-3827
        lrosen@rosenlegal.com
        pkim@rosenlegal.com

Timothy Brown
The Brown Law Firm, P.C.
240 Townsend Square
Oyster Bay, New York 11771
Telephone:  (516) 922-5427
Facsimile:  (516) 344-6204
tbrown@thebrownfirm.net

I.      All time periods set forth in this Settlement Agreement shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by a court, the day, event or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a Legal Holiday, or, when the act to be done is the filing of a paper in the Court, a day on which weather or other conditions have caused the office of the Clerk of the Court to be inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days.

J.      The Settling Parties reserve the right, subject to the Court's approval, mutually to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

K.      The Settling Parties, their successors and assigns, and their counsel undertake to implement this Settlement Agreement, to cooperate fully in seeking Court approval and to use all reasonable efforts to effect the prompt consummation of this Settlement Agreement and the proposed Settlement.

L.      This Settlement Agreement may be signed in counterparts, each of which shall constitute a duplicate original.  Execution by facsimile or by electronically transmitted signature shall be fully and legally binding on a Settling Party.

M.    All Releasees who are not Settling Parties are intended third-party beneficiaries

who are entitled to enforce the terms of the Release.

Agreed to as of this 30th day of April, 2020.

Laurence Rosen
Phillip Kim
The Rosen Law Firm, P.A.
275 Madison Avenue, 40th Floor
New York, New York 10016
(212) 686-1060
lrosen@rosenlegal.com
pkim@rosenlegal.com

Timothy Brown
The Brown Law Firm, P.C.
240 Townsend Square
Oyster Bay, New York 11771
(516) 922-5427
tbrown@thebrownlawfirm.net

*Counsel for Derivative Plaintiffs Finazzo
and Sloan*

Ralph C. Ferrara
Ann M. Ashton
Proskauer Rose LLP
1001 Pennsylvania Avenue, NW
Suite 600 South
Washington, DC 20004
(202) 416-6800
rferrara@proskauer.com
aashton@proskauer.com

Jonathan E. Richman
Peter D. Doyle
Proskauer Rose LLP
Eleven Times Square
New York, New York  10036
(212) 969-3000
jerichman@proskauer.com
pdoyle@proskauer.com

*Counsel for Nominal Defendant Henry
Schein, Inc. and the Derivative Defendants*

EXHIBIT A

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE HENRY SCHEIN, INC.** **DERIVATIVE LITIGATION** | Lead Case No. 1:19-cv-06485-LDH-JO |
| **This Document Relates to:** **ALL ACTIONS** | |

## [PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT, DIRECTING NOTICE TO SECURITIES HOLDERS, AND SETTING HEARING FOR FINAL APPROVAL OF SETTLEMENT

WHEREAS, the Derivative Plaintiffs[1] in the above-captioned Consolidated Derivative Action, Derivative Defendants and Nominal Defendant Schein have reached a proposed Settlement of all claims that have been, could have been or could be alleged in the Consolidated Derivative Action; and

WHEREAS, the Derivative Plaintiffs filed an application for preliminary approval of the proposed Settlement and have attached to their application the Stipulation of Settlement and Exhibits, which consist of (*i*) a proposed order preliminarily approving the proposed Settlement, directing notice of the proposed Settlement to Securities Holders and setting a hearing for approval of the proposed Settlement (Exhibit A), (*ii*) a proposed notice to be mailed and published regarding the proposed Settlement (Exhibit B), (*iii*) a proposed order granting approval of the proposed Settlement (Exhibit C), (*iv*) a proposed judgment (Exhibit D), (*v*) Antitrust

---

[1] To the extent capitalized terms are not defined in this Order, this Court adopts and incorporates the definitions set out in the April 30, 2020 Stipulation of Settlement (the "Stipulation of Settlement").

Enhancements to which the Settling Parties have agreed (Exhibit E), (*vi*) M&A Guidance to which the Settling Parties have agreed (Exhibit F) and (*vii*) a Confidentiality Agreement to which the Settling Parties have agreed (Exhibit G) (the Stipulation of Settlement and its Exhibits shall collectively be referred to as the "Settlement Agreement"); and

WHEREAS, the Court has read and considered the Settlement Agreement and the Derivative Plaintiffs' submission seeking preliminary approval; and

WHEREAS, based on the above materials and submissions, the Court finds that the proposed Settlement is within the range of possible approval and that notifying Securities Holders about the terms and conditions of the proposed Settlement and scheduling a hearing for approval of the proposed Settlement are warranted;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1. ***Preliminary Findings on Proposed Settlement*** – The Court finds that the proposed Settlement as evidenced by the Settlement Agreement is within the range of possible approval and that notifying Securities Holders about the terms and conditions of the proposed Settlement and scheduling a Fairness Hearing to consider approval of the proposed Settlement are warranted. Accordingly, the Court hereby preliminarily approves the proposed Settlement as fair, reasonable and adequate, subject to further consideration at the Fairness Hearing described below.

2. ***Scheduling of Fairness Hearing*** – Subject to paragraph 22 of this Order, a Fairness Hearing will be held on _____ __, 2020, at _____, _.m. ET, before Judge LaShann DeArcy Hall, United States District Judge, at the United States District Court for the Eastern District of New York, 225 Cadman Plaza East, Brooklyn, NY 11201, to determine,

2

among other things, whether (*i*) the proposed Settlement is fair, reasonable and adequate and in the best interests of Schein and its stockholders and should be approved by the Court and (*ii*) the proposed Approval Order and the proposed Judgment, forms of which are attached in their entirety as Exhibits C and D, respectively, to the Stipulation of Settlement, should be entered, the claims made by the Derivative Plaintiffs should dismissed with prejudice and the claims against Releasees should be fully and finally discharged.

3.      ***Review of the Settlement Agreement*** – The Court may approve the Settlement Agreement (with or without any modifications executed by the Settling Parties) and enter the proposed Approval Order at or after the Fairness Hearing or any adjournment of the Fairness Hearing and dismiss the claims asserted against the Derivative Defendants on the merits and with prejudice with or without further notice to any persons or entities other than the Settling Parties.

4.      ***Notice*** – Notice of the terms of the proposed Settlement and the scheduled Fairness Hearing shall be substantially in the form filed with the Court as Exhibit B to the Settlement Agreement.  No later than _____, 2020 (which date shall be at least sixty (60) calendar days before the deadline for objecting to the proposed Settlement), (*i*) the Settling Parties shall cause the Notice to be mailed by first-class mail to current, identifiable Securities Holders, and (*ii*) Derivative Co-Lead Counsel shall cause the Notice and Settlement Agreement to be posted on each of their respective websites.  No later than _____, 2020 (which date shall be at least fifty (50) calendar days before the deadline for objecting to the proposed Settlement), the Settling Parties shall cause the notice to be published in *The Wall Street Journal* and *Investor's Business Daily*, as well as on wire services.  The Notice shall contain links to the websites of Derivative Co-Lead Counsel where the Settlement Agreement will be posted, which posting shall be maintained through the Final Settlement Date.

5.     ***Notice Costs*** – Schein shall pay or cause to be paid the costs for mailing and publishing the notice of this Settlement as described in paragraph 4 of this Order.

6.     ***Notice Findings*** – The Court finds that the form and method of notice specified in the Settlement Agreement and set out in paragraph 4 of this Order (*i*) satisfy the requirements of the Federal Rules of Civil Procedure, the Rules of this Court and due-process principles, (*ii*) sufficiently inform all relevant persons and entities about the Settlement Agreement, the pendency of the Consolidated Derivative Action and the Fairness Hearing, and their ability to object to the Settlement and (*iii*) are reasonable and constitute due, adequate and sufficient notice to all persons entitled to notice.

7.     ***Proof of Notice*** –At or before the Fairness Hearing, (*i*) Schein shall cause proof of the mailing and publication of the Notice as set out in paragraph 4 of this Order to be filed with the Court, and (*ii*) Derivative Co-Lead Counsel shall cause proof of the posting of the Notice and Settlement Agreement on each of their respective websites as set out in paragraph 4 of this Order to be filed with the Court.

8.     ***Company Communications with Securities Holders*** – Schein maintains the right to communicate orally and in writing with its stockholders. To the extent any such communications relate to the Consolidated Derivative Action or the proposed Settlement, such communications shall be limited to the following:  (*i*) communications between stockholders and representatives of Schein whose responsibilities include investor relations, (*ii*) communications as may be necessary to implement the terms of this Settlement Agreement and (*iii*) such communications as may be made in the conduct of Releasees' business, including complying with any applicable regulatory requirements.

9.    *Preliminary Injunction* – Pending determination by the Court whether the Settlement Agreement should be approved, and subject to the reservations set out in Section VI.A.5 of the Settlement Agreement, this Court preliminarily bars and enjoins

a.    Derivative Plaintiffs, all other Securities Holders, Schein (whether acting on its own behalf or by and through its stockholders, or any of them), and/or any of their respective heirs, executors, administrators, trustees, predecessors, successors, Affiliates, representatives, attorneys and assigns, and anyone else purporting to act on behalf of or derivatively for any of the above, from filing, commencing, prosecuting, intervening in, participating in, or receiving any benefits or other relief from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding (including a motion or complaint in intervention in any such action or proceeding if the person or entity filing such motion or complaint in intervention purports to be acting as, on behalf of, for the benefit of, or derivatively for any of the above persons or entities) or order, in any jurisdiction or forum, as to the Releasees based on or relating in any way to the Released Securities Holder/Company Claims; and

b.    Derivative Defendants, and anyone else purporting to act on behalf of, for the benefit of, or derivatively for any of such persons or entities, from commencing, prosecuting, intervening in, or participating in any claims or causes of action relating to the Derivative Defendants' Mutually Released Claims.

10.    *Incorporation of Confidentiality Agreement* – The Confidentiality Agreement (attached as Exhibit G to the Settlement Agreement) is hereby incorporated into this Order, and any breach of the Confidentiality Agreement shall be deemed a breach of a court order.  Pursuant to Fed. R. Evid. 502(d), the Court hereby orders that any disclosures made pursuant to the

Confidentiality Agreement shall not constitute a waiver of privilege or other protection in any federal or state proceeding.

11.     *Objections* – Securities Holders who wish to object to the fairness, reasonableness or adequacy of the Settlement Agreement or to any term(s) of the Settlement Agreement must both serve on Derivative Co-Lead Counsel and Derivative/Nominal Defendants' Counsel (as set out below) and file with the Court a statement of objection, which must be received by no later than _____, 2020 (which date shall be at least twenty-eight (28) calendar days before the date of the Fairness Hearing as initially set out in this Order). The Securities Holder may object on his, her or its own, or through counsel hired at his, her or its own expense. The Securities Holder's statement of objection should set out the specific reasons, if any, for each objection, including any legal support the Securities Holder wishes to bring to the Court's attention and any evidence the Securities Holder wishes to introduce in support of such objections. The statement of objection must include the caption of the Consolidated Derivative Action (as set out above) and the following information:  (*i*) the Securities Holder's name, address, telephone number and e-mail address (if available), (*ii*) if the objection is made by the Securities Holder's counsel, the counsel's name, address, telephone number and e-mail address and (*iii*) evidence that the individual or entity making the objection (or on whose behalf the objection is being made) is and has been a Securities Holder from March 7, 2013 through the present.

12.     Any attorney hired by a Securities Holder for the purpose of objecting pursuant to paragraph 11 must both serve on Derivative Co-Lead Counsel and Derivative/Nominal Defendants' Counsel (as set out below) and file with the Court a notice of appearance, which must be received by no later than _____, 2020 (which date shall be at least

twenty-eight (28) calendar days before the date of the Fairness Hearing as initially set out in this Order).

13.     A Securities Holder who wishes to object to the proposed Settlement does not need to attend the Fairness Hearing.  However, any Securities Holder who files and serves a timely written objection pursuant to paragraph 11 – and only such Securities Holders – may appear at the Fairness Hearing either in person or through personal counsel retained at his, her or its own expense.  Such Securities Holders or their counsel who intend to make an appearance at the Fairness Hearing must serve on Derivative Co-Lead Counsel and Derivative/Nominal Defendants' Counsel (as set out below) and file with the Court a notice of intention to appear, which must be received by no later than _____, 2020 (which date shall be at least twenty-eight (28) calendar days before the date of the Fairness Hearing as initially set out in this Order).

14.     Any Securities Holder that fails to comply with the requirements of paragraphs 11 through 13 of this Order shall waive and forfeit any and all rights he, she or it may otherwise have to object and/or to appear separately at the Fairness Hearing.  Securities Holders do not need to appear at the hearing or take any other action to indicate their approval of the Settlement Agreement.

15.     Any Securities Holder who submits an objection to the Settlement Agreement shall be deemed to consent to the exclusive jurisdiction of this Court with respect to such objection and all issues that arise or relate to such objection, including any order issued or findings made by the Court regarding the objection.

16.    *Filing and Service of Securities Holders' Submissions* – Any submissions made pursuant to paragraphs 11 through 13 of this Order must be served on Derivative Co-Lead Counsel and Derivative/Nominal Defendants' Counsel and filed with the Court as follows:

    a.    the submission must be filed with the Clerk of Court for the United States District Court for the Eastern District of New York, 225 Cadman Plaza East, Brooklyn, NY 11201, and

    b.    the submission must be served by facsimile, email and/or next-day (excluding Saturday or Sunday) express delivery service upon each of the following counsel:

    *Counsel for Derivative Plaintiffs:*

        Laurence Rosen
        Phillip Kim
        The Rosen Law Firm
        275 Madison Avenue, 40th Floor
        New York, NY 10016
        Telephone: (212) 686-1060
        Facsimile:  (212) 202-3827
        lrosen@rosenlegal.com
        pkim@rosenlegal.com

    *Counsel for Schein and Derivative Defendants:*

        Peter D. Doyle
        Jonathan E. Richman
        Proskauer Rose LLP
        11 Times Square
        New York, NY 10036
        Telephone: (212) 969-3000
        Facsimile:  (212) 969-2900
        pdoyle@proskauer.com
        jerichman@proskauer.com

17.    Counsel for the Settling Parties are directed to promptly inform each other of any submission served on them (or that otherwise comes into their possession) pursuant to paragraphs 11 through 13 of this Order.

18. ***Papers Submitted by Settling Parties Regarding the Settlement*** – The Settling

Parties shall file with the Court (and serve on each other) any papers they wish to submit in

support of the proposed settlement as follows:

          a.      Any motions for final approval of the proposed Settlement and/or any

motions for an Attorneys' Fees and Expenses Award must be filed and served by

_____ (which date shall be at least thirty-five (35) calendar days before the date of

the Fairness Hearing as initially set by the Court in this Order); and

          b.      Any papers in response to objections submitted pursuant to paragraph 11

must be filed and served by _____ (which date shall be at least fourteen (14) days

before the date of the Fairness Hearing as initially set by the Court in this Order).

19. ***Termination of Settlement Agreement*** – Subject to Sections XII.D.8 through

XII.D.10 of the Settlement Agreement, this Order shall become null and void, and shall be

without prejudice to the rights of the parties in this Consolidated Derivative Action or any other

action, all of whom shall be restored to their respective positions existing immediately before the

Execution Date, if (*i*) the proposed Settlement is not approved by the Court or the Court's

approval does not become Final or (*ii*) the proposed Settlement is terminated in accordance with

the terms of the Settlement Agreement or does not become effective as required by the terms of

the Settlement Agreement for any other reason; *provided however*, that the Confidentiality

Agreement (as ordered by the Court pursuant to paragraph 10) shall remain in full force and

effect.  Other than Section XII.D of the Settlement Agreement, the Settlement Agreement shall

become null and void and of no further force and effect in accordance with its terms, and it shall

not be used or referred to for any purpose whatsoever.

20.    *Use of Order* – Other than as to enforcement of the Confidentiality Agreement, this Order shall be of no force or effect if the proposed Settlement does not become Final.  This Order shall not be construed or used as an admission, concession, or declaration by or against the Releasees of any fault, wrongdoing, breach or liability.  Nor shall this Order be construed or used as an admission, concession or declaration by or against Derivative Plaintiffs or any other Securities Holders that their Claims lack merit or that the relief requested in the Derivative Complaints is inappropriate, improper or unavailable, or as a waiver by any party of any defenses or claims he, she or it might have.

21.    *Retention of Jurisdiction* – Subject to the dispute-resolution provisions found at Sections V.C and XII.B.2 of the Settlement Agreement, this Court retains exclusive jurisdiction over the Consolidated Derivative Action to consider all further matters arising out of or connected with the Settlement Agreement, including a determination whether the proposed Settlement should be approved as fair, reasonable and adequate and in the best interest of Schein and its stockholders, and to enter an Order so finding.

22.    *Adjournment of Fairness Hearing* – The Court reserves the right to continue the Fairness Hearing without further written notice to Securities Holders or anyone else other than the Settling Parties.  The Court may decide to hold the Fairness Hearing telephonically without further notice to Securities Holders.  Any Securities Holder (or his, her or its counsel) who wishes to appear at the Fairness Hearing should consult the Court's calendar and/or the websites of Derivative Co-Lead Counsel for any change in date, time or format of the Fairness Hearing.

So ordered this ___ day of _____, 2020.

_____
The Honorable LaShann DeArcy Hall
United States District Judge

**EXHIBIT B**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE HENRY SCHEIN, INC. DERIVATIVE LITIGATION** | Lead Case No. 1:19-cv-06485-LDH-JO |
| **This Document Relates to:**<br><br>**ALL ACTIONS** | |

## NOTICE OF PROPOSED SETTLEMENT
## OF SHAREHOLDER DERIVATIVE ACTION AND OF HEARING

**TO:  ALL PERSONS OR ENTITIES WHO HOLD OR BENEFICIALLY OWN, DIRECTLY OR INDIRECTLY, COMMON STOCK OR SECURITIES OF HENRY SCHEIN, INC. AS OF _____, 2020**

*THIS NOTICE CONCERNS A PROPOSED SETTLEMENT OF THE ABOVE-CAPTIONED SHAREHOLDER DERIVATIVE LAWSUIT AND CONTAINS IMPORTANT INFORMATION ABOUT YOUR RIGHTS CONCERNING THE LAWSUIT.  THIS NOTICE DOES NOT EXPRESS THE COURT'S OPINION ABOUT THE MERITS OF ANY CLAIMS OR DEFENSES IN THE LAWSUIT.  THE STATEMENTS IN THIS NOTICE ARE NOT FINDINGS OF THE COURT.*

*THIS ACTION IS NOT A "CLASS ACTION."  THUS, THERE IS NO COMMON FUND UPON WHICH YOU CAN MAKE A CLAIM FOR A MONETARY PAYMENT.*

All securities holders of Henry Schein, Inc. ("Schein") are hereby notified that a settlement (the "Settlement") has been reached as to claims asserted in the above-captioned shareholder derivative action pending in a federal court in New York (the "Derivative Lawsuit") on behalf of Schein against certain current or former directors and officers of Schein.  The terms of the proposed Settlement are set out in a Settlement Agreement that has been filed with the Court.

If the Settlement is approved (and the approval becomes final and no longer subject to appeal), it will release all of the claims in this lawsuit.

A hearing on the Settlement has been scheduled for _____, 2020, at ___ ET (the "Fairness Hearing"), before U.S. District Judge LaShann DeArcy Hall, in the United States District Court for the Eastern District of New York, 225 Cadman Plaza East, Brooklyn, NY 11201.

At the Fairness Hearing, the Court will determine (*i*) whether to approve the proposed Settlement as fair, reasonable and adequate and in the best interest of Schein and its shareholders

and (*ii*) whether to dismiss the Derivative Lawsuit on the merits and with prejudice, enjoin the prosecution of all related claims, and release the defendants and their related individuals and entities (as defined in the Settlement Agreement as "Releasees") from all claims of the type asserted in the Derivative Lawsuit.

The Court may, in its discretion, change the date and/or time of the Fairness Hearing without further notice to you. The Court also has reserved the right to hold the Fairness Hearing telephonically without further notice to you. If you intend to attend the Fairness Hearing, please consult the Court's calendar and/or the websites of plaintiffs' counsel (www.thebrownlawfirm.net/news/ and www.rosenlegal.com/newsroom.html) for any change in date, time or format of the Fairness Hearing.

## SUMMARY OF THE LITIGATION

The Derivative Lawsuit alleges breaches of fiduciary duty and other misconduct by Schein officers and directors arising out of (*i*) alleged anticompetitive conduct by Schein in its dental supply business, (*ii*) Schein's public statements about competition in the dental supply business, and (*iii*) a spin-off of Schein's Animal Health Business and the merger of that business with Direct Vet Marketing, Inc. (d/b/a Vets First Choice) to create Covetrus, Inc.

The Derivative Lawsuit seeks damages on behalf of Schein against Stanley J. Bergman, Steven Paladino, Timothy J. Sullivan, Barry J. Alperin, Lawrence S. Bacow, Gerald A. Benjamin, James P. Breslawski, Paul Brons, Shira Goodman, Joseph L. Herring, Donald J. Kabat, Kurt Kuehn, Philip A. Laskawy, Anne H. Margulies, Karyn Mashima, Norman S. Matthews, Mark E. Mlotek, Carol Raphael, E. Dianne Rekow, Bradley T. Sheares, and Louis W. Sullivan (collectively, the "Derivative Defendants"). The Derivative Defendants deny that the claims made in the Derivative Lawsuit have any merit.

This notice is intended to provide only a summary of the plaintiffs' claims in two lawsuits that have now been consolidated into the Derivative Lawsuit. If you hold or held, or beneficially own or owned, directly or indirectly, common stock or other equity securities of Schein, you should review the complaints for their full content. Both complaints can be found at plaintiffs' counsels' websites – www.thebrownlawfirm.net/news/ and www.rosenlegal.com/newsroom.html.

## REASONS FOR SETTLEMENT

Subject to the completion of confirmatory discovery, Derivative Plaintiffs and their counsel believe that the proposed Settlement is fair, reasonable and adequate, and in the best interests of Schein and its shareholders. They reached this conclusion after considering: (*i*) the claims asserted against the Derivative Defendants and the potential defenses to those claims, (*ii*) the substantial benefits that Schein would receive from the Settlement and (*iii*) documents and other information concerning the facts and circumstances that gave rise to the claims.

Derivative Defendants expressly deny that plaintiffs' claims have any merit or that pursuit of such claims would be in the best interests of Schein or its shareholders. They expressly deny all assertions of wrongdoing or liability arising out of any of the conduct, statements, acts or omissions that were, could have been or could be asserted against them in the

Derivative Lawsuit. Schein considers the terms of the proposed Settlement to be in the best interests of Schein and its shareholders. As discussed below, the proposed Settlement confers substantial benefits on Schein.

## PRINCIPAL SETTLEMENT TERMS

### *Settlement Relief*

Subject to the terms and conditions discussed in the Settlement Agreement, Schein will adopt, implement and maintain (*i*) antitrust enhancements and (*ii*) merger and acquisition guidelines (collectively, the "Settlement Relief"). The Settlement Relief includes, subject to the terms and conditions in the Settlement Agreement, (*i*) creation and appointment of an antitrust compliance officer, (*ii*) enhanced policies, practices, procedures and documentation regarding antitrust risk assessment and training, and (*iii*) creation and documentation of merger and acquisition guidelines. The Settlement Relief, which is set out in Exhibits E and F of the Settlement Agreement, can be reviewed at plaintiffs' counsels' websites – www.thebrownlawfirm.net/news/ and www.rosenlegal.com/newsroom.html. If the settlement receives final approval by the Court, the Settlement Relief will confer substantial benefits on Schein and its shareholders, which benefits were directly and proximately caused by the filing of the complaints by Derivative Plaintiffs and the Settlement.

### *Release*

The Settlement Agreement, if approved and no longer subject to appeal, will result in a release of all claims that (*i*) arise directly or indirectly from the operative facts and were, could have been or could be asserted by or on behalf of Schein and/or (*ii*) all claims that were, could have been or could be asserted in the Derivative Lawsuit through the date of final approval of the settlement against the Derivative Defendants (and related persons and entities defined in the Settlement Agreement as "Releasees"). Court approval of the settlement will also result in an injunction and order barring the prosecution of any such claims against any of the Releasees. The full release (including all of its relevant definitions) is set out the Settlement Agreement, which is available at plaintiffs' counsel's websites – www.thebrownlawfirm.net/news/ and www.rosenlegal.com/newsroom.html.

## STATUS OF SETTLEMENT

The Court issued a preliminary approval order regarding the Settlement on _____, 2020, in which the Court found that the proposed Settlement is within the range of possible approval and that notifying Schein's shareholders and scheduling a hearing for approval of the proposed Settlement were warranted. The Court's preliminary approval order is available at plaintiffs' counsels' websites – www.thebrownlawfirm.net/news/ and www.rosenlegal.com/newsroom.html.

The Court has not made (and will not make in connection with its consideration of the proposed Settlement) any determination as to the merits of any of the claims or defenses in the Derivative Lawsuit. This notice does not imply that any Derivative Defendant (or any other Releasee) would be found liable or that relief would be awarded if the Derivative Lawsuit were not being settled.

## ATTORNEYS' FEES AND EXPENSES

In consideration of the substantial benefits conferred upon Schein and its shareholders, and subject to the Court's approval, Schein has agreed to pay or cause to be paid $1,850,000 in attorneys' fees and expenses to counsel for the Derivative Plaintiffs, out of which sum $5,000 will be paid to each of the two Derivative Plaintiffs.

## YOUR RIGHT TO OBJECT AND TO APPEAR AT THE FAIRNESS HEARING

If you agree that the proposed Settlement should be approved as fair, reasonable and adequate and in the best interests of Schein and its shareholders, you do not need to do anything. However, if you wish to object to any aspects of the proposed Settlement, you may submit a written objection on your own (or through an attorney you hire at your own expense), and you (or your attorney, if you have hired one) may appear at the Fairness Hearing. **YOUR OBJECTION MUST BE RECEIVED BY THE COURT AND THE COUNSEL IN THE CASE BY NO LATER THAN _____ AS FOLLOWS.**

| *File with the Court:* | *Serve on Counsel for Derivative Plaintiffs:* | *Serve on Counsel for Schein and Derivative Defendants:* |
|---|---|---|
| Clerk of Court United States District Court for the Eastern District of New York 225 Cadman Plaza East Brooklyn, NY 11201 | Laurence Rosen Phillip Kim The Rosen Law Firm 275 Madison Ave., 40th Floor New York, NY 10016 Telephone: (212) 686-1060 Facsimile: (212) 202-3827 lrosen@rosenlegal.com pkim@rosenlegal.com | Peter D. Doyle Jonathan E. Richman Proskauer Rose LLP 11 Times Square New York, NY 10036 Telephone: (212) 969-3000 Facsimile: (212) 969-2900 pdoyle@proskauer.com jerichman@proskauer.com |

The Preliminary Approval Order sets out the procedures that you must follow if you want to object and if you want to appear at the hearing. It is available at plaintiffs' counsels' websites – www.thebrownlawfirm.net/news/ and www.rosenlegal.com/newsroom.html.

## PRELIMINARY INJUNCTION

Pending final determination of whether to approve the Settlement Agreement, the Court has preliminarily barred and enjoined holders of Schein's common stock and other equity securities and individuals and entities related to them (including anyone purporting to act on behalf of or derivatively for any of them) from filing, commencing, prosecuting, intervening in, participating in or receiving any benefits or other relief from, any other lawsuit, arbitration or administrative, regulatory or other proceeding against any Releasees in any forum based on or relating to claims that will be released or barred by the Settlement Agreement if the Court approves it (including all claims that may be brought in a derivative capacity on behalf of Schein). The full terms of the preliminary injunction are in the Preliminary Approval Order,

4

which is available at plaintiffs' counsels' websites – www.thebrownlawfirm.net/news/ and www.rosenlegal.com/newsroom.html.

## QUESTIONS REGARDING THE PROPOSED SETTLEMENT

*Please do not write or telephone the Court about the proposed Settlement Agreement.* If you have any questions, you should contact the Derivative Plaintiffs' counsel Phillip Kim at The Rosen Law Firm, P.A., 275 Madison Avenue, 40th Floor, New York, NY 10016; Telephone: (212) 686-1060  or Timothy Brown at The Brown Law Firm, P.C., 240 Townsend Square, Oyster Bay, NY; Telephone: (516) 922-5427.

_____ 2020                                     BY ORDER OF THE COURT:

_____
THE HONORABLE LASHANN DEARCY HALL

EXHIBIT C

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

---

IN RE HENRY SCHEIN, INC.
DERIVATIVE LITIGATION

Lead Case No. 1:19-cv-06485-LDH-JO

---

This Document Relates to:

ALL ACTIONS

---

## ORDER APPROVING SETTLEMENT

WHEREAS, the Derivative Plaintiffs[1] in the above-captioned Consolidated Derivative Action, the Nominal Defendant Henry Schein, Inc. and the Derivative Defendants have reached a proposed Settlement of all claims that have been, could have been or could be alleged in the Consolidated Derivative Action; and

WHEREAS, on _____, 2020, based upon a review of the Stipulation of Settlement (with its exhibits, the "Settlement Agreement") executed by the Settling Parties, the Court entered an Order Preliminarily Approving Settlement, Directing Notice to Securities Holders, and Setting Hearing for Final Approval of Settlement (the "Preliminary Approval Order"), in which the Court ordered, among other things, that (*i*) Notice be provided to Securities Holders, (*ii*) a Fairness Hearing be scheduled for _____, 2020; and (*iii*) Securities Holders be provided with an opportunity to object to the proposed Settlement and to appear at the Fairness Hearing; and

---

[1]     As further set out in paragraph 1 of this Order, capitalized terms not defined in this Order shall be defined as set out in the April 30, 2020 Stipulation of Settlement (the "Stipulation of Settlement").

WHEREAS, the Court held a Fairness Hearing on _____, 2020 to determine, among other things, whether to approve the Settlement Agreement; and

WHEREAS, the Court received submissions and heard argument at the Fairness Hearing from Derivative Co-Lead Counsel and Derivative/Nominal Defendants' Counsel;

NOW, THEREFORE, based upon the written submissions of the Settling Parties, the arguments at the Fairness Hearing and other materials of record in this Consolidated Derivative Action, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1. ***Incorporation of Settlement Agreement*** – This Order Approving Settlement (the "Order") incorporates and makes a part hereof the April 30, 2020 Stipulation of Settlement, a copy of which is attached to the Order. To the extent definitions for any defined terms do not appear in this Order, the Court adopts and incorporates the definitions in the Stipulation of Settlement.

2. ***Jurisdiction*** – The Court has personal jurisdiction over all Securities Holders of Schein in connection with the claims that were, could have been or could be asserted in this Consolidated Derivative Action, and has subject matter jurisdiction over the Consolidated Derivative Action, including jurisdiction to approve the Settlement Agreement and dismiss the claims in this Consolidated Derivative Action with prejudice.

3. ***Adequacy of Derivative Plaintiffs and Derivative Plaintiffs' Counsel*** – Pursuant to Federal Rule of Civil Procedure 23.1, Derivative Plaintiffs and Derivative Co-Lead Counsel have fully and adequately represented the other Securities Holders and Schein's interests for purposes of entering into and implementing the Settlement Agreement and the proposed Settlement.

4.    ***Proof of Notice*** – The Settling Parties filed with the Court adequate proof regarding distribution of the Notice materially consistent with directives in the Preliminary Approval Order.

5.    ***Notice to Securities Holders*** – The Court finds that the Notice provided to Securities Holders regarding the Settlement Agreement was simply written and readily understandable and that the Notice and notice methodology (*i*) constituted the best practicable notice, (*ii*) were reasonably calculated, under the circumstances, to apprise Securities Holders of the pendency of this Consolidated Derivative Action, the claims asserted, the terms of the proposed Settlement, and Securities Holders' right to object to the proposed Settlement and to appear at the Fairness Hearing, (*iii*) were reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice and (*iv*) met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law.

6.    ***Settlement Approval*** – The terms and provisions of this Settlement Agreement have been entered into in good faith and under the auspices of an experienced mediator, who has filed a submission in support of the proposed Settlement.  The terms and provisions of the Settlement Agreement are hereby fully and finally approved as fair, reasonable and adequate as to, and in the best interests of, Schein and its Securities Holders, and in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of the Court and any other applicable law.

7.    ***Implementation of the Settlement Agreement*** – The Settling Parties and their counsel are directed to implement and consummate the Settlement Agreement according to its terms and conditions.

3

8.     ***Binding Effect*** – The Stipulation of Settlement, a copy of which is attached to this Order, and this Order shall be forever binding on the Releasors and Releasees as to all claims and issues that have been, could have been or could be raised in the Derivative Actions against the Releasees and as to all Released Securities Holders/Company Claims against Schein and the other Releasees. As to all such claims and issues, this Order shall have *res judicata* and other preclusive effect in all pending and future lawsuits or other proceedings maintained by or on behalf of Schein.

9.     ***Releases and Waivers*** – The Release set forth in Section VI of the Stipulation of Settlement and its relevant definitions are expressly incorporated herein in all respects and shall be deemed a part of this Order as if fully set forth herein. The Release shall be effective as of the Final Settlement Date. The Settling Parties agree and acknowledge that the Release provisions constitute essential terms of the Settlement Agreement. Nothing herein shall in any way impair or restrict the rights of any Settling Party to enforce the terms of the Settlement Agreement or this Order.

10.     ***Permanent Injunction*** – Subject to the reservations set out in Section VI.A.5 of the Stipulation of Settlement, the Court hereby permanently bars and enjoins:

a.     Derivative Plaintiffs, all other Securities Holders, Schein (whether acting on its own behalf or by and through its shareholders, or any of them), and/or any of their respective heirs, executors, administrators, trustees, predecessors, successors, Affiliates, representatives, attorneys and assigns, and anyone else purporting to act on behalf of or derivatively for any of the above, from filing, commencing, prosecuting, intervening in, participating in, or receiving any benefits or other relief from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding (including a motion or complaint in intervention

in any such action or proceeding if the person or entity filing such motion or complaint in intervention purports to be acting as, on behalf of, for the benefit of, or derivatively for any of the above persons or entities) or order, in any jurisdiction or forum, as to the Releasees based on or relating in any way to the Released Securities Holder/Company Claims; and

b.   Derivative Defendants, and anyone else purporting to act on behalf or for the benefit of such persons or entities, from commencing, prosecuting, intervening in, or participating in any claims or causes of action relating to the Derivative Defendants' Mutually Released Claims.

11.   ***Complete Bar Order*** – Subject to the reservations set out in Section VI.A.5 of the Stipulation of Settlement, the Court hereby enters the following bar:

a.   Any and all persons and entities are permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any Releasee arising under any federal, state or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise denominated, including Claims for breach of contract or for misrepresentation, where the Claim is or arises from a Released Securities Holder/Company Claim and the alleged injury to such person or entity arises from that person's or entity's alleged liability to Schein, including any Claim in which a person or entity seeks to recover from any of the Releasees (*i*) any amounts that such person or entity has or might become liable to pay to Schein and/or (*ii*) any costs, expenses, or attorneys' fees from defending any Claim by Schein.  All such Claims are hereby extinguished, discharged, satisfied and unenforceable, subject to a hearing to be held by the Court, if necessary.  The provisions of this paragraph 11.a are intended to preclude any liability of any of the Releasees to any person or entity for indemnification, contribution or otherwise on any Claim that is or arises from a

Released Securities Holder/Company Claim and where the alleged injury to such person or entity arises from that person's or entity's alleged liability to Schein; *provided however*, that if Schein or any Securities Holder on behalf of Schein obtains any judgment against any such person or entity based upon, arising out of or relating to any Released Securities Holder/Company Claim for which such person or entity and any of the Releasees are found to be jointly liable, that person or entity shall be entitled to a credit of an amount that corresponds to the percentage of responsibility of the applicable Releasee(s) for the loss to Schein.

        b.      Each and every Releasee is permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any other person or entity (including any other Releasee) arising under any federal, state or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise denominated, including Claims for breach of contract and for misrepresentation, where the Claim is or arises from a Released Securities Holder/Company Claim and the alleged injury to such Releasee arises from that Releasee's alleged liability to Schein, including any Claim in which any Releasee seeks to recover from any person or entity (including another Releasee) (*i*) any amounts any such Releasee has or might become liable to pay to Schein and/or (*ii*) any costs, expenses, or attorneys' fees from defending any Claim by or on behalf of Schein. All such Claims are hereby extinguished, discharged, satisfied and unenforceable.

        c.      Each and every Derivative Defendant is permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any other Derivative Defendant arising under any federal, state or foreign statutory or common-law rule, however styled, where the Claim is or arises from a Derivative Defendants' Mutually Released Claim. All such Claims are hereby extinguished, discharged, satisfied and unenforceable.

d. Notwithstanding anything stated in the Complete Bar Order, if any person or entity (for purposes of this paragraph 11.d, a "petitioner") commences against any of the Releasees any action either (*i*) asserting a Claim that is or arises from a Released Securities Holder/Company Claim or a Derivative Defendants' Mutually Released Claim and where the alleged injury to such petitioner arises from that petitioner's alleged liability to Schein or (*ii*) seeking contribution or indemnity for any liability or expenses incurred in connection with any such Claim, and if such action or Claim is not barred by a court pursuant to this paragraph 11 or is otherwise not barred by the Complete Bar Order, neither the Complete Bar Order nor the Settlement Agreement shall bar Claims by that Releasee against (*a*) such petitioner, (*b*) any person or entity who is or was Controlled by, Controlling, or under common Control with the petitioner, whose assets or estate are or were Controlled, represented, or administered by the petitioner, or as to whose Claims the petitioner has succeeded, and (*c*) any person or entity that participated with any of the preceding persons or entities described in items (*a*) and (*b*) of this paragraph 11.d in connection with the assertion of the Claim brought against the Releasee(s); *provided however*, that nothing in the Complete Bar Order or Settlement Agreement shall prevent the Settling Parties from taking such steps as are necessary to enforce the terms of the Settlement Agreement.

e. If any term of this Complete Bar Order is held to be unenforceable after the date of entry, such provision shall be substituted with such other provision as may be necessary to afford all of the Releasees the fullest protection permitted by law from any Claim that is based upon, arises out of or relates to any Released Securities Holder/Company Claim or any Derivative Defendants' Mutually Released Claim, as applicable.

12.     ***No Admissions*** – None of the Settlement Agreement, this Order, any of the

provisions of the Settlement Agreement, the negotiation of the Settlement Agreement, the

statements or court proceedings relating to the Settlement Agreement, any document referred to

in this Order, any action taken to carry out this Order, or any prior Orders in this Consolidated

Derivative Action shall be (*i*) construed as, offered as, received as, used as or deemed to be

evidence of any kind in this Consolidated Derivative Action or any other judicial, administrative,

regulatory or other proceeding or action or (*ii*) construed as, offered as, received as, used as, or

deemed to be evidence of an admission or concession of any liability or wrongdoing whatsoever

on the part of any person or entity, including, without limitation, Schein and the Derivative

Defendants; *provided however*, that this Order and the Settlement Agreement may be used as

evidence of the terms of the Settlement Agreement, including, without limitation, the Releases,

or to enforce the provisions of this Order and the Court's Judgment or the Settlement Agreement;

*provided further* that this Order and the Settlement Agreement may be filed in any action against

or by Schein or other Releasees to enforce the terms of this Order and the Settlement Agreement,

including, without limitation, the Complete Bar and the Permanent Injunction, and/or to support

a defense of *res judicata*, collateral estoppel, release, waiver, good-faith settlement, judgment bar

or reduction, full faith and credit or any other theory of claim preclusion, issue preclusion or

similar defense or counterclaim.

13.     ***Enforcement of Settlement*** – Nothing in this Order shall preclude any action to

enforce the terms of the Settlement Agreement.

14.     ***Payment to Derivative Plaintiffs' Counsel*** – In consideration of the substantial

benefits conferred upon and expected to be conferred upon Schein and its shareholders, Schein

shall pay or cause to be paid to Derivative Co-Lead Counsel an Attorneys' Fees and Expenses

Award in the amount of one million eight hundred fifty thousand dollars ($1,850,000). Such payment shall be made pursuant to the terms and conditions set out in Section VII of the Stipulation of Settlement.

15. ***Payment to Derivative Plaintiffs*** – In consideration of the substantial benefits conferred upon and expected to be conferred upon Schein and its shareholders, Derivative Plaintiffs shall be paid five thousand dollars ($5,000) each. Such payments shall be funded from the Attorneys' Fees and Expenses Award.

16. ***Modification of Settlement Agreement*** – The Settling Parties are hereby authorized, without further notice to or approval by the Court, to agree to and adopt such amendments, modifications and expansions of the Settlement Agreement and its implementing documents (including all exhibits to the Stipulation of Settlement) that are not materially inconsistent with this Approval Order or the Judgment and do not limit the rights of Derivative Plaintiffs, any other Securities Holders, Schein, Derivative Defendants or any other Releasees or Releasors under the Settlement Agreement.

17. ***Findings of Good Faith*** – The Court finds that the Derivative Complaints were filed as to all defendants (including Schein as a nominal defendant) on a good-faith basis and in accordance with Rule 11 of the Federal Rules of Civil Procedure based upon all publicly available information. The Court finds that all parties to this Consolidated Derivative Action and their counsel have acted in good faith and have complied with each requirement of Rule 11 with respect to all proceedings herein.

18. Without in any way affecting the finality of the Judgment or this Order, and subject to the dispute-resolution provisions found in Sections V.C and XII.B.2 of the Stipulation of Settlement, this Court expressly retains exclusive and continuing jurisdiction over the

9

Settlement Agreement, the Settling Parties, all Securities Holders and all Releasees to adjudicate all issues relating to this Settlement Agreement, including, without limitation, any issues relating to this Order; *provided however*, that nothing in this paragraph 18 shall restrict the ability of the Settling Parties to exercise their rights under paragraph 16 of this Order.  Any action arising under or to enforce the Settlement Agreement, this Order or the Judgment shall be commenced and maintained only in this Court.

19.     ***Dismissal of Consolidated Derivative Action*** – The claims asserted against the Releasees in this Consolidated Derivative Action and any and all other actions consolidated into the Consolidated Derivative Action are hereby dismissed on the merits and with prejudice, without fees or costs to any party except as otherwise provided in this Order and in the Settlement Agreement.

20.     ***Entry of Judgment*** – There is no just reason to delay the entry of this Order and the Judgment, and immediate entry by the Clerk of the Court is expressly directed pursuant to Federal Rule of Civil Procedure 54(b).

So ordered this _____ day of _____, 2020.

_____
The Honorable LaShann DeArcy Hall
United States District Judge

EXHIBIT D

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE HENRY SCHEIN, INC. DERIVATIVE LITIGATION** | Lead Case No. 1:19-cv-06485-LDH-JO |
| **This Document Relates to:** **ALL ACTIONS** | |

## [PROPOSED] JUDGMENT

1.      Consistent with the terms of the Approval Order[1] entered on _____ __, 2020 (the "Order"), the settlement of this Consolidated Derivative Action on terms set forth in the Settling Parties' Stipulation of Settlement, including all exhibits (collectively, the "Settlement Agreement"), is approved as fair, reasonable and adequate and consistent with and in compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law, and in the best interests of Henry Schein, Inc. and its stockholders.

2.      The Court finds no reason for delay in entering the Judgment as to Schein and the Derivative Defendants in accordance with the terms of the Settlement Agreement and the Order.

3.      The claims as to the Derivative Defendants are dismissed on the merits and with prejudice according to the terms of the Settlement Agreement (including the Release) and the Order, without fees or costs to any party except as provided therein.

---

[1]      Capitalized terms not defined in this Judgment shall be defined as set out in the April 30, 2020 Stipulation of Settlement (the "Stipulation of Settlement"), a copy of which is attached to the Approval Order.

4.      The Release set forth in Section VI of the Stipulation of Settlement and its relevant definitions are expressly incorporated herein in all respects and shall be deemed a part of this Judgment as if fully set forth herein.

5.      The permanent injunctions and Complete Bar Order in the Order shall be effective as to all persons and entities identified in them as set out in the Order.

6.      The Court has jurisdiction to enter this Judgment.  Without in any way affecting the finality of this Judgment or the Order, and subject to the dispute-resolution provisions found in Sections V.C and XII.B.2 of the Stipulation of Settlement, this Court expressly retains exclusive and continuing jurisdiction over the Settlement Agreement, the Settling Parties, all Securities Holders and all Releasees to adjudicate all issues relating to this Settlement Agreement, including, without limitation, any issues relating to this Judgment; *provided however*, that nothing in this paragraph 6 shall restrict the ability of the Settling Parties to exercise their rights under paragraph 16 of the Order.  Any action arising under or to enforce the Settlement Agreement, the Order or this Judgment shall be commenced and maintained only in this Court.

7.      JUDGMENT in this Consolidated Derivative Action is hereby entered with respect to Schein and the Derivative Defendants in accordance with Federal Rule of Civil Procedure 58.  The Clerk of Court is respectfully directed to mark this case closed.

IT IS SO ORDERED this_____ day of _____, 2020.


_____
The Honorable LaShann DeArcy Hall
United States District Judge

2

# RESOLUTION OF *SALKOWITZ* (ANTITRUST) ISSUES RAISED IN *FINAZZO*

### *Statement of Intent*

*Enhancements will be adopted within 90 days following the date on which approval of the settlement of the shareholder derivative case becomes final and no longer subject to appeal.* The settlement will provide that the revisions would remain in effect for three years from implementation. However, consistent with the holding of the Delaware Supreme Court in *CA, Inc. v. AFSCME Employees Pension Fund*, 953 A.2d 227 (Del. 2008), nothing in the settlement agreement would be construed to "commit [Schein's] board of directors to a course of action that would preclude them from fully discharging their fiduciary duties to [Schein] and its shareholders." Accordingly, if a majority of the independent directors were to conclude that an amendment, modification, waiver or suspension of any of the enhancements would be reasonable and appropriate under the circumstances and would not otherwise be a breach of their fiduciary duties, the directors may amend, modify, waive or suspend any such enhancements.

## I.   CREATION AND APPOINTMENT OF AN ANTITRUST COMPLIANCE OFFICER

A.   Schein will appoint an Antitrust Compliance Officer who is charged with overseeing and executing Schein's Antitrust Compliance Program.

B.   The Antitrust Compliance Officer will be responsible for managing all aspects of the Antitrust Compliance Program. The Antitrust Compliance Officer's duties will include:

1.   Updating or modifying the Antitrust Policy, the Antitrust Guidebook, any antitrust training materials and any portion of the Worldwide Business Standards addressing antitrust issues, including periodically seeking review of such documents by outside antitrust counsel; *provided* that material changes or modifications of the foregoing documents requires approval of the Regulatory, Compliance, and Cybersecurity Committee or such other Board Committee as appropriate (the "Board Committee");

2.   Conducting any evaluations or investigations addressing antitrust issues that arise and preparing reports of any evaluations or investigations as he/she deems appropriate and providing copies of such reports to the Board Committee;

3.   Obtaining outside antitrust counsel's advice or opinions in situations the Antitrust Compliance Officer, in his/her sole discretion, deems appropriate.

4. Ensuring that all requirements with respect to training and certifications have been met;

5. Ensuring that all complaints and inquiries that have been properly reported to the Antitrust Compliance Officer or the Chief Compliance Officer or through the Compliance Hotline are appropriately investigated; and

6. Delivering to the Chief Compliance Officer an annual report addressing the effectiveness of the antitrust compliance program, which report shall be submitted by the Chief Compliance Officer to the Board Committee.

7. The Antitrust Compliance Officer at his/her discretion may engage outside advisors at the Company's expense.

## II. ADDITIONAL ENHANCEMENTS OR DOCUMENTATION

A. Risk Assessment

1. Schein will conduct a biennial Antitrust Risk Assessment under the supervision of the Antitrust Compliance Officer.

2. The purpose of the risk assessment will be to identify the types of potential misconduct that are most likely to occur in Schein's line of business for the purpose of evaluating whether the Antitrust Compliance Policy, the Antitrust Guidebook and the Worldwide Business Standards, training materials, or internal controls need to revised.

3. The Antitrust Compliance Officer will provide the results of the Antitrust Risk Assessment to the Chief Compliance Officer, which results the Chief Compliance Officer shall provide to the Board Committee.

4. The Antitrust Compliance Officer will evaluate whether the Antitrust Compliance Policy, the Antitrust Guidebook and the Worldwide Business Standards should be modified to address issues raised in the Antitrust Risk Assessment and make any modifications he/she deems appropriate; *provided* that material changes of the foregoing documents requires approval of the Board Committee.

5. The Antitrust Compliance Officer will evaluate whether any internal control processes concerning antitrust compliance, including training practices, should be modified to address issues raised in the Antitrust Risk Assessment and make any modifications he/she deems appropriate; *provided* that material changes to the foregoing requires approval of the Board Committee.

B.    Training and Communication

1.    Schein will develop written protocols reflecting the process and internal controls that Schein will follow to ensure that employees receive proper antitrust training.  These protocols will:

   a.    Identify by name, title, or job description the type and frequency of antitrust training that such employees will receive;

   b.    Describe the process by which Schein will ensure that all new hires receive the level of training appropriate for their jobs;

   c.    Describe the process by which Schein will ensure that employees transitioning from one job to another have received the antitrust training appropriate for his or her new job; and

   d.    Describe the process by which Schein will record or track compliance with the Antitrust Compliance Policy's training protocols.

2.    Schein will ensure that each employee required to undertake antitrust training certifies that he or she (*i*) has received such training, (*ii*) complied with all antitrust laws and with all of Schein's antitrust policies and guidelines, and (*iii*) will not knowingly violate the antitrust laws, which certifications will be reviewed and maintained under the direction of the Antitrust Compliance Officer.

3.    Schein will develop a procedure by which any employee responsible for the sales and marketing of dental supplies or equipment in the United States who registers to attend a large regional or national meeting (which meetings are characterized by Schein as an "A" meeting) through the Schein events team will receive an automated or other communication reiterating the importance of adhering to the antitrust laws.

4.    The Antitrust Compliance Officer will describe in the annual reports provided to the Chief Compliance Officer, which reports the Chief Compliance Officer shall provide to the Board Committee, how employees are tested on their knowledge and understanding of the antitrust laws, including any changes in the training program.

5.    The Antitrust Compliance Officer, will provide Regional Managers access to an antitrust intranet section that summarizes

   a.    Key antitrust compliance issues for use by Regional Managers in, among other things, team meetings, including the posting of guidelines, FAQs and user-friendly tools; and

        b.      Significant antitrust compliance cases in the health industry, with a description of the conduct giving rise to each case.

    6.     The Antitrust Compliance Officer will ensure that the antitrust intranet section is maintained and updated as appropriate.

C.     Reporting

    1.     Schein will ensure that it maintains a mechanism employees can use to report antitrust violations anonymously or confidentially and without fear of retaliation.

    2.     Schein will ensure that it maintains a publicized system where employees can seek guidance about potential illegal conduct – either confidentially or otherwise.

    3.     Schein will provide that supervisors or employees who become aware of potential antitrust violations (or "red flags" suggesting same) have a duty to report them to the Antitrust Compliance Officer.

D.     Further Enhancements

    1.     The Company's General Counsel, the Chief Compliance Officer or the Antitrust Compliance Officer shall be present at all meetings of the Board at which antitrust sensitive issues are scheduled to be discussed.

    2.     If, in the course of performing duties as a Schein officer or director, any issue arises concerning areas of competition between Schein and a company in which the officer or director holds an equity interest, the Schein officer or director shall consult with the Company's General Counsel, the Chief Compliance Officer, the Antitrust Compliance Officer, or the Board Committee on the appropriate course of action to avoid potential antitrust issues.

4

# RESOLUTION OF *COVETRUS* (M&A) ISSUES
# RAISED IN *FINAZZO*

### *Statement of Intent*

*Guidelines would be adopted by Henry Schein, Inc. (the "Company" or "Schein") within 12 to 24 months following the date on which approval of the settlement of the shareholder derivative case becomes final and no longer subject to appeal (or such other time period as determined in good faith by the Board).* The settlement would provide that the guidelines would remain in effect for three years from adoption. However, consistent with the holding of the Delaware Supreme Court in *CA, Inc. v. AFSCME Employees Pension Fund*, 953 A.2d 227 (Del. 2008), nothing in the settlement agreement would be construed to "commit [Schein's] board of directors to a course of action that would preclude them from fully discharging their fiduciary duties to [Schein] and its shareholders." Accordingly, if a majority of the independent directors were to conclude that an amendment, modification, waiver or suspension of any of the Guidelines would be reasonable and appropriate under the circumstances and would not otherwise be a breach of their fiduciary duties, the directors may amend, modify, waive or suspend the Guidelines after providing plaintiffs with notice of any such amendment, modification, waiver or suspension. Further, these Guidelines may be suspended or amended for a particular Transaction (as defined below) with approval of the CEO and CFO of the Company if the CEO and CFO as well as either of the Strategic Advisory Committee or the Board, determine that the circumstances (including competitive dynamics with respect to the Transaction) require an alternative approach.

These Guidelines describe the processes and procedures the Company will follow, commencing on the deal start date, in evaluating and documenting potential Transactions (defined below). For purposes of these Guidelines, "Transaction" means any merger, acquisition, purchase, or other disposition of a business unit of the Company, or any restructuring, joint venture or other similar transaction, whether consisting of stock or assets, involving the Company or any of its Subsidiaries, on the one hand, and any third party on the other hand where the enterprise value of the business being sold, purchased or otherwise divested is in excess of $300 million. "Subsidiary" shall mean any entity in which the Company owns more than 50% of the equity, controls a majority of the Board and has the power to direct or cause the direction of the management or the policies of such entity. The term Transaction will not apply (A) to purchases or sales, or offerings by the Company of securities, that are not part of a transaction involving an acquisition or disposition of a business unit nor (B) to dividends or other distributions by the Company to its shareholders consisting solely of cash, securities or other property not involving a disposition by the Company of a business unit. All references in these Guidelines to "transactions" shall be deemed to refer only to Transactions governed by these Guidelines unless the context otherwise requires.

For purposes of these Guidelines, (i) AROC shall refer to the Acquisition Review & Oversight Committee established by the Company currently consisting of the Executive VP and Chief Strategic Officer; the Executive VP and Chief Financial Officer; the Senior VP, Corporate

& Legal Affairs and Chief of Staff; and the Senior VP and General Counsel, in each case of the Company, or as such committee may otherwise be constituted from time to time; (ii) BD Team shall refer to the Business Development transactional team assigned to work on the Transaction; (iii) M&A Process shall mean the processes and procedures described in these Guidelines in connection with Transactions; and (v) deal start date shall mean the date that the Company commences substantial negotiations relating to the material terms of a potential Transaction, as determined by AROC for purposes of these Guidelines.

## I.  CREATION AND DOCUMENTATION OF M&A GUIDELINES

  A.  Goals

    1.  Effective oversight of M&A Process by AROC and the Board

    2.  Informed decision-making

    3.  Adherence to a standardized M&A Process

## II.  M&A GUIDELINES

  A.  AROC Oversight of M&A Process

    1.  The Company will convene AROC to provide advisory, risk management and oversight services to Company management and enhance oversight of the M&A Process in connection with any potential Transaction.  The BD Team shall seek approval from AROC prior to proceeding with each of the following phases of any Transaction:

      a.  Approval to enter into a LOI or MOU

      b.  Approval with respect to the purchase price (valuation) and significant economic terms

      c.  Approval to sign

      d.  Approval to close

    2.  Additional participants (whether employees of the Company, external advisers or otherwise) may be invited to participate in AROC meetings, as determined by AROC, to conform expertise of its participants to the specific transaction form and characteristics.

    3.  A written target-specific financial model, with applicable projections, to be developed for each Transaction, including consideration of the corporate objectives and expected synergies for the Transaction.

4.      BD Team to provide a written report to AROC regarding each Transaction substantially in the form of the template attached hereto as <u>Attachment 1</u>, which will provide details to AROC regarding the following aspects, among others, of each Transaction:

      a.      Strategy rationale – build, buy, partner, etc.

      b.      Target assessment

      c.      Business Case

      d.      Engagement of outside advisors (e.g., legal, tax/finance/accounting) as necessary.

      e.      Material findings arising from the Company's due diligence process

      f.      Material business terms

      g.      Integration Plans

      h.      Financial Model

      i.      Securities legal matters and disclosure issues, if applicable

5.      Assessing overall risk of proposed Transaction –AROC to oversee BD Team and M&A legal team's implementation of the following:

      a.      Assessing overall risk

      b.      Identifying and addressing key issues in transaction and diligence

      c.      Ensuring deal team implementation of any plan to address key deal issues

      d.      Serving as escalation point for identified transaction risk

6.      AROC to periodically review, with the BD Team (who should obtain relevant input from business units), the criteria and metrics for evaluating a target's financial attractiveness and execution risk.

7.      Coordinate appropriate updates / communications with Board of Directors and appropriate Committees

B.    CEO Approval

    1.    BD Team to provide the CEO with a written report, which report will provide details regarding the following aspects, among others, of each Transaction:

        a.    Target Overview

        b.    Strategic Rationale

        c.    Transaction Overview

        d.    Financial Summary

    2.    BD Team to provide CEO with any and all materials which are to be provided to the Board with respect to the Transaction

    3.    BD Team to seek CEO approval prior to signing or closing final definitive agreements for and closing on any Transaction

C.    Board Reporting and Approvals

    1.    After the AROC and CEO approvals referenced in these Guidelines have been obtained, AROC to provide a written report or presentation to the Board, which report will provide information regarding the following aspects, among others, of each Transaction:

        a.    Target Overview

        b.    Transaction Overview

        c.    Integration Plan

        d.    Key Agreements/Terms

        e.    Accretion/Dilution Summary

        f.    Financial Model Summary

        g.    Financial Model Assumptions

    2.    To the extent AROC deems necessary or appropriate, AROC to provide interim reporting on significant matters or updates related to the Transaction.

    3.    AROC to seek Board approval to sign final definitive agreements for each Transaction.

D.   **Deal Diligence**

    1.   BD team to oversee deal diligence and report to AROC

        a.   The due-diligence plan shall be determined by each diligence team, in consultation with external legal counsel.  Subject matter areas for due diligence will include financial/accounting and legal diligence, as well as other subject matter areas as may be appropriate based on the business, size and scope of the target company .

        b.   BD Team or other appropriate team to conduct background checks on the target company and its management as AROC deems appropriate.

        c.   M&A Legal or BD Team (or appropriate advisors) to maintain a master log of (i) material information requested in due diligence, and (ii) all material due diligence meetings with the target or its representatives.

        d.   M&A Legal or the BD Team (or appropriate advisors) to maintain copies of material records that document the due diligence and process undertaken with respect to all consummated M&A transactions to the extent permitted by transaction confidentiality obligations.

E.   **Engagement of Outside Advisors**

    1.   BD Team to report to AROC regarding retention of legal, accounting, financial and other advisors, as appropriate, with experience and expertise relevant for the nature and scope of the Transaction.

    2.   Subject to AROC determination based on the size and nature of the Transaction, the Company to consider whether to obtain a financial fairness opinion or to adopt another procedure or process that requires:

        a.   Consideration of whether the Transaction can be regarded as fair from the Company's financial point of view;

        b.   Disclosure of all material facts that might affect the independence of the advisor and, under circumstances where the advisor serves in more than one capacity in the Transaction, consideration of whether additional advisory views should be obtained;

        c.   Fairness determinations to be provided in a document setting forth transaction terms, as well as the assumptions and qualifications

5

used to make the fairness determination, and a fair summary of such document, as well as the opinion itself, shall be disclosed to shareholders in the merger proxy statement when such statement is required.

3.    AROC may also consider the appropriateness of obtaining a solvency or other expert opinions as may be appropriate for such Transaction.

F.    M&A Training and Deal Documentation and Terms Resources.

1.    Legal team to maintain M&A database consisting of documents for prior Transactions, which can be accessed, to the extent available, for:

a.    Material on-going or post-closing rights and obligations (such as indemnification and restrictive covenants)

b.    Key material terms of transactions

c.    Templates of Transaction Documents

d.    Checklists, if any

e.    Letters of Intent, MOUs and similar documents

f.    Confidentiality and NDA agreements

2.    Legal team (directly or through outside counsel) to obtain publicly available forms of documentation for transactions of similar size and nature to the Transaction in order to determine market terms and conditions and other characteristics

3.    Legal Team and BD Team to engage in a periodic training program regarding M&A Process as an educational resource for all major personnel involved in the M&A Process, covering matters such as (*i*) an overview of each stage of the M&A Process and the corresponding responsible parties, (*ii*) an explanation of each participant's role in the M&A Process, (*iii*) nature and purpose of M&A documentation and diligence, and (*iv*) Schein's M&A policies, practices and procedures in effect from time to time.

4.    As appropriate, consider involvement of outside consultants, advisors and experts to address issues specific to their areas of expertise and responsibility during the M&A Process.

G.    The Company will periodically provide shareholders with an overview of the Company's growth strategy.

Case 1:19-cv-00463-BKS-DJS Document 31-12 Filed 12/03/20 Page 95 of 111 PageID #: 1411
Case 1:19-cv-00463-BKS-DJS Document 15-6 Filed 04/30/20 Page 3 of 10 PageID #: 433
1325

**Attachment 1 to Exhibit F**



DATE


Business Unit Team: [INSERT NAMES OF TEAM MEMBERS]

Business Development Team: [INSERT NAMES OF TEAM MEMBERS]

Case 1:19-cv-00485-EAW MO Document 31-12 Filed 04/30/20 Page 96 of 111 PageID #: 1412
Case 1:19-cv-00485-EAW MO Document 15-6 Filed 04/30/20 Page 9 of 10 PageID #: 434
1326

**Executive Summary**

- High level description of the transaction
- Expected signing and closing dates
- Outside advisors engaged to assist with the transaction (legal, tax, accounting)
- Expected transaction returns based on current financial model
  - ROIs before interest, tax and deal costs in the first 3 years
  - Accretion/Dilution
- If possible, comparison between pre and post diligence financial models

| *($USD '000)* | Year 1 | Year 2 | Year 3 |
|---|---|---|---|
| | | | |
| Pre-tax accretion/(dilution) – Current Financial Model | | | |
| Pre-tax accretion/(dilution) – Pre-Diligence AROC Financial Model | | | |
| | | | |
| Net accretion/(dilution) – Current Financial Model | | | |
| Net accretion/(dilution) – Pre-Diligence AROC Financial Model | | | |

**Company Overview**

*Business Overview:*

- Description of Target's business
  - Type of Business
  - Size of Business
  - # of employees
  - Description of customer base
  - Description/identification of key management team members

=

*Key Financials:*

- FY revenue (prior 2 years)
- FY reported EBITDA margin (prior 2 years)

**<u>Strategic Rationale:</u>**
- Description of strategic rationale
- Business Case/target assessment

**<u>Transaction Overview</u>**
- Description of Primary Transaction Documents
  - Purchase Agreement
  - Shareholder Agreement (if applicable)
  - Employment Agreements (if applicable)

- Description of Significant Deal Terms
  - Purchase Price
  - Escrow/Holdbacks (if any)
  - Reps/Warranties
  - Indemnities
    - Scope (including whether any specific indemnities)
    - Caps/baskets
    - Survival
  - Non-compete terms
  - If there is a shareholder agreement:
    - Minority protections
    - Puts/calls
    - Tag-along and Drag-along rights

- Description of any key employment agreements (if any)

| Functional Area | Responsible Party For Functional Area Diligence | Diligence summary/Material Findings | Proposed Resolution / Mitigation Measures |
|---|---|---|---|
| | | ○ | • . |

**Financial Model**
**[MODEL TO BE ATTACHED]**

**Financial Model Assumptions**

Key operating assumptions, which may include, among others:

- Revenue
- Gross Margin
- Operating Expenses
- Deal Costs
- Intangible Amortization

**Integration Plans**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE HENRY SCHEIN, INC. DERIVATIVE LITIGATION** | Lead Case No. 1:19-cv-06485-LDH-JO |
| **This Document Relates to:** **ALL ACTIONS** | |

## CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement (the "Agreement") is entered into in these consolidated shareholder derivative actions as of March 2, 2020, between and among plaintiffs Frank Finazzo and Mark Sloan ("Plaintiffs"), The Rosen Law Firm, P.A. and The Brown Law Firm, P.C. ("Co-Lead Counsel"), nominal defendant Henry Schein, Inc. ("Schein") and the individual defendants (collectively with Schein, "Defendants"), and Proskauer Rose LLP ("Proskauer").

WHEREAS, on November 15, 2019, plaintiff Frank Finazzo filed a shareholder derivative action in this Court on behalf of nominal defendant Schein; and

WHEREAS, on January 6, 2020, plaintiff Mark Sloan filed a shareholder derivative action in this Court on behalf of nominal defendant Schein alleging substantially similar facts and making substantially similar allegations against the same defendants; and

WHEREAS, on January 24, 2020, the Court entered a Joint Stipulation and Order consolidating the two derivative actions under the caption *In re Henry Schein, Inc. Derivative Litigation* (the "Action") and appointing Co-Lead Counsel as co-lead counsel; and

WHEREAS Co-Lead Counsel and Proskauer have engaged in discussions and mediation sessions to try to settle the Action; and

WHEREAS Plaintiffs and Defendants (collectively, the "Settling Parties," and individually, a "Party") have agreed to a proposed settlement of the Action, subject to various conditions, including (/) Plaintiffs' conducting certain additional discovery ("Confirmatory Discovery") to confirm that the proposed settlement is fair, reasonable, and adequate, (*ii*) the preparation and execution of definitive settlement documents, and *(iii)* the Court's approval of the proposed settlement as embodied in the definitive settlement documents; and

WHEREAS, solely for purposes of conducting Confirmatory Discovery on the proposed settlement, Plaintiffs have asked that Co-Lead Counsel be given access to documents and information relating to the issues raised in Plaintiffs' Complaints; and

WHEREAS Defendants seek and intend to preserve all objections to discovery in the Action and in any other actions or proceedings in any forum and to protect all applicable privileges and protections – including the attorney-client privilege and the attorney work-product protection – that might apply to such discovery materials;

NOW, THEREFORE, solely to advance Plaintiffs' Confirmatory Discovery in evaluating the proposed settlement, in consideration of the mutual promises and covenants made in this Agreement, with the intent to be legally bound by the terms of this Agreement, and understanding that the Court may enforce the terms of this Agreement, Plaintiffs, Co-Lead Counsel, Defendants, and Proskauer agree as follows:

1.     AH non-public documents, facts, opinions, estimates, and other information that are in or come into the possession of Plaintiffs or Co-Lead Counsel solely from Defendants – including, without limitation, writings, drawings, graphs, charts, photographs, microfilm, microfiche, drafts, deposition transcripts, non-identical copies of documents, and data compilations (including, without limitation, electronic or computerized data compilations) from

which information can be obtained – and all non-public information (whether oral or written) that is contained in those materials or is otherwise provided to Plaintiffs or Co-Lead Counsel under the terms of this Agreement, or otherwise becomes known to Plaintiffs or Co-Lead Counsel solely from Defendants, shall be deemed to be "Settlement Information." Any notes or other writings relating to any interviews conducted in connection with Confirmatory Discovery shall also be deemed to be Settlement Information that is subject to the terms of this Agreement, but shall remain in the possession, custody, or control of the Party or his, her, or its counsel who created such work-product or privileged material.

2.      Confirmatory Discovery shall proceed for a period of 90 days from commencement, subject to reasonable extensions of time if necessary and agreed to by the Settling Parties. Confirmatory Discovery shall consist of (i) granting Co-Lead Counsel access to an electronic Document Depository that will be under Proskauer's control and will contain documents relevant to the claims in the Complaints and *(if)* allowing Co-Lead Counsel to conduct informal interviews of relevant Schein employees or officers, with the number and identity of such persons to be agreed upon by Co-Lead Counsel, Schein, and Proskauer. During the period of Confirmatory Discovery, documents will be made available to Co-Lead Counsel on an electronic site that Co-Lead Counsel will be able to review, but not print or download. However, although they may not print or download the documents in the Document Depository, Co-Lead Counsel and their representatives may take handwritten or computer-generated notes or dictate notes regarding such documents. If Co-Lead Counsel wish to designate Settlement Information for duplication, Proskauer will arrange to have the designated material duplicated, with copying costs to be at Plaintiffs' or Co-Lead Counsel's expense. When the designated

3

Settlement Information is duplicated, Proskauer may, at Schein's expense, make a second copy of it, and Proskauer will retain that copy.

3.    Only the following individuals ("Eligible Persons") shall be allowed access to Settlement Information:

a.    Plaintiffs;

b.    attorneys who are either partners in, or members or employees of, Co-Lead Counsel, as well as non-attorney employees of Co-Lead Counsel;

c.    any other attorneys whom Co-Lead Counsel designate as necessary to assist them in reviewing Settlement Information solely for purposes of reviewing the proposed settlement of the Action, and for no other purposes whatsoever;

d.    non-attorney employees of any other attorneys designated pursuant to paragraph 3.c above, necessary to assist Co-Lead Counsel or any of those other attorneys in reviewing Settlement Information solely for purposes of assessing the proposed settlement of the Action;

e.    consultants or experts retained by Co-Lead Counsel, or by any other attorneys designated pursuant to paragraph 3.c above, necessary to assist those attorneys in reviewing Settlement Information solely for purposes of assessing the proposed settlement of the Action, and whose identities shall not be disclosed to Defendants; *provided,* however, that, if the Action does not ultimately settle, and if litigation continues, the disclosure and discovery provisions of Fed. R. Civ. P. 26 and any Local Rules of Court governing experts will apply; and

f.    the mediators who mediated the proposed settlement of the Action and who have ongoing responsibilities under the Settling Parties' proposed settlement, as well as employees of the mediators.

4

4.      Except for Co-Lead Counsel (including their employees) and the mediators (including their employees), any and all individuals given access to the electronic Document Depository or other Settlement Information pursuant to paragraph 3 above shall, before being granted such access, be given a copy of this Agreement and agree, by executing the undertaking in the form attached as Exhibit A, to be subject to all of its terms.  Co-Lead Counsel and their employees agree to the terms of this Confidentiality Agreement without having to sign Exhibit A.

5.      Settlement Information shall be used solely for the purpose of conducting Confirmatory Discovery and evaluating the proposed settlement of the Action, and for no other purpose whatsoever (including pursuing claims in the Action or in any other proceeding).  All Eligible Persons allowed access to Settlement Information pursuant to paragraph 3 above shall keep all Settlement Information strictly confidential and shall not disclose, disseminate, discuss, or otherwise publish such material or information in whole or in part, directly or indirectly, by any manner, method, or means whatsoever, to any other person, firm, or entity, including any media organization; nor shall they use any Settlement Information in connection with any purchase or sale of, or any other investment decision relating to, Schein securities; *provided, however,* that:

a.      Eligible Persons may discuss Settlement Information among themselves to the extent they deem appropriate and consistent with the terms of this Agreement;

b.      Eligible Persons may generally discuss the due diligence undertaken with other counsel representing other Schein shareholders solely for the purposes of allowing those other counsel to evaluate the proposed settlement of the Action and to decide whether to object

5

to it; *provided, however,* that such discussions shall not include identification or descriptions of specific Settlement Information or specific documents in Settlement Information;

        c.      Before any discussions take place regarding Settlement Information as provided in this paragraph 5, all prospective recipients of Settlement Information must be given a copy of this Agreement and agree, by executing the undertaking in the form attached as Exhibit A, to be bound by to its terms (except to the extent otherwise provided in paragraph 4 above); and

        d.      Nothing in this Agreement prevents Defendants or (with Defendants' consent) Proskauer from sharing Defendants' own Settlement Information as they deem appropriate.

      **6**.      Co-Lead Counsel shall ensure that the undertakings required pursuant to paragraphs 4 and 5 above have been obtained and shall retain those undertakings (except to the extent that this Agreement otherwise requires).

      7.      If any Settlement Information is in a language other than English and Co-Lead Counsel wish to translate that material, Proskauer will make reasonable efforts to work with Co-Lead Counsel to devise a method for obtaining translations at Co-Lead Counsel's expense; *provided, however,* that Defendants and Proskauer shall not otherwise have any obligation to provide translations of Settlement Information.

      8.      If any Eligible Person or any other person or entity given access to Settlement Information pursuant to this Agreement (collectively, the "Recipients") receives a request to produce Settlement Information by any means, including, without limitation, by subpoena, written interrogatories, or deposition, the recipient of such request (the "Receiving Party") shall give Proskauer immediate written notice of such request as provided in this Agreement, so that

Defendants may take any appropriate measures (including, without limitation, seeking a protective order or attempting to quash such request) to oppose or limit disclosures, to require that disclosure be made under seal, or to seek any other available remedy. Any Receiving Party shall not oppose any efforts by Defendants and/or their counsel to take whatever measures they deem appropriate to protect Settlement Information from disclosure; *provided, however*, that such Receiving Party (*i*) shall not be required to bring any motion, or join in any motion filed by Defendants or their counsel, to prevent disclosure of Settlement Information and (*ii*) shall be able to make any other arguments he, she, or it deems appropriate to the extent such arguments are not contrary to Defendants' or their counsel's arguments regarding disclosure. If a protective order cannot be obtained, and if a Receiving Party is compelled by a court order to disclose Settlement Information, then such entity or individual shall disclose only such portion of such information that the court requires to be disclosed. Any Receiving Party so compelled shall give Proskauer immediate written notice of the information to be disclosed as far in advance of its disclosure as is practicable and shall give Proskauer a duplicate production of all documents that are required to be disclosed; *provided, however*, that the Receiving Party need not include in that duplicate production any materials protected by the attorney work-product privilege or other applicable legal privilege. If Defendants seek to have the disclosed information filed under seal, the Receiving Party will cooperate with Defendants' efforts to do so.

9.      If (*i*) after conducting their due diligence of the Settlement Information, Plaintiffs decide to terminate the proposed settlement, (*ii*) the proposed settlement is terminated for any other reason before being finally approved by the Court, or (*iii*) the proposed settlement is not approved by the Court (or by any appellate court), then Plaintiffs, Co-Lead Counsel, and any other Recipient shall, within ten business days after being notified by Proskauer to do so, return

to Proskauer any and all Settlement Information that has been removed from the electronic

Document Depository, as well as any and all copies of Settlement Information. In any of the

circumstances described in this paragraph, Proskauer shall be deemed to have custody and

control of all Settlement Information, including all Settlement Information duplicated for any

reviewer; *provided, however,* that Proskauer will not be deemed to have custody or control over

any attorney work product or other legally privileged material generated by any Recipient. If

any Recipient creates any documents of any kind based on or related to Settlement Information,

he, she, or it will collect and destroy all such documents and so certify in writing to Proskauer;

*provided, however,* that such Recipient may keep copies of attorney work product or other

legally privileged material that he, she, or it generated, provided that such material does not

explicitly quote from or verbatim reflect Settlement Information.

      10.    If the Court approves the proposed Stipulation of Settlement and the Court's

approval of the settlement becomes Final, the provisions of paragraph 9 concerning destruction

of Settlement Information shall apply within ten business days after the settlement becomes

Final; *provided, however,* that any person or entity subject to paragraphs 9 and 10 may choose to

destroy any and all Settlement Information (and copies of such information) instead of returning

it to Proskauer, in which event such person or entity shall provide Proskauer with a certification

attesting to the destruction of such Settlement Information.

      11.    Production of Settlement Information shall not be deemed to be, and neither

Plaintiffs nor Co-Lead Counsel (nor any other Recipient) will argue that such production is, (*i*) a

general waiver of the attorney-client privilege, the attorney work-product doctrine, or any other

potentially applicable privilege or protection (including for trade secrets or proprietary

information), *(ii)* a specific waiver of any privilege or protection applicable to the documents or

information being produced, or (ff) an admission or indication that the documents or information
are relevant to, or would or should be discoverable in, the Action or in any other litigation or
proceeding in any forum.

12.    Pursuant to Federal Rule of Evidence 502(d), the parties to this Agreement agree
that the attorney-client privilege and attorney work-product protection are not waived in this
Court, any other federal court, or any state court by production of Settlement Information in
connection with Confirmatory Discovery in this Action.

13.    If Defendants inadvertently make available as Settlement Information any
materials that are privileged or otherwise protected, in whole or in part, under the attorney-client
privilege, the attorney work-product doctrine, or any other applicable privilege, immunity, or
protection, such production shall in no way prejudice or otherwise constitute a waiver of any
claim of privilege, immunity, or other protection, and Defendants may remove such materials
from the electronic Document Depository; *provided, however,* that Proskauer shall notify Co-
Lead Counsel of any such removal by providing a general description of each document
removed, including the date and the number of pages of the document.  No person or entity
granted access to the Document Depository or other Settlement Information may request a copy
of any such privileged or protected document.  Upon receipt of notice of an inadvertent
production, Co-Lead Counsel and any other Eligible Person who has received such Settlement
Information shall promptly return (or, at Schein's expense, destroy) any and all copies of the
inadvertently produced materials.  Any Eligible Person who has received inadvertently produced
Settlement Information may not use it, or any information gleaned from it, for any purpose.

14.    If the proposed settlement of the Action is not approved, nothing in this
Agreement shall preclude Plaintiffs from seeking the production of documents and information

9

from Defendants pursuant to the Federal Rules of Civil Procedure and the Local Rules of this Court; *provided, however*, that, (*l*) without Defendants' express written agreement to the contrary, Plaintiffs shall not make discovery requests that refer directly to Settlement Information in any such request or in any proceeding relating to this Action or any other action or proceeding in any forum; (*ii*) Plaintiffs, Co-Lead Counsel, and any other Recipients shall not use any Settlement Information in any proceeding relating to this Action or any other action or proceeding in any forum, or in any other manner except to the extent such information is properly obtained through discovery in the course of the Action or any other action or proceeding and is used only to the extent permitted by the applicable court and rules; and *(iii)* Plaintiffs and any other Recipient shall not be able to use the fact that Co-Lead Counsel or anyone else was allowed access to Settlement Information to argue that any such documents or information exist or should or must be disclosed.

15.    If the Settling Parties execute a Stipulation of Settlement in the Action, that Stipulation (including its exhibits) will address the manner in which Settlement Information may be used in connection with any hearing held by the Court to consider the fairness, reasonableness, and adequacy of the proposed settlement. If a party needs to include Settlement Information in any filing with the Court, such party will file such information under seal.

16.    Defendants reserve all rights in this Action, and in any other pending or future proceeding, to object on any ground whatsoever to the production of any document included within Settlement Information.

17.    Any violation of this Agreement shall entitle Defendants to injunctive or other equitable relief as a remedy for the violation without proof of actual damages and without limiting any other remedies that Defendants might have. In agreeing to be subject to the terms of

10

this Agreement, Plaintiffs, Co-Lead Counsel, and any other individuals allowed access to Settlement Information agree to submit to the jurisdiction of the Court in which this Action is pending for all matters concerning the enforcement of the terms of this Agreement.

18.     Any notice to Defendants required by this Agreement shall be addressed to the following:

> Ralph C. Ferrara, Esq.
> Ann M. Ashton, Esq.
> Proskauer Rose LLP
> 1001 Pennsylvania Avenue, N.W.
> Suite 600 South
> Washington, D.C. 20004
> Telephone: (202) 416-5820
> Facsimile: (202) 416-6899
> Email: rferrara@proskauer.com
> Email: aashton@proskauer.com
>
> Jonathan E. Richman, Esq.
> Peter D. Doyle, Esq.
> Proskauer Rose LLP
> Eleven Times Square
> New York, New York 10036-8299
> Telephone: (212) 969-3448
> Facsimile: (212) 969-2900
> Email: jerichman@proskauer.com
> Email: pdoyle@proskauer.com

19.     Unless modified by the parties, this Agreement shall survive the final determination of, and shall remain in full force and effect after the conclusion of, all proceedings in, the Action. The Court in which the Action is pending shall have jurisdiction to enforce and ensure compliance with its terms.

20.     Any waiver of or failure to enforce any term of this Agreement shall not constitute a waiver of any other term or a waiver in any other circumstance.

21.     This Agreement shall be governed by and construed in accordance with the laws of the State of New York, excluding its conflict-of-laws provisions.

11

22.     This Agreement may be signed in counterparts, each of which shall constitute a

duplicate original.  Execution by facsimile shall be fully and legally binding.

_Phillip Kim_

Laurence Rosen
Phillip Kim
The Rosen Law Firm, P.A.
275 Madison Avenue, 40th Floor
New York, NY  10016
Telephone:  (212) 686-1060
Facsimile:  (212) 202-3827
Email:  lrosen@rosenlegal.com
Email:  pkim@rosenlegal.com

Timothy Brown
The Brown Law Firm, P.C.
240 Townsend Square
Oyster Bay, NY  11771
Telephone:  (516) 922-5427
Facsimile:  (516) 344-6204
Email:  tbrown@thebrownlawfirm.net

**ON BEHALF OF PLAINTIFFS AND
CO-LEAD COUNSEL**

_Ann M. Ashton_

Ralph C. Ferrara
Ann M. Ashton
Jonathan E. Richman
Peter D. Doyle
Proskauer Rose LLP
1001 Pennsylvania Avenue, N.W.
Suite 600 South
Washington, D.C.  20004
Telephone:  (202) 416-5820
Facsimile:  (202) 416-6899
Email:  rferrara@proskauer.com
Email:  aashton@proskauer.com
Email:  jerichman@proskauer.com
Email:  pdoyle@proskauer.com

**ON BEHALF OF DEFENDANTS
AND PROSKAUER ROSE LLP**

12

**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE HENRY SCHEIN, INC. DERIVATIVE LITIGATION** | Lead Case No. 1:19-cv-06485-LDH-JO |
| **This Document Relates to:** **ALL ACTIONS** | |

## UNDERTAKING REGARDING SETTLEMENT INFORMATION

I hereby attest that I have been provided with a copy of the attached Confidentiality Agreement (the "Agreement") and that I understand that Settlement Information (as that term is defined in the Agreement) will be provided to me pursuant to all of the terms, conditions, and restrictions in the Agreement. Those terms, conditions, and restrictions include, among others, the requirement that Settlement Information be used only for purposes of evaluating the proposed settlement of the Action and for no other purpose, including in connection with litigating the Action or in connection with any other action or proceeding pending in any other court or forum (including arbitration).

I further attest that I have read the Agreement and that I understand that, by signing this Undertaking, I have agreed, as a condition to my receipt of Settlement Information, to be bound by the Agreement and all of its terms, including, without limitation, the Agreement's confidentiality provisions and the provisions stating that the Court in which the Action is pending shall have personal jurisdiction over me to enforce the terms of the Agreement.

I further agree and attest to my understanding that, if I should fail to abide by the terms of the Agreement, I may be subject to claims for damages and sanctions, including monetary sanctions and/or sanctions by way of contempt of court, for such failure.

_____                    _____
Date                                                              Name